UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHTHIUS COHEN,

                                        Plaintiff,

                                                        9:16-cv-00593
v.                                                      (FJS/TWD)

MATTHEW WELCH, et al.,

                                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

MATTHTHIUS COHEN
15-A-4146
Plaintiff, *pro se*
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN              RYAN W. HICKEY ESQ.
Attorney General of the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        This matter has been referred to the undersigned for Report and Recommendation by the

Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3(c). *Pro se* Plaintiff Matththius

Cohen, an inmate in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging

that on May 13, 2016, Corrections Officer ("C.O.") Welch, C.O. Corrigeux, and Sergeant

("Sgt.") Vesneski subjected him to excessive force and failed to intervene in violation of his Eighth Amendment rights. (*See generally* Dkt. No. 23.) Presently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiff failed to exhaust administrative remedies. (Dkt. No. 26.) Plaintiff has responded in opposition to Defendants' motion. (Dkt. Nos. 29 and 35.) For the reasons set forth below, the Court recommends that Defendants' motion be granted.

## I.     BACKGROUND AND PROCEDURAL HISTORY

The following relevant facts are derived from the face of Plaintiff's amended complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On May 13, 2016, Plaintiff was performing his assigned duties as a porter at Upstate Correctional Facility ("Upstate") and was "zambonieing [sic] around the controle [sic] tower." (Dkt. No. 23 at 6.[1]) C.O. Welch and several other officers approached the area with an inmate who was under escort to his cell. *Id.* C.O. Welch yelled at Plaintiff to get out of their way, which Plaintiff did. *Id.* Shortly thereafter, C.O. Welch tracked Plaintiff down in the B gallery of 11 Building and began yelling at him in a racially offensive manner about Plaintiff's alleged failure to get out of the officers' way. *Id.* at 7. C.O. Welch also threatened Plaintiff with serious physical harm. *Id.* at 8. The "work crew officer" told C.O. Welch to "lock [Plaintiff] up." *Id.* C.O Welch brutally assaulted Plaintiff. *Id.* Neither C.O. Corrigeux nor Sgt. Vesneski acted to stop the assault. *Id.* at 9.

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Thereafter, while under escort by C.O. Welch, C.O. Corrigeux, and Sgt. Vesneski, C.O. Welch subjected Plaintiff to racial insults and ongoing threats of serious harm. *Id.* Specifically, C.O. Welch told Plaintiff that if Plaintiff reported the assault, he would suffocate Plaintiff with his pillow during the night. *See id.* In the course of returning Plaintiff to his cell in 12 Building, C.O. Corrigeux attempted to break the pinky and ring fingers on Plaintiff's right hand by bending them sideways; Sgt. Vesneski directed C.O. Corrigeux to stop. *Id.* at 10. Plaintiff alleges that he "turned in grievances," to the "IG Office," counselors, program committee, commissioner, and superintendent but they have "never been answerd [sic]." *Id.* at 2-3.

Plaintiff's complaint, signed and dated May 14, 2016, was received by the Court on May 23, 2016. (Dkt. No. 1.) By Decision and Order dated July 25, 2016, only Plaintiff's Eighth Amendment excessive force and failure to intervene claims against C.O. Welch, C.O. Corrigeux, and "Sgt. Doe" survived the Court's *sua sponte* review. (Dkt. No. 10.) On October 11, 2016, Plaintiff filed an amended complaint substituting "Sgt. Vesneski" for "Sgt. Doe." (Dkt. No. 24.[2])

Defendants now move to dismiss Plaintiff's amended complaint for failure to state a claim. (Dkt. No. 26.[3]) Plaintiff opposes Defendants' motion. (Dkt. Nos. 29 and 35.)

---

[2] The Court notes that Plaintiff's amended complaint is a photocopy of the original complaint with references to "Sgt. Doe" (also referred to as "[o]n duty [Sergeant] during incident" or "[o]n duty 11 Building [Sergeant]") crossed-out and replaced with the handwritten name "Vesneski." The amended complaint is otherwise identical to the original complaint. (*Compare* Dkt. No. 1 *with* Dkt. No. 23.)

[3] On October 26, 2016, C.O. Welch and C.O. Corrigeux filed their motion to dismiss for failure to state a claim. (Dkt. No. 26.) Shortly thereafter, Sgt. Vesneski received a copy of the summons and amended complaint. (Dkt. No. 30.) By text order entered December 21, 2016, Sgt. Vesneski's request to join in the pending motion to dismiss for failure to exhaust administrative remedies was granted. (Dkt. Nos. 32 and 34.)

## II.    LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citation and internal quotations omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id*. (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the plaintiff's complaint." *Robles v. Bleau*, No. 9:07-CV-0464 (TJM), 2008 WL 4693153, at *6 and n.41 (N.D.N.Y. Oct. 22, 2008)[4] (collecting cases); *see Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) ("where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, the Second Circuit considered the plaintiff's affidavit submitted in opposition to motion to dismiss).

---

[4] The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

## III.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Failure to exhaust is an affirmative defense that must be raised by the defendants.  *Jones*, 549 U.S. at 216; *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).  However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints.  *Jones*, 549 U.S. at 216.  Nevertheless, dismissal is appropriate if it is clear from the face of the complaint that the plaintiff failed to exhaust administrative remedies.  *Id.* at 215-16; *Lee v. O'Harer*, No. 9:13-CV-1022 (TJM/ATB), 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

The PLRA requires "proper exhaustion," which means using all steps required by the administrative review process applicable to the institution in which an inmate is confined and doing so properly.  *Jones*, 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see*

*also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly") (internal quotations omitted).

In New York State prisons, DOCCS has a well-established three-step Inmate Grievance Program ("IGP"). N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.5. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one days of the alleged occurrence. *Id*. § 701.5(a)(1). A representative of the facility's Inmate Grievance Resolution Committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id*. § 701.5(b)(1). If there is no such informal resolution, the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, *id*. § 701.5(b)(2), and issues a written decision within two working days of the conclusion of the hearing. *Id*. § 701.5(b)(3).

Second, a grievant may appeal the IGRC's decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id*. § 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id*. § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the Central Office Review Committee ("CORC") for a decision under the process applicable to the third step. *Id*. § 701.5(c)(3)(i).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. *Id*. § 701.5(d)(1)(i). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. § 701.5(d)(3)(ii).

There are also special procedures that may be used when the grievance is categorized as "harassment." *Id*. § 701.8. A grievance alleging harassment by staff may be sent directly to the

superintendent, and the superintendent must issue a decision within twenty-five days.  CORC has thirty days to resolve any appeal.  *Id.* §§ 701.8(f), 701.8(i) (incorporating by reference § 701.5(d)(2)(h)).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period.  "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step.'"  *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required three steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA.  *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion."  *Ross*, 136 S. Ct. at 1858.  More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]" (quotations and citations omitted)).  In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are

capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 1859-60.[5] First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860. Whether a plaintiff has exhausted his administrative remedies is a question of law to be decided by the court. *See Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999).

**B.    Analysis**

Defendants argue that it is clear from Plaintiff's filings that Plaintiff failed to exhaust his administrative remedies before filing suit in federal court. (Dkt. No. 26-1 at 8.) The Court agrees.

Specifically, Plaintiff's claims arise from events that took place on May 13, 2016. (Dkt. No. 23 at 6.) Plaintiff also claims he "turned in grievances" to the "IG Office" but they had "never been answerd [sic]." *Id*. at 2-3. Plaintiff then filed this action on May 14, 2016, just one day after the alleged incidents. (Dkt. No. 1 at 15.[6]) Plaintiff's complaint was received and

---

[5] According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016).

[6] Under the "prison mailbox rule," a *pro se* complaint submitted by a prisoner is deemed "filed" at the time it was delivered to "prison authorities for forwarding to the court clerk." *Houston v.*

formally filed by the Court on May 23, 2016, only ten days after the alleged events occurred.  *Id.*
Under the regulations, the first step of the grievance process should be completed within sixteen
calendar days after receipt of the grievance.  7 N.Y.C.R.R. § 701.5(b).  If an inmate appeals an
adverse decision to the superintendent, the superintendent must generally decide the issue within
twenty calendar days from the time the appeal was received.  *Id.* § 701.5(c).  Finally, CORC
must decide an appeal within thirty calendar days from the date that such an appeal is filed.  *Id.* §
701.5(d).

     In light of this procedure and based on the facts alleged in the amended complaint, it is
implausible that Plaintiff was able to exhaust his administrative remedies before commencing
this action.  *See, e.g.*, *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 581-82 (S.D.N.Y. 2015)
(dismissing complaint for failure to exhaust where plaintiff commenced action ten days after
alleged incidents occurred); *Perez v. City of New York*, No. 14 Civ. 07502 (LGS), 2015 WL
3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing action where complaint was signed one
week after the events in question allegedly occurred); *Price v. City of New York*, No. 11 Civ.
6170 (TPG), 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (granting motion to dismiss
where it would have been impossible for the plaintiff to have exhausted his administrative
remedies in the twenty-one days between the alleged incident and the filing of his initial
complaint).

     Plaintiff's claim that he informed other prison officials, including the Commissioner and
Superintendent of his grievances, does not excuse his failure to exhaust.  (*See* Dkt. No. 23 at 2.)

---

*Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).  The date that a
complaint is signed is the date that the prisoner is presumed to have handed that complaint to a
prison guard for mailing.  *See Garraway v. Broome Cnty.*, No. 5:03-CV-0681 (TJM), 2006 WL
931729, at *3-4 (N.D.N.Y. Apr. 7, 2006).  The final page of Plaintiff's original complaint is
dated May 14, 2016, and bears Plaintiff's signature.  (Dkt. No. 1 at 15.)

Indeed, it is well-settled that "[s]uch correspondence does not satisfy exhaustion and falls outside of the grievance procedures." *Rodriguez v. Cross*, No. 15-CV-1079 (GTS/CFH), 2017 WL 2791063, at *4 (N.D.N.Y. May 9, 2017) (collecting cases); *see also Geer v. Chapman*, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies.").

Similarly, Plaintiff's claim that his grievances were never answered does not excuse his failure to exhaust. (*See* Dkt. No. 23 at 3.) As discussed above, a prisoner must proceed through all three levels of the IGP to satisfy the PLRA's exhaustion requirement. "Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC." *Hernandez v. Coffey*, No. 99-civ-11615 (WHP), 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003); *see also Muhammad v. Corr. Officer Douglas*, No. 15-CV-0935 (NSR), 2016 WL 3082657, at *4 (S.D.N.Y. May 26, 2016) ("Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first step of exhaustion."); *Arce v. Keane*, No. 01 Civ. 2648 (BSJ), 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."). Only after an inmate has properly exhausted all three levels of review, including receipt of a decision from CORC, may an inmate seek relief pursuant to Section 1983. *See Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009).

Nevertheless, Plaintiff maintains his administrative remedies were not "available." (Dkt. No. 35.) Specifically, Plaintiff argues that "[w]hen prision [sic] officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA."

*Id*. at 1.  Plaintiff further maintains that his Eighth Amendment claims should not be dismissed because his grievances were not "answerd [sic] in a timly [sic] fashion which made [Plaintiff] feel very unsafe and that [his] life was in danger," thereby leaving Plaintiff with "no other option" but "to file the [§] 1983 for [his] safety."  *Id*.  Neither argument is convincing.

As an initial matter, Plaintiff claims he turned in grievances to the IG Office, which indicates that the procedure was "available" to him.  Further, as discussed above, even if Plaintiff did not receive a timely response from the IGRP, he was required to complete steps two and three of the IGP.  *See Heyliger v. Gebler*, 624 F. App'x 780, 782 (2d Cir. 2015) ("Under the regulations . . . if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step.  Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy.") (quotation marks, alteration, citation, and footnote omitted); *see also Warren v. Bealey*, No. 9:12-CV-1318 (TJM/RFT), 2014 WL 4715863, at *9 n.8 (N.D.N.Y. Sept. 22, 2014) ("in the event that the IGRC or superintendent . . . do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC") (collecting cases).  Indeed, "[o]nly upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court."  *Id*. at 9. (citations omitted).

Moreover, to the extent Plaintiff argues "special circumstances" justify his failure to comply with the exhaustion requirements before commencing this action, "that avenue has been foreclosed."  *Riles v. Buchanan*, 656 F. App'x 577, 581 (2d Cir. 2016).  Specifically, the Supreme Court has held that "[c]ourts may not engraft an unwritten 'special circumstances exception' onto the PLRA's exhaustion requirement."  *Ross*, 136 S. Ct. at 1862; *see also*

*Williams*, 829 F.3d at 123 (*Hemphill* and *Giano* have been abrogated by *Ross* to the extent those decisions established the "special circumstances" exception from the exhaustion of administrative remedies requirement in the PLRA). As the Second Circuit explained in *Williams*, "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams*, 829 F.3d at 123.

Lastly, any efforts Plaintiff may have made *since* the filing of his complaint would not cure his failure to exhaust because the PLRA requires that administrative remedies be exhausted *before* commencing a lawsuit. *See Neal*, 267 F.3d at 121 ("[E]xhausting administrative remedies after a complaint is filed will not save a case from dismissal."); *see also Chalif v. Spitzer*, No. 9:05-CV-1355 (LEK/DEP), 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008) (complete exhaustion must have occurred prior to the time the action was commenced); *e.g.*, *Pettus v. McCoy*, No. 9:04-CV-0471 (TJM), 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (dismissing action because the inmate-plaintiff filed the complaint "prior to fully completing the administrative review process).

Based upon the foregoing, the Court recommends granting Defendants' Rule 12(b)(6) motion for failure to state a claim.

### C.    Dismissal of Action

The Second Circuit has "recognized that failure to exhaust administrative remedies is usually a 'curable, procedural flaw' that can be fixed by exhausting those remedies and then reinstituting the suit." *Neal*, 267 F.3d at 123 (quoting *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999)). Thus, where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative

remedies has not expired.  *Berry v. Kerik*, 366 F.3d 85, 86-87 (2d Cir. 2004); *see, e.g.*, *Pettus*, 2006 WL 2639369, at *1-2 (dismissing complaint without prejudice for failure to exhaust). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile.  *Id*. at 86; *see, e.g.*, *Hilbert v. Fischer*, No. 12 Civ. 3843(ER), 2013 WL 4774731, at *7 (S.D.N.Y. Sept. 5, 2013) (collecting cases).

Here, the time in which Plaintiff had to exhaust his May 13, 2016, Eighth Amendment claims has likely expired.  However, because Plaintiff has raised an "availability" argument in his opposition to Defendants' motion, out of an abundance of caution and in deference to Plaintiff's *pro s*e status, the Court recommends dismissal without prejudice to refile following complete exhaustion of available administrative remedies.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' Rule 12(b)(6) motion to dismiss (Dkt. No. 26) be **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 23) be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the

---

[7] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:  July 11, 2017
       Syracuse, New York

                                      Therese Wiley Dancks
                                United States Magistrate Judge

---

and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a
Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, David L. Cochran, Esq., of Counsel, New
York, NY, for Defendants.

## DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant to
42 U.S.C. § 1983, was referred to the Hon. George H.
Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically,
Judge Lowe recommended that Plaintiff's Fourteenth
Amendment procedural due process claim against
Defendant Varkiar regarding his disciplinary hearing
be dismissed if, within thirty (30) days from the
filing of this Final Order, Plaintiff does not file
an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim.
It was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de
novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such a
review, the Court may "accept, reject, or modify, in whole
or in part, the findings or recommendations made by
the magistrate judge. The judge may also receive further
evidence or recommit the matter to the magistrate judge
with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation
of Magistrate Judge Lowe for the reasons stated in the
Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

## *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me
by the Honorable Thomas J. McAvoy, Senior United
States District Judge, for Report and Recommendation
with regard to any dispositive motions filed, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally,
in his Complaint, Raymond Robles ("Plaintiff") alleges
that three employees of the New York State Department
of Correctional Services ("DOCS"), as well as DOCS
itself, violated his rights under the Eighth and Fourteenth
Amendments when they (1) required him to submit to
a random urinalysis test when they knew he was taking
a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished
him with eighty-seven days in a Special Housing Unit for
refusing to provide a urine sample. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Currently pending before the Court is

Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

**\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom

at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

**\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.;[12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U.");[13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample;[14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's

own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

### B. Summary of Grounds in Support of Defendants' Motion

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a) (2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

Robles v. Bleau, Not Reported in F.Supp.2d (2008)
Case 9:16-cv-00593-FJS-TWD    Document 43    Filed 07/11/17    Page 19 of 121
2008 WL 4693153

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28]  The main purpose of this rule is to "facilitate a proper decision on the merits." [29]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31]  However, it is well established that even this liberal notice pleading standard "has its limits." [32]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34]  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5**  More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of

course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35]  The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37]  There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the

**Robles v. Bleau, Not Reported in F.Supp.2d (2008)**

2008 WL 4693153

complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

#### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States

Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ...." [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

#### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending

the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

### C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the

three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

### D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at \*26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question, such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

**E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction**

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his

2008 WL 4693153

medical records and call as a witness a member of the medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural

due process claim regarding his disciplinary hearing, upon penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be *GRANTED* **in part** and *DENIED* **in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be *DISMISSED* if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be *DISMISSED* **with prejudice,** and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,*

984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir.1989] ).

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax.)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax.)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22   (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25   (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26   *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27   *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of

disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8 [a], and the other aimed at the legal sufficiency of the claims).

28   *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29   *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31   *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32   2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33   *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,*

125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ...

requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

36    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from

hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alves,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the

allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12,

2008 WL 4693153

2008) ("[The obligation to construe the pleadings of
*pro se* litigants liberally] entails, at the very least,
a permissive application of the rules governing the
form of pleadings.") [internal quotation marks and
citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d
Cir.1983) ("[R]easonable allowances to protect *pro
se* litigants from inadvertent forfeiture of important
rights because of their lack of legal training ... should
not be impaired by harsh application of technical
rules.") [citation omitted].

47    See *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972)
(extra liberal pleading standard set forth in *Haines
v. Kerner,* 404 U.S. 519 [1972], did not save *pro se*
complaint from dismissal for failing to comply with
Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,*
101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,*
469 F.2d 691] [unpublished disposition cited only
to acknowledge the continued precedential effect of
*Prezzi v. Schelter,* 469 F.2d 691, within the Second
Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d
Cir.1995).

48    See *McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980,
124 L.Ed.2d 21 (1993) ("While we have insisted that
the pleadings prepared by prisoners who do not have
access to counsel be liberally construed ... we have
never suggested that procedural rules in ordinary
civil litigation should be interpreted so as to excuse
mistakes by those who proceed without counsel.");
*Faretta v. California,* 422 U.S. 806, 834, n. 46, 95
S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-
representation is not a license ... not to comply with
relevant rules of procedural and substantive law.");
*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477
(2d Cir.2006) (*pro se* status "does not exempt a party
from compliance with relevant rules of procedural
and substantive law") [citation omitted]; *Traguth v.
Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status
"does not exempt a party from compliance with
relevant rules of procedural and substantive law")
[citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124,
128, 130 (2d Cir.2005) (acknowledging that *pro se*
plaintiff's complaint could be dismissed for failing to
comply with Rules 8 and 10 if his mistakes either
"undermine the purpose of notice pleading [ ]or
prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp.
259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley
v. Dennison,* 05-CV-1033, 2007 WL 2406909, at
*6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J.,
adopting report-recommendation of Lowe, M.J.);
*Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at

*2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting
report-recommendation of Lowe, M.J.); *DiProjetto
v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307
(W.D.N.Y.2007); *Cosby v. City of White Plains,*
04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y.
Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007
WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007)
(Mordue, C.J., adopting report-recommendation
of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433,
2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007)
(Kahn, J., adopting report-recommendation of
Lowe, M.J.); *Ariola v. Onondaga County Sheriff's
Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13
(N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-
recommendation of Lowe, M.J.); *Collins v. Fed.
Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4
(N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-
recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100
(2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P.
12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    See *Ying Jing Gan v. City of New York,* 996 F.2d 522,
529 (2d Cir.1993) ("The immunity to which a state's
official may be entitled in a § 1983 action depends
initially on the capacity in which he is sued. To the
extent that a state official is sued for damages in
his official capacity, such a suit is deemed to be a
suit against the state, and the official is entitled to
invoke the Eleventh Amendment immunity belonging
to the state."); *Severino v. Negron,* 996 F.2d 1439,
1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh
Amendment does not permit suit [under Section
1983] for money damages against state officials in
their official capacities."); *Farid v. Smith,* 850 F.2d
917, 921 (2d Cir.1988) ("The eleventh amendment
bars recovery against an employee who is sued in
his official capacity, but does not protect him from
personal liability if he is sued in his 'individual' or
'personal' capacity."); *see also Will v. Michigan Dept.
of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105
L.Ed.2d 45 (1989) ("Obviously, state officials literally
are persons. But a suit against a state official in his or
her official capacity is not a suit against the official
but rather is a suit against the official's office.... As
such, it is no different from a suit against the State
itself.... We hold that neither a State nor its officials
acting in their official capacities are 'persons' under
§ 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66,

105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54    *See, infra,* note 41 of this Report-Recommendation (citing cases).

55    The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56    As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57    *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element

requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.); *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58    In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59    *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted]").

60    *See, supra,* note 44 of this Report-Recommendation.

61    *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008)

(Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U.

under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States."* ) [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives

defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67      *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68      *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69      *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered

no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; *see also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

## All Citations

Not Reported in F.Supp.2d, 2008 WL 4693153

2014 WL 7343997
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kareem LEE, Plaintiff,

v.

David O'HARER, et al., Defendants.

No. 9:13–CV–1022.
|
Signed Dec. 23, 2014.

**Attorneys and Law Firms**

Kareem Lee, pro se.

Rachel M. Kish, AAG, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

*\*1* This action, in which Plaintiff seeks review of a decision by the Commissioner of Social Security denying her son's application for Supplemental Security Income ("SSI"), was referred to the Honorable Andrew T. Baxter, United States Magistrate Judge, for a Report–Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

In the Report–Recommendation, dated May 28, 2014, Magistrate Judge Baxter recommends that Defendants' motion to dismiss (dkt.# 23) be granted and the complaint dismissed in its entirety without prejudice for failure to exhaust administrative remedies. Magistrate Judge Baxter also recommends that Plaintiff's First Amendment retaliation claim be dismissed without prejudice for failure to exhaust and for failure to state a claim, and that Plaintiff's claims against Defendants in their official capacities be dismissed with prejudice, as they are barred by the Eleventh Amendment.

Plaintiff has filed objections to the Report–Recommendation. Because objections have been filed, the Court has reviewed the record *de novo. See* 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The Court may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Having reviewed the record *de novo,* the Court has determined to accept and adopt the recommendation for the reasons stated therein.

It is therefore ordered that:

(1) The Report–Recommendation, dkt. # 33, is hereby ADOPTED;

(2) Defendants' motion to dismiss, dkt. # 23, is hereby GRANTED;

(3) Plaintiff's complaint is hereby DISMISSED WITHOUT PREJUDICE for failure to adopt administrative remedies;

(4) Plaintiffs First Amendment retaliation claim is DISMISSED WITHOUT PREJUDICE for failure to exhaust and for failure to state a claim upon which relief can be granted; and

(5) Plaintiff's claims against Defendants in their official capacities are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c), by the Honorable Thomas J. McAvoy, Senior United States District Judge.

In this civil rights complaint, plaintiff alleged that defendants O'Harer and Mattie denied plaintiff access to courts; defendants O'Harer, Mattie, Kimak, and Graham retaliated against plaintiff for filing a New York Court of Claims ("Court of Claims") action; defendants Mattie and Kimak used excessive force against him; defendants O'Harer and Graham failed to conduct adequate investigations; defendant Mattie destroyed some of plaintiff's property; and defendant Graham failed to correct staff misconduct after he learned about the

misconduct through reports. (*See generally* Compl.) (Dkt. No. 1).

**\*2** After initial review, on November 7, 2013, Senior Judge McAvoy dismissed several of the above claims. (Dkt. No. 8). There are two claims remaining in this action: (1) the First Amendment retaliation claim against defendants O'Harer and Mattie (a sergeant and a corrections officer); and (2) an Eighth Amendment excessive force claim against defendants Mattie and Kimak. (Dkt. No. 8 at 14). Presently before the court is the defendants' motion to dismiss this action for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 23). Plaintiff has responded in opposition to the motion, and defendants have filed a reply. (Dkt.Nos.28, 29). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

**I. *Motion to Dismiss***
To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant ' "fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d

Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). In light of the mandate to read the papers of pro se litigants generously, it is appropriate to consider plaintiff's additional materials, such as the factual statements in his memorandum in opposition to the defendants' motion if those statements clarify or "amplify" matters in the complaint. *Dolan v. Connolly,* No. 13 Civ. 5726, 2014 WL 1876524, at \*1 (S.D.N.Y. May 8, 2014) (Rep't–Rec.) (citing inter alia *Woods v. Goord,* No. 01 Civ. 3255, 2002 WL 731691, at \*1 n. 2 (S.D.N.Y. Apr. 23, 2002)).

**II. *Facts***
**\*3** The court will outline the facts of this case relative to the two remaining claims. The court has examined the complaint and plaintiff's response to defendants' motion to dismiss in which he has clarified the factual assertions that he made in the complaint. Plaintiff's claims arose out of his incarceration at Auburn Correctional Facility ("Auburn"). Plaintiff alleges that on November 2, 2011, he filed an action in the Court of Claims for "medical negligence" against defendants at Attica Correctional Facility ("Attica"). (Compl. at 3). On June 13, 2013, plaintiff was placed on a list at Auburn, granting him "special access" to the law library because he had a June 27, 2013 deadline in his Court of Claims action. (*Id.* at 4). Defendant O'Harer removed plaintiff from the special access list on June 20, 2013 because plaintiff had allegedly missed two library call-outs. (*Id.*) Plaintiff alleged that defendant O'Harer never "investigated" [1] why plaintiff missed the call-outs, but also claims that defendant O'Harer denied plaintiff access to the law library "in retaliation" for plaintiff's pending Court of Claims action. (*Id* . at 5, 12–13). Plaintiff states that on June 28, 2013, he filed a grievance against defendant O'Harer for his actions.

[1]   Plaintiff apparently did not dispute that he missed the call-outs, but asserted that his prison job prevented him from attending the law library. Plaintiffs claim that O'Harer did not properly investigate the reasons for plaintiff's missing the call-outs was dismissed in Senior Judge McAvoy's initial order. (Dkt. No. 8 at 9–10).

Plaintiff claims that defendant O'Harer had "numerous conversations" with defendant Mattie and discovered that

Lee v. O'Harer, Not Reported in F.Supp.3d (2014)
Case 9:16-cv-00593-EJS-TWD    Document 43    Filed 07/11/17    Page 34 of 121
2014 WL 7343997

plaintiff was housed in defendant Mattie's "area." (*Id.* at 6, ¶ 15). Apparently at the behest of defendant O'Harer, on June 22, 2013, defendant Mattie misinformed plaintiff that he had a law library call-out, when plaintiff knew he had been removed from the special access list. Plaintiff asserted that defendant Mattie hoped that plaintiff would attempt to go to the library, based upon this information, and then defendant Mattie would be able to file a misbehavior report against plaintiff for being "out of place, and, or, place something in plaintiff['s] cell that consisted of contraband." (*Id.*) Plaintiff claims that defendant Mattie did this "in retaliation for Officer David O'harer [sic]." [2] (*Id.*)

[2]    Plaintiff's meaning is unclear. When he states that defendant Mattie attempted to have plaintiff receive a misbehavior report on June 22, 2013, it appears that he is stating that defendant Mattie was doing this at the behest of defendant O'Harer, (who wished to retaliate against plaintiff for the Court of Claims action), because plaintiff states that the grievance department did not receive plaintiff's grievance against defendant O'Harer until June 28, 2013, and plaintiff asserts that he wrote the grievance against defendant O'Harer on June 24, 2013. (Compl. at ¶¶ 13–15). Defendant Mattie could not have been retaliating against plaintiff on June 22, 2013 for a grievance that he did not write until June 24 and that was not filed until June 28.

When defendant Mattie's alleged plan failed, on June 30, 2013, plaintiff claims that defendant Mattie filed a false misbehavior report against plaintiff, alleging that plaintiff approached her while masturbating. (*Id.* at 6–7). Plaintiff claims that defendant Kimak, defendant Mattie, and other unknown officers assaulted plaintiff prior to taking plaintiff to the Special Housing Unit ("SHU"), after issuing the false misbehavior report. (*Id.* at 6–7). Finally, plaintiff alleges that when defendants Mattie and another unknown officer were packing plaintiff's cell on June 30, 2013, they destroyed legal documents in retaliation for plaintiff filing the grievance against defendant O'Harer.

### III. *Exhaustion of Administrative Remedies*

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord,* 380 F.3d 670, 675–76 (2d Cir.2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock,* 549 U.S. 199, 216 (2007); *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint,* 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) (citations omitted). Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents. *Weidman v. Wilcox,* No. 6:12–CV–6524, 2014 WL 1056416, at *2–3 (W.D.N.Y. Mar. 17, 2014) (dismissing for failure to state a claim because plaintiff admitted that he failed to exhaust his administrative remedies); *Pagan v. Westchester County,* No. 12 Civ. 7669, 2014 WL 982876, at *10 (S.D.N.Y. Mar. 12, 2014) (citing inter alia *McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)).

**\*4** In *Jones v. Bock,* the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. 549 U.S. at 218 (citing *Woodford v. Ngo,* 548 U.S. 81, 88 (2006)). In *Woodford,* the Court held that "proper" exhaustion means that the inmate must **complete** the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90–103.

The grievance procedure in New York is a three-tiered process. The regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). However, if the inmate wishes to file a grievance, he must first file his grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty one days of the alleged occurrence forming the basis for his grievance. N.Y. Comp.Codes R. & Regs. tit. 7, §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the facility within seven (7) calendar

days after receipt of the IGRC's written response. *Id.* § 701.5(c)(1). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the Superintendent's written response. *Id.* § 701.5(d)(1).

There are also special procedures that may be used when the grievance is categorized as "harassment." *Id.* § 701.8. A grievance alleging harassment by staff may be sent directly to the Superintendent, and the Superintendent must issue a decision within twenty-five (25) days. The CORC has thirty (30) days to resolve any appeal. *Id.* §§ 701.8(f), 701.8(i) (incorporating by reference § 701.5(d)(2)(h)).

Extensions of the statutory time deadlines may be granted where the inmate demonstrates "mitigating circumstances." *Id.* § 701 .6(g). However, section 701.6 states that, except when the late appeal asserts a failure to implement a decision, "[a]n exception to the time limit may not be granted if the request was made more than 45 days after an alleged occurrence" *Id.* § 701.6(g)(1) (*b* ). The inmate may pursue a complaint that he was improperly denied an exception to the time limit by filing a separate grievance. *Id.* § 701.6(g)(1) (*b* ) (ii). Finally, matters that are not decided within the statutory time frames, without a request for an extension by facility personnel, and the grievant's consent, may be appealed to the next level by the inmate. *Id.* § 701.6(g)(1) (6)(ii)(2).

Because courts have held that there are still some limited exceptions to the exhaustion requirement, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311–12 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id. See also Johnson v. Schriro,* No. 12 Civ. 7239, 2013 WL 5718474, at *3 (S.D.N.Y. Oct. 15, 2013) (citing *Pease v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 445 (2d Cir.2006)).

**B. Application**

**\*5** In this case, plaintiff alleges that he "used the prison grievance procedure" at Auburn "to try and solve the problem, concerning the alleged June 30, 2013 assault.

(Compl. ¶ 22; Dkt. No. 1 at 11). Plaintiff states that the grievance was investigated, and plaintiff was informed by the investigating Sergeant that he would "return to see [plaintiff]," but when plaintiff did not hear anything after two weeks, he appealed to the superintendent. (*Id.*) At the time plaintiff filed his complaint, he was "awaiting such decision." (*Id.*)

Plaintiff alleges that he "use[d] the appeal mechanism" for the June 30, 2013 "false" misbehavior proceeding by appealing the adverse determination to the "Commissioner of disciplinary appeals." (*Id.* ¶ 24; Dkt. No. 1 at 12). Plaintiff also alleges that he "used" the prison grievance procedure regarding the June 30, 2013 incident in which defendants allegedly destroyed his property, and at the time he filed his complaint, he was "awaiting a decision." [3]

[3]    It is unclear from the complaint whether plaintiff filed a grievance only with respect to the destruction of his property or whether he included the claim that the destruction of the property was in retaliation for the Court of Claims action. In order to exhaust his retaliation claim, plaintiff would have to include "retaliation" in the grievance. In any event, it is clear that at the time plaintiff filed the complaint, his "use" of the grievance program was not "complete."

In plaintiff's response to the defendants' motion to dismiss, plaintiff concedes that the PLRA requires exhaustion of administrative remedies, but argues that he sufficiently exhausted his remedies because the "retaliation for bringing forth such grievance complaints against all named defendants was cruel and unusual punishment," and that this "warranted immediate relief through this court." (Dkt. No. 28 at 7–8). Plaintiff also states that the CORC "now" has up to six months to render a final decision, and implies that this is too long to wait because of the defendants conduct, which plaintiff could not "endure." (*Id.* at 9). Plaintiff is apparently arguing that he was compelled to file this action prematurely because the defendants were "retaliating" against him for filing the grievances, to the point where he had to ask the court for a temporary restraining order ("TRO") to "stop the retaliation." (*Id.* at 8–9).

Plaintiff states that this court denied his motion for injunctive relief, and in the interim, plaintiff exhausted all administrative appeals. (*Id.* at 8) Plaintiff has attached copies of the grievances and the final decisions to his

2014 WL 7343997

response to the defendants' motion to dismiss. (*Id.* at 19–35). Defendants maintain that plaintiff has still failed to show that he properly exhausted his administrative remedies. (Dkt. No. 29).

This court agrees. As stated above, the plaintiff must "complete" the administrative appeal process *prior to* filing his civil rights action. Although plaintiff filed a grievance against defendant O'Harer, complaining about the lack of access to the law library, he never alleged that the denial was due to retaliation for filing the Court of Claims action. (Dkt. No. 28 at 19–20). Plaintiff also filed a grievance regarding the allegedly false misbehavior report and the alleged assault, but never completed the administrative process until long after he filed this federal complaint. (Dkt. No. 28 at 31–32). The Superintendent referred plaintiff's "staff misconduct" grievance to the DOCCS Inspector General's Office on August 21, 2013. (Dkt. No. 28 at 33). Plaintiff mailed his federal complaint on August 20, 2013. (Dkt. No. 1). Plaintiff admits on the face of his complaint that he was awaiting "responses" from his grievances. (Compl. at ¶¶ 21–23). He *never* mentions any grievances that alleged retaliation for filing his Court of Claims Action. Thus, he admittedly failed to exhaust his administrative remedies, and these admissions are borne out by the documents attached to his response to defendants' motion to dismiss.

**\*6** In his response to the motion to dismiss, plaintiff claims that the assault grievance also contained the retaliation claim. (Dkt. No, 28, ¶ 16). The grievance that plaintiff filed on July 1, 2013 [4] alleges that defendant Mattie filed a false misbehavior report, and then assaulted plaintiff together with "other officers." [5] (Dkt. No. 28 at 31–32). Plaintiff claimed that defendant Mattie "has a history of falsely accusing and setting inmates up ...." (*Id.* at 31). However, there is absolutely no mention of retaliation for filing the June 24th claim against defendant O'Harer, nor is there any mention that defendant O'Harer asked defendant Mattie to falsely accuse plaintiff or assault plaintiff because he filed a Court of Claims action. Thus, plaintiff has completely failed to exhaust any retaliation claims.

[4]    The grievance is attached to plaintiff's response papers. (Dkt. No. 28 at 31–32).

[5]    As stated above, this grievance is attached to plaintiff's response to defendants' motion to dismiss.

(Dkt. No. 28). Because plaintiff refers to the grievances in his complaint and makes statements in his response about facts contained in those grievances, the court may consider them in conjunction with the motion to dismiss without converting the motion into one for summary judgment.

Plaintiff believes that he should be excused from the exhaustion requirement with respect to the claims that were exhausted *after* plaintiff filed this federal action, because he claims that he was compelled to file a request for injunctive relief in federal court prior to exhaustion due to the defendants' conduct. (Dkt. No. 28 at 8). However, an examination of plaintiff motion for a TRO, and the court's decision on this issue, shows that the TRO/ Preliminary Injunction was denied because plaintiff was seeking to enjoin speculative "future" conduct. Thus, the court found that there was no "retaliation" occurring, contemporaneous to plaintiff moving for the injunctive relief. The plaintiff's administrative remedies were clearly "available" because plaintiff utilized them; the defendants did not prevent plaintiff from filing grievances; and there are no other "special circumstances" that would excuse plaintiff's failure to wait until the administrative process was complete.

Even though plaintiff ultimately received a response from the CORC regarding the assault, (Dkt. No. 28 at 35), the law is quite clear that if the administrative remedies were completed after plaintiff filed his federal complaint, the action is still subject to dismissal for failure to exhaust. *See e.g. Neal v. Goord,* 267 F.3d 116, 122 (S.D.N.Y.2001), *overruled on other grounds by Porter v. Nussle,* 534 U.S. 516 (2002) (subsequent exhaustion after suit is filed is insufficient); *Ford v. Smith,* No. 9:12–CV–1109, 2014 WL 652953, at \*3 (N.D.N.Y. Feb. 19, 2014) (receiving a decision from CORC *after filing* a federal lawsuit does *not* satisfy the exhaustion requirement); *Harris v. Gunsett,* No. 12 Civ. 3578, 2013 WL 3816590, at \*2 (S.D.N.Y. July 22, 2013) (stating that even if plaintiff had exhausted his administrative remedies since he filed his complaint, it did not "change the fact that he failed to do so at the time at which he initiated the instant litigation"); *Baez v. Kahanowicz,* 469 F.Supp.2d 171, 179 (S.D.N.Y.2007) (claim must be completely exhausted prior to filing suit).

Thus, plaintiff's failure to exhaust his administrative remedies as to his remaining two claims may not be excused, and his failure to do so prior to filing this lawsuit

requires dismissal of the entire action. The dismissal would be without prejudice to plaintiff re-filing his complaint, having obtained final dispositions of the grievances that he filed. It appears from the documents submitted by plaintiff that he only completed the administrative process with respect to the excessive force claim, and he never raised his retaliation claims in any of the grievances. Because plaintiff has only 21 days to file a grievance, any grievance that he attempts to file regarding his retaliation claims may be met with dismissal as untimely.[6] If so, plaintiff would not be able to return to federal court to raise the retaliation claims. This court need not engage in speculation about whether plaintiff would be given the opportunity to file a late grievance claiming retaliation because the court finds that plaintiff's retaliation claim may also be dismissed on the merits, leaving only his excessive force claim as a viable claim to re-file.

[6]    The dismissal of grievances as "untimely" constitutes failure to exhaust. *Robinson v. Hens chel,* No. 10 Civ. 6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) (citing *Soto v. Belcher,* 339 F.Supp.2d 592, 595 (S.D.N.Y.2004)). Thus, if plaintiff's should return to bring anew grievance with respect to his retaliation claim, and the grievance is dismissed as untimely, he will not be able to re-file his claim in federal court in any event.

## IV. *Retaliation*

### A. Legal Standard

**\*7** In order to establish a claim of retaliation for the exercise of a First Amendment right, plaintiff must show that he engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citing *Gayle v. Gonyea,* 313 F.3d 677 (2d Cir.2002); *see also Hendricks v. Coughlin,* 114 F.3d 390 (2d Cir.1997). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d at 381 (citation omitted). This objective test applies whether or not the plaintiff was himself subjectively deterred from exercising his rights. *Id.*

To establish retaliation, the plaintiff must also establish a causal connection between the protected speech or conduct and the adverse action. *Gill v. Pidlypchak,* 389

F.3d 379, 380 (2d Cir.2004). Although a " 'plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' "[s]uch circumstantial evidence of retaliation, ... without more, is insufficient to survive summary judgment." *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 370 (S.D.N.Y.2011) (citations omitted).

A prison inmate has no constitutionally-guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if a defendant initiated disciplinary proceedings against plaintiff in retaliation for his exercise of a constitutionally protected right, substantive due process rights may be implicated even if the plaintiff did receive full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988). Any adverse action taken by defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Id.*

Even if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id. at 371.* The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett,* 343 F.3d at 137. "Threadbare" assertions of retaliation will not survive a motion to dismiss. *Dolan v. Connolly,* 2014 WL 1876524, at *11 (citing inter alia *Crenshaw v. Hartman,* 681 F.Supp.2d 412, 417 (W.D.N.Y.2010) (dismissing retaliation claim where it was unsupported by any facts showing a nexus between the adverse action and any constitutionally protected activity by plaintiff)).

### B. Application

**\*8** The first of plaintiff's two remaining claims is a First Amendment retaliation claim against defendants O'Harer and Mattie. Plaintiff alleges that the defendant O'Harer's actions in *2013* at *Auburn,* were in retaliation for a Court of Claims action that plaintiff filed in *2011* against medical personnel at *Attica.* While there is no dispute that filing a lawsuit is a constitutionally protected act, there is only

the most conclusory basis for asserting a nexus between the defendant O'Harer's actions and plaintiff's protected activity.

First, plaintiff must state how defendant O'Harer would even be aware of the 2011 lawsuit in order for plaintiff to allege that this defendant retaliated against plaintiff for filing the 2011 action. Plaintiff alleges that defendant O'Harer was well aware of all the details of the action because he had to "approve" the special access. In plaintiff's response to the motion to dismiss, he clarifies the facts of the alleged "retaliation." (Dkt. No. 28 ¶ 8). Plaintiff states that he was granted "special access to the law library on June 13, 2013, and that in order to obtain permission for special access, plaintiff had to "confirm [that plaintiff] does have a Court Order[ed] deadline before the defendant David O'Harer." (*Id.*) Plaintiff claims that he presented his legal documents to defendant O'Harer,[7] who became "angry and hostile" because he disliked the fact that plaintiff was suing New York State and was seeking the names of key witnesses, but he granted plaintiff two weeks of special access. (*Id.*) Assuming that plaintiff was actually granted two weeks of special access,[8] rather than one week, it is not plausible that defendant O'Harer was so upset about plaintiff's lawsuit that he granted plaintiff twice time allowed under the special access rules.[9]

[7]     Although the court is not making such a finding, it appears that the plaintiffs special access request was not approved or signed by defendant O'Harer. (Dkt. No. 28 at 17). Thus, plaintiff may never have submitted his legal documents to this defendant. Plaintiff makes this claim because it is the only way that he could claim that defendant O'Harer became angry over plaintiff's lawsuit.

[8]     The court will simply assume that plaintiff was granted the two week special access.

[9]     The court notes that the special access rules only allow "seven (7) consecutive days" of special access, and that the last day of special access would have been June 20, 2013, the second day that plaintiff missed his call-outs. (Dkt. No. 28 at 17–18). Thus, under normal circumstances, plaintiff would not have been allowed to continue his special access to the law library after June 20, 2013 (seven consecutive days after access was granted on June 13, 2013. (Dkt. No. 28 at 17).

With respect to defendant O'Harer taking plaintiff off of the special access list, plaintiff *admits* that he failed to attend two call-outs. He asserts in his response to the defendants' motion to dismiss that there was a good excuse for failing to attend the call-outs. (*Id.* at 4–5). Plaintiff states in his response and in the grievance he filed regarding this incident that he did not attend the call-outs because he was given a mandatory call-out for his "institutional job," and his supervisor was going to call the library to let someone know about plaintiff missing the library call-out. (*Id.* at 4). Plaintiff claimed in his grievance that Officer Myers and defendant O'Harer failed to properly investigate the plaintiff's reasons.[10] Plaintiff claimed that the officers never called his job supervisor to confirm his whereabouts. (*Id.*) It is clear, however, that plaintiff did miss the call-outs, and that defendant O'Harer could have removed plaintiff from the special access list notwithstanding any intent to retaliate.

[10]     Plaintiff's library grievance was filed against defendant O'Harer and Officer Myers, who is not a defendant in this action. (Dkt. No. 28 at 19). There is no claim of retaliation in the grievance, and Officer Myers is listed before defendant O'Harer on the grievance. (*Id.*)

Plaintiff's grievance never mentioned that defendant O'Harer was retaliating for plaintiff's lawsuit.[11] In any event, defendant O'Harer was a law library officer, who may or may not have seen plaintiff's documents. Even assuming that he did see the documents, it not plausible that defendant O'Harer would have become angry and hostile because plaintiff was suing "New York State" in the Court of Claims and was looking for the names of witnesses. Most of the inmates who use the law library are doing so because they are filing or have filed a lawsuit. Any time that defendant O'Harer took an adverse action against an inmate, the inmate could claim that defendant O'Harer was retaliating due to the inmate's legal activities. Thus, plaintiff's retaliation claim against defendant O'Harer would be subject to dismissal regardless of his failure to exhaust.

[11]     It is not necessary for the court to base its decision on any information in plaintiff's grievance for this particular issue, because he admits that he failed to appear for two call-outs. However, plaintiff has referred to the grievances specifically in his complaint, and he has filed copies of the grievances in his response to the motion to dismiss. Thus, the court

could consider the documents in conjunction with the motion to dismiss for failure to state a claim. As stated above, in deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d at 88; *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

**\*9** Finally, it unlikely that defendant O'Harer, a law library officer at Auburn, would be retaliating against plaintiff for a lawsuit that plaintiff filed two years earlier against New York State,[12] claiming malpractice against medical personnel at Attica that defendant O'Harer probably did not even know. *See, e.g., Hare v. Hayden,* 09 Civ. 3135, 2011 WL 1453789, at \*4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendants retaliation for complaints against another defendant.") (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about a prior incident by another corrections officer); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 369 (S.D.N.Y.2011) (plaintiff failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in) (collecting cases); *Ciaprazi v. Goord,* 9:02–CV–915 (GLS/DEP), 2005 WL 3531464, at \*8–9 (N.D.N.Y. Dec. 22, 2005) (granting summary judgment and dismissing retaliation claim based only on plaintiff's conclusory allegations that the manifest falsity of the misbehavior report and testimony during the disciplinary hearing indicated the disciplinary matters were motivated by retaliatory animus due to grievances plaintiff filed against individuals other than the defendants involved in the disciplinary action). Thus, plaintiff's claims of retaliation against defendant O'Harer fail to state a claim.

[12]    There is no individual liability in the Court of Claims, thus, plaintiff cannot claim that defendant O'Harer was trying to "protect" an individual who he may have known.

Plaintiff claims that defendant Mattie's motivation for filing the false misbehavior report, for orchestrating the assault on plaintiff, and for the various forms of property destruction claimed by plaintiff, was plaintiff's grievance against defendant O'Harer. The court would first point out that plaintiff's claims against defendant Mattie for attempting to misinform plaintiff so that he would receive a misbehavior report for "being out of place" occurred on June 22, 2013, six days prior to the grievance committee even receiving plaintiff's grievance against defendant O'Harer on June 28, 2013. It is impossible for defendant Mattie to retaliate for a grievance that would not be filed for six days against another officer.

When plaintiff brought his grievance on July 1, 2013, against defendants Mattie and Kimak, accusing defendant Mattie of filing a false misbehavior report and defendants Mattie and Kimak of the subsequent assault, plaintiff never mentioned that defendant Mattie was retaliating against plaintiff "on behalf of" defendant O'Harer because of the one grievance that he filed against defendant O'Harer. (Dkt. No. 28 at 31). In fact, plaintiff accused defendant Mattie of having mental problems and having a "history" of false accusations against *"inmates." (Id.* at 31). This has nothing to do with plaintiff's legal activities or his grievance against defendant O'Harer.

**\*10** Plaintiff similarly accuses defendant Kimak of "retaliation" in addition to the assault.[13] His allegation against defendant Kimak is even more speculative. (Compl.¶ 29). Plaintiff simply alleges that defendant Kimak was called to the housing unit to escort plaintiff to SHU after defendant Mattie accused plaintiff of misbehavior. (Compl. ¶ 15 at p. 7). There is absolutely no indication that defendant Kimak was aware of, or retaliated for, any "grievance" filed by plaintiff against defendant O'Harer, the only one of which plaintiff alleges was filed two days prior to the "assault." Thus, the retaliation claim may be dismissed as against defendant Kimak.

[13]    Senior Judge McAvoy's decision did not address any claim of retaliation as against defendant Kimak. This may be so because plaintiff only briefly alleged retaliation in one conclusory sentence in the complaint. (Compl.¶ 29).

Thus, plaintiff's claims of retaliation may be dismissed without prejudice for failure to state a claim. The only claim that remains is plaintiff's claim against defendants Mattie and Kimak for their involvement with the alleged assault, which is a claim apart from any retaliation claim.

## V. *Eleventh Amendment*

### A. Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (citing *Will v. Michigan Department of Police,* 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n. 3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales,* 948 F.2d 84, 87 & n. 1 (2d Cir.1991) (citations omitted).

### B. Application

In this case, to the extent that plaintiff is attempting to sue the defendants in their official capacities for *damages,* the Eleventh Amendment would also bar the action. In his response to defendants' motion, plaintiff alleges that he is also seeking injunctive relief that would not be barred by the Eleventh Amendment. The Eleventh Amendment immunity does not preclude suits for prospective declaratory and injunctive relief against state officers in their "official" capacities. *Neroni v. Zayas,* No. 3:13–CV–127, 2014 WL 1311560, at *7 (N.D.N.Y. March 31, 2014) (citing inter alia *Ex Parte Young,* 209 U.S. 123(1908)).

However, in order to avoid the Eleventh Amendment bar, a plaintiff must (a) allege an ongoing violation of federal law, and (b) seek relief that is properly characterized as prospective. *In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir.2007) (quoting *Verizon Maryland, Inc. v. Pub. Service Comm'n of Maryland,* 535 U .S. 635, 645 (2002); *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372 (2d Cir.2005)). A plaintiff seeking injunctive relief may not rely on past injury, but must show a likelihood that he will be injured in the future and the existence of an official policy or its equivalent. *Peck v. Baldwinsville Cent. School Dist .,* 351 F. App'x 477, 479 (2d Cir.2009) (citations omitted). If he cannot make this showing, he lacks standing for declaratory and prospective injunctive relief. *Id.*

**\*11** In this case, plaintiff cannot meet the first requirement for prospective injunctive relief: an ongoing violation of federal law for his remaining claims. He claims one incident in which he was assaulted by defendants Mattie and Kimak. His speculation about future harassment, "physical violence, threats, [and] destruction of personal property" are completely speculative. (Compl.¶ 32). Even plaintiff's retaliation claim, if it were to proceed, does not allege anything other than speculative future conduct. There is no allegation of any ongoing policy that could be enjoined.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 23) be **GRANTED AND THE COMPLAINT DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES,** and it is

**RECOMMENDED,** that plaintiff's First Amendment retaliation claim be dismissed **WITHOUT PREJUDICE FOR FAILURE TO EXHAUST AND FOR FAILURE TO STATE A CLAIM,** and it is

**RECOMMENDED,** that plaintiff's official capacity claims be dismissed **WITH PREJUDICE** as barred by the Eleventh Amendment.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Dated: May 28, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 7343997

---

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS:ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

**\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated his
Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]

[1]    In light of the procedural posture of the case, the
following recitation is derived from the record now
before the court, with all inferences drawn and
ambiguities resolved in plaintiff's favor. *Terry v.
Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.; see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and

2017 WL 986123

telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at 73-72.

## II. PROCEDURAL HISTORY

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action. [2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

[2]    Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

A. Legal Standard Governing Summary Judgment
Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies
**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

1. Legal Principles Governing
Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, ––– Fed.Appx. –––, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

[3]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts

a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

[4]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

[5]    Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

 *4 The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the

2017 WL 986123

superintendent to timely respond to a grievance ... can—and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[6]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

[7]    Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.*, Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

[8]    In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/ Directives/0700.pdf.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly

2017 WL 986123

filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

[9]     In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

 **\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

[10]    If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Slip Copy, 2017 WL 986123

---

2015 WL 3652511
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Rafael PEREZ, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 14 Civ. 07502(LGS).
|
Signed June 11, 2015.

### OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge.

**\*1** Plaintiff Rafael Perez brings this action pro se against the City of New York and two correctional officers pursuant to 42 U.S.C. § 1983. [1] Perez alleges that, while he was detained for three days at an intake pen in the Anna M. Kross Center ("AMKC") on Rikers Island, Defendants violated his constitutional rights under the First, Eighth and Fourteenth Amendments. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Because it is clear from the face of the Complaint that Plaintiff has failed to exhaust the administrative remedies available to him, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e et seq., Defendants' motion is granted.

[1]   By Order dated November 10, 2014, Defendant "AMKC C–95" was dismissed because it may not be sued under § 1983 and Defendant "N.Y.C.D.O.C." was dismissed and replaced with Defendant City of New York because an agency of the City of New York may not be sued except as otherwise provided by law and no exception applies.

### I. BACKGROUND

For purposes of deciding the motion to dismiss, the factual allegations pleaded in the Complaint are assumed to be true.

On August 12, 2014, Plaintiff was brought into intake at AMKC while he waited for his housing assignment. The intake pen is a temporary holding area, and inmates are required to be transferred out within 12 hours. Officer Brown, who was in charge of housing, intentionally misplaced the housing cards. As a result, on August 13, 2014, Plaintiff went to court without a shower or use of a functioning bathroom for more than 24 hours. After his court appearance, Plaintiff was placed back in the intake pen with at least 35 other inmates without access to a working toilet, shower, bed, medication, recreation, personal property, telephone or law library through August 14, 2014. Captain Shorn was aware of the situation in intake and ignored it. Due to this confinement, Plaintiff contracted fungus and ringworms.

Plaintiff filed a grievance about the incident. On an unspecified date, he filed a grievance at AMKC, but he did not receive a response. On August 13, 2014, Plaintiff informed Captain Shorn about the situation in the intake area. On another unspecified date, Plaintiff contacted the Office of Compliance. Plaintiff's opposition to Defendants' motion to dismiss also asserts that he filed complaints with the Office of the Inspector General and "311 complaint." [2]

[2]   During a conference held on April 7, 2015, Plaintiff stated that he contacted the Office of the Inspector General and New York City's 311 information service to lodge complaints about his confinement at the AMKC intake area, but he received no response.

Plaintiff's signature on the Complaint is dated August 22, 2014, and the Complaint was docketed on September 16, 2014. Defendants filed a motion to dismiss on February 20, 2015. By Order dated February 23, 2015, Plaintiff's response to Defendants' motion, if any, was due by March 20, 2015. On March 17, 2015, after Plaintiff failed to appear at a scheduled conference, Plaintiff's time to respond to the motion to dismiss was extended sua sponte to April 3, 2015, and Plaintiff was warned that failure to respond could result in dismissal of his case. During a telephone conference held on April 7, 2015, the instant motion was deemed fully submitted because Plaintiff had not filed a response. On April 14, 2015, however, the Court received a submission from Plaintiff that is construed as an opposition to Defendants' motion to dismiss and is considered on the merits.

### LEGAL STANDARD

#### A. Motion to Dismiss

**\*2** On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc ., 624 F.3d 106, 108 (2d Cir.2010).* To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

In construing complaints by plaintiffs proceeding pro se, courts "apply[ ] a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.,* 232 F.3d 135, 140 (2d Cir.2000); *see Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers [.]"). Thus, a court is obligated to construe pro se pleadings with " 'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].' " *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006)).

**B. Exhaustion**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's 'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Hill,* 657 F.3d at 124 (quoting *Porter v. Nussle,* 534 U.S. 516, 532 (2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2007).

"In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Johnson v. Rowley,* 569 F.3d 40, 45 (2d Cir.2009) (per curiam) (internal quotation marks omitted). These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones,* 549 U.S. at 218. Failure to exhaust is an affirmative defense, and a defendant must establish "that

an administrative remedy was 'available' in the sense that a grievance policy or procedure existed and covered the dispute at hand .... by reference to a 'legally sufficient source.' " *Hubbs v. Suffolk Cnty. Sheriff's Dep't,* No. 14–2472–cv, —— F.3d ——, 2015 WL 3461791, at \*4, \*6 (2d Cir. June 2, 2015) (citation omitted). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones,* 549 U.S. at 216. Nevertheless, dismissal is appropriate if it is clear from the face of the Complaint that Plaintiff failed to exhaust administrative remedies. *See id.* at 215–16.

**II. DISCUSSION**

**\*3** As an initial matter, Defendants have shown that a grievance policy or procedure existed and covered the dispute at hand by submitting the New York City Department of Correction's Inmate Grievance and Request Program ("IGRP") of which this Court takes judicial notice as a matter of public record.[3] *See Christman v.. Skinner,* 468 F.2d 723, 726 (2d Cir.1972) (affirming judicial notice of New York Correction Rules and Regulations); *Spurgeon v. Wettenstein,* No. 13 Civ. 8117, 2015 WL 1408874, \*2 n.1 (S.D.N.Y. Mar. 26, 2015) (taking judicial notice of IGRP). Inmates who wish to challenge their conditions of confinement at AMKC, such as those at issue here, are required to comply with the IGRP.

3      *Available at* http:/ /www.nyc.gov/html/doc/downloa ds/pdf/ Directive_3376_Inmate_Grievance_Request_Program.pdf

The allegations in the Complaint demonstrate that Plaintiff did not exhaust the administrative process. The IGRP lays out a four-step grievance process. First, an inmate submits an initial grievance to the IGRP staff, and the IGRP staff has five business days from receipt of the form to resolve the issue informally. Second, "[i]f the inmate is not satisfied with the informal resolution that IGRP staff provides," the inmate may request a formal hearing in front of the Inmate Grievance Resolution Committee ("IGRC"). Third, "the inmate may appeal the [IGRC's] disposition to the facility's Commanding Officer." Finally, the inmate may appeal "the Commanding Officer's disposition to the Central Office Review Committee" (the "CORC"). Before the CORC renders a decision, the New York City Board of Correction "shall be afforded five business days in which to offer any opinion or advice it may wish [to the CORC]

2015 WL 3652511

with regard to the proper resolution of the appeal of the grievance or request." "The CORC's disposition shall constitute the Department's final decision on the inmate's request or grievance." "In the event that the inmate does not receive a timely disposition at any stage of the IGRP process, the inmate may submit a request for an appeal (to proceed to the next step of the IGRP process)...." The inmate must take each of the four steps to exhaust the administrative grievance process. *Tyler v. Argo,* No. 14 Civ.2049, 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014).

The Complaint shows that Plaintiff failed to exhaust administrative remedies before commencing this action. The Complaint alleges that Plaintiff filed a grievance at AMKC, which is the first step of the IGRP's administrative procedure. Although the Complaint asserts that prison authorities did not respond to his grievance, the IGRP provides a right to appeal when an inmate does not receive a timely response to his grievance. Plaintiff was obligated to appeal and comply with the IGRP's procedures. *See Woodford v. Ngo,* 548 U.S. 81, 90 (2006).

The timing of the Complaint also shows that the grievance process could not have been completed when Plaintiff commenced this action. The Complaint was signed on August 22, 2014—just one week after the events in question occurred. The IGRP gives the IGRP staff, the first level in the grievance process, five business days from the date the grievance was received to respond. Assuming that Plaintiff filed his grievance immediately on August 14, 2015, only six business days had elapsed before he commenced this action. When the IGRP staff failed to respond on the fifth business day, Plaintiff could not have proceeded through the next three steps of the administrative appeals process in less than one day. [4]

[4]    In fact, Plaintiff stated at the April 7, 2015 conference that, when he did not receive a process. Although Plaintiff's statements at this conference are not relied upon for this motion to dismiss, they provide further support that Plaintiff failed to exhaust.

**\*4** Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process specified in the IGRP. An inmate "must procedurally exhaust his claims 'by compl[ying] with the system's critical procedural rules.' " *Macias v. Zenk,* 495 F.3d 37, 43 (2d Cir.2007) (quoting *Woodford,*

548 U.S. at 82). "[A]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Id.* at 44 (alterations in original) (internal citation and quotation marks omitted). Because notices to Captain Shorn, the Office of Compliance, the Office of the Inspector General, and New York City's 311 service about a grievance are not steps in the required IGRP administrative process, Plaintiff at best has performed only the first step of the multistep IGRP process. Accordingly, these steps do not excuse Plaintiff's failure to exhaust.

Plaintiff has not pleaded any additional facts that would excuse his failure to exhaust administrative remedies. The Second Circuit has recognized three categories of "caveats" to the exhaustion requirement, where "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cnty. of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)). The Second Circuit has questioned whether the estoppel or special circumstances exceptions survive the Supreme Court's holding in *Woodford* concerning proper exhaustion, but declined to reach the issue. *Amador v. Andrews,* 655 F.3d 89, 102–03 (2d Cir.2011).

Even assuming the continued viability of the exceptions to the exhaustion doctrine, none of them apply. Consequently, the Complaint must be dismissed for failure to exhaust. Plaintiff timely filed his grievance, which indicates that the procedure was available to him. Nothing in the Complaint suggests Defendants or any other official prevented Plaintiff from filing a grievance or continuing with his administrative appeals. Defendants also timely raised their exhaustion defense in their motion to dismiss, which Plaintiff has opposed. Finally, the Complaint does not indicate that special circumstances exist that would excuse Plaintiff's failure to comply with the IGRP. Accordingly, Plaintiff's Complaint must be dismissed for failure to exhaust.

The dismissal, however, is without prejudice. Plaintiff has informed the Court of additional facts that are not in the Complaint and that might give rise to a claim after

2015 WL 3652511

Plaintiff exhausts his administrative remedies. *See Nielson v. Rabin,* 746 F.3d 58, 64 (2d Cir.2014) (reversing district court's denial of leave to amend because if the "complaint were amended to include the allegations in [plaintiff's] opposition to the motion to dismiss, the complaint would sufficiently set forth [a claim]"). At a conference on April 7, 2015, Plaintiff asserted that the bathroom in the intake pen "was overfull and [ ] flooded out" and that he was forced to sleep on the floor next to the bathroom. In his opposition, Plaintiff stated that he was denied "medications to prevent [him] from having seizures." These allegations suggest that Plaintiff may be able to state a claim. Accordingly, Plaintiff may file a new lawsuit asserting these claims after he completes the additional steps in the IGRP grievance procedures identified above.

**\*5** Plaintiff is advised that, because he did not exhaust his administrative remedies, the Complaint is dismissed without reaching the merits of his claims for violations of the First, Eighth and Fourteenth Amendments. Plaintiff is warned that if he chooses to file a new lawsuit but fails to allege in the Complaint the necessary facts to support his claims, his action may be dismissed with prejudice and he would be barred from refiling it.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice. The Clerk of Court is directed to close Docket Number 17 and terminate this case. The Clerk of Court is also directed to mail a copy of this Opinion and Order to the pro se Plaintiff.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3652511

---

**End of Document**                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3798227
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Joshua S. PRICE, Plaintiff,
v.
CITY OF NEW YORK, Defendant.

No. 11 Civ. 6170(TPG).
|
Aug. 30, 2012.

### OPINION

THOMAS P. GRIESA, District Judge.

**\*1** Plaintiff, Joshua S. Price, is an inmate formerly housed at the Northern Infirmary Command, a New York City Department of Correction ("DOC") facility on Rikers Island. Plaintiff brings this action under 42 U.S.C. § 1983, alleging that he was served food that made him sick for several days.

Defendant, the City of New York, moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

The motion is granted.

### The Complaint

Plaintiff alleges that during the afternoon meal at the Northern Infirmary Command on July 2, 2011, he received food that smelled bad. Plaintiff further alleges that he complained to an officer, but that the officer said nothing was wrong with the food. He states that he had no choice but to eat the food. Plaintiff apparently ate the food.

On July 3, 2011, plaintiff allegedly became ill with severe stomach pain, diarrhea, vomiting, headache, and lightheadedness. He alleges that he was sick until July 8, 2011, that he was largely unable to move during his illness due to pain and diarrhea, and that he missed a court appearance as a result.

Plaintiff states that he filed a grievance with the correctional facility regarding his claim. According to plaintiff, the result of his grievance was "nothing they have not responded." Plaintiff further states that he sent his grievance to Albany.

Plaintiff filed his complaint on July 23, 2011. He seeks financial compensation for his pain and suffering in the amount of $50,000. On October 19, 2011, the court granted plaintiff's request to proceed *in forma pauperis.* Plaintiff originally named as defendant "New York City Department of Correctional Services Food Administration." In an order of service dated October 25, 2011, the court stated that it was unclear whether such an entity exists but found that it was clear that plaintiff intended to sue the City of New York. As such, the court dismissed the New York City Department of Correctional Services Food Administration and added the City of New York as a defendant. On January 12, 2012, defendant moved to dismiss the complaint under Rule 12(b)(6). On January 24, 2012, defendant filed a certificate of service certifying that the motion papers had been served on plaintiff. To date, plaintiff has not responded to the motion.

### Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Fed. R. of Civ. Proc., a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v.. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). Where a plaintiff is proceeding *pro se,* the complaint is held to a less stringent standard, and the court must construe the plaintiff's pleadings liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006). In deciding a motion under Rule 12(b)(6), a court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor, and may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

**\*2** A motion under Rule 12(b)(6) should be granted where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Goldman*

*v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (internal quotations omitted). It should also be granted where an affirmative defense or other reason barring relief is apparent from the face of the complaint. *Conopco, Inc. v. Roll Int'l et al.,* 231 F.3d 82, 86–87 (2d Cir.2000).

Defendant argues that the complaint should be dismissed because: (i) plaintiff has not exhausted his administrative remedies; (ii) plaintiff concealed deposits into his inmate account on his application to proceed *in forma pauperis,* warranting dismissal under 28 U.S.C. § 1915(a)(1); (iii) plaintiff has failed to sufficiently allege a constitutional violation; (iv) plaintiff's claims for compensatory damages are barred by Section 1997e(e) of the Prison Litigation Reform Act as he alleges only a *de minimus* physical injury; and (v) plaintiff has not adequately pled a basis for municipal liability.

*Failure to Exhaust Administrative Remedies*
Where Congress so requires, a plaintiff must exhaust administrative remedies prior to pursuing an action under 42 U.S.C. § 1983. *See Giano v. Goord,* 250 F.3d 146, 150 (2d Cir.2001); *Lawrence v. Goord,* 238 F.3d 782, 785 (2d Cir.2001); *Nussle v. Willette,* 224 F.3d 95, 97–98 (2d Cir.2000).

Under the Prison Litigation Reform Act ("PLRA"), Congress has stated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or another Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision imposes a mandatory exhaustion requirement on incarcerated plaintiffs prior to filing an action in federal court. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Porter v. Nussle,* 534 U.S. 516, 524 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.,* at 532.

The Supreme Court has recognized that the PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits, and to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 524–25. The "administrative process can serve a constructive purpose in resolving inmate claims, remedying errors by prison officials, and streamlining and

clarifying those issues that remain for a court to decide." *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001). The Second Circuit has stated that "courts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmateplaintiffs to file or proceed with lawsuits before exhausting administrative remedies." *Id.*

**\*3** The DOC has an established grievance procedure, which

> requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC") for informal resolution within five working days; (2) request a formal hearing before the [IGRC], with a recommendation to be made within three working days; (3) appeal to the facility warden, who must render a decision within five working days; (4) appeal to the NYCDOC Central Office Review Committee ("CORC"), who must issue a recommendation within twenty working days; and (5) appeal to the Board of Correction, who must issue a recommendation to the Commissioner within twenty working days. The Commissioner must issue a final decision within ten working days of receipt of that recommendation.

*Piper v. City of New York,* 2004 U.S. Dist. LEXIS 29214, at *6 (S.D.N.Y. Mar. 16, 2004) (citing NYCDOC Reg. §§ III(B)(1)-(5)). A prisoner's remedies are not exhausted until he proceeds through all the steps of the grievance procedure. *Martinez v. Williams,* 349 F.Supp.2d 677, 682 (S.D.N.Y.2004). Furthermore, remedies must be exhausted *before* the suit is filed. *Neal,* 267 F.3d at 122. "Subsequent exhaustion after suit is filed therefore is insufficient." *Id.*

In this case, the events giving rise to plaintiff's claim allegedly occurred beginning July 2, 2011, with the results lasting through July 8, 2011. Plaintiff subsequently filed his complaint in this case on July 23, 2011. Although his complaint states that he filed a grievance, there is no indication that he pursued his grievance through all steps of the procedure. Furthermore, given the timelines for the

grievance procedure outlined in the DOC's regulations, it would have been impossible for him to do so in the 21 days between the alleged incident and the filing of his complaint. It is clear from the face of the complaint that plaintiff has failed to exhaust the administrative remedies available to him. As such, plaintiff's complaint should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

*Additional Grounds for Dismissal*

As noted above, defendant also moves to dismiss plaintiff's complaint on the grounds that plaintiff concealed information on his *in forma pauperis* application; failed to sufficiently allege a constitutional violation; alleges only a *de minimus* physical injury, which is insufficient under the PLRA; and did not adequately plead a basis for municipal liability.

However, plaintiff's failure to exhaust his administrative remedies is a fully adequate grounds for dismissal. As such, the court need not reach these additional arguments, and to do so would frustrate Congress's purpose in requiring exhaustion of remedies under the PLRA.

*Conclusion*

Defendant's motion is granted. The case is dismissed. This opinion resolves the motion listed as item number 15 on the docket.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3798227

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 2791063
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Edy RODRIGUEZ, Plaintiff,
v.
J. CROSS, Sergeant, Clinton
Correctional Facility; et al., Defendants.

No. 15-CV-1079 (GTS/CFH)
|
Signed 05/09/2017

**Attorneys and Law Firms**

Edy Rodriguez, East Elmhurst, NY, pro se.

Ryan E. Manley, Harris, Conway & Donovan, Christopher J. Hummel, New York State Attorney General, Albany, NY, for Defendants.

## REPORT-RECOMMENDATION AND ORDER [1]

[1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

**Christian F. Hummel**, U.S. Magistrate Judge

**\*1** Plaintiff pro se Edy Rodriguez ("Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Sergeant ("Sgt.") J. Cross, Sgt. R. Furnia, Correction Officer ("C.O.") G. Falcon, and C.O. J. Roberts (collectively "Defendants") violated his constitutional rights under the First and Eighth Amendments. Dkt. No. 1 ("Compl."). [2]

[2]  On March 27, 2017, this Court granted plaintiff an extension until May 1, 2017 to file a motion to amend his complaint. Dkt. No. 38. The deadline has expired and plaintiff has not filed a motion to amend his complaint.

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(a) for plaintiff's failure to exhaust administrative remedies before commencing this action. Dkt. No. 26. Plaintiff filed a response in opposition to defendants' motion. Dkt. No. 34. Defendants filed a reply. Dkt. No. 39.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party. See subsection II(A) infra. At the relevant times giving rise to plaintiff's claims, plaintiff was an inmate incarcerated at Clinton Correctional Facility ("Clinton").

On July 10, 2014, plaintiff wrote a letter to Sgt. Cross "complaining about being harassed" by staff at Clinton. Compl. at 4. Plaintiff further alleges that he was taken out of his cell on July 14, 2014, brought to the second floor of the facility's hospital, and subjected to a "beating" by defendants. Compl. at 4-5. Sgt. Cross grabbed him by the hair; Sgt. Furnia punched him; and C.O. Falcon and C.O. Roberts punched him in the face, back, and neck. Id. at 4. Plaintiff alleges "each one of the blows" he suffered was from the named defendants, as well as other officers he cannot identify by name. Id. at 5-6. After the alleged incident, plaintiff was seen by a nurse with "about ten" officers present in the room, where he admits "having no choice," but to tell the nurse that officers had just beat him up. See Affirmation of Christopher J. Hummel ("Hummel Aff."), Dkt. No. 26-1, Exhibit ("Exh.") A [3] at 59-60. [4]

[3]  Exhibit A to the Affirmation of Christopher J. Hummel is a transcript of plaintiff's deposition, held on September 19, 2016 at Great Meadow Correctional Facility. See Dkt. No. 26-1.

[4]  When citing documents within the record, the Court uses the page numbers generated by CM/ECF.

While at Clinton, plaintiff filed five grievances. See Declaration of Christine Gregory ("Gregory Decl."), Dkt. No. 26-3 Exh. A at 6. Only one grievance was appealed. Declaration of Jeffrey Hale ("Hale Decl."), Dkt. No. 26-2 ¶¶ 12-13. The subject matter of the single appealed grievance does not concern the matter before the Court. Id. ¶ 12. The only grievance filed that is pertinent to the pending motion was filed on July 29, 2014. See Gregory Decl. Exh. B at 8. This grievance alleges that plaintiff suffered "an assault by (C.O.)" and, following the

assault, did not receive appropriate medical care. Id. The investigation into the July 29, 2014 grievance concluded that plaintiff saw his medical provider, and medicine was given to him without any further action. Id. at 10. The investigation did not mention anything about an assault. Id.

**\*2** Plaintiff alleges that he filed a grievance regarding the incidents described in his complaint, but an unidentified Sergeant destroyed the grievance. Compl. at 2. He also alleges that he was beaten by correction staff for filing the grievance. Id. Plaintiff also states that he filed a handwritten grievance (not on a grievance form) on July 19, 2014, regarding the July 14, 2014 incident. See Hummel Aff. Exh. A at 93. Plaintiff alleges that he sent a copy of this grievance to his mother and instructed her to send it directly to Clinton "[f]rom outside." Id. at 94. Defendants have no record of this grievance being filed. See Gregory Decl. Exh. A at 6. Plaintiff never inquired further about the July 19, 2014 grievance, but maintains that he has handwritten copies of the grievance since he did not have access to carbon paper when he originally drafted this grievance. See Hummel Aff. Exh. A at 94-95, 96-97. The July 19, 2014 grievance was drafted while plaintiff was in keeplock. Id. at 93.

Plaintiff further alleges, in his response to defendants' motion for summary judgment, that defendants have total control over facility mail and any failure to exhaust administrative remedies occurred because defendants strategically removed grievances from the mailbox to cover up their use of excessive force against plaintiff. See Dkt. No. 34 at 4. Plaintiff further alleges a general belief that there is a pattern of prison officials threatening and retaliating against inmates for filing grievances, thus making administrative remedies unavailable. Id. at 6. Lastly, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or the complaint does not involve staff misconduct. Id. at 8.

## II. Discussion [5]

[5]    All unpublished opinions cited to by the Court in this Report-Recommendation and Order are, unless otherwise noted, attached to this Report-Recommendation and Order.

Plaintiff alleges that defendants retaliated against him in violation of the First Amendment, used excessive force against him in violation of the Eighth Amendment, and violated his Due Process rights under the First and Fourteenth Amendments. See Compl. at 7. Defendants argue that plaintiff's complaint should be dismissed in its entirety as plaintiff failed to exhaust his administrative remedies with respect to the causes of action outlined in the Complaint. See Defendants' Memorandum of Law, Dkt. No. 26-5 at 3.

### A. Legal Standard For Motions Pursuant to Fed. R. Civ. P. 56(a)

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "In determining whether summary judgment is appropriate, [the Court] will resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact. Carey, 923 F.2d at 19. "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. Partnership, 22 F.3d, 1219, 1224 (2d Cir. 1994).

**\*3** Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," ... that a pro se litigant's submissions must be construed "liberally," ... and that such submissions must be read to raise the strongest arguments that they "suggest," .... At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, ... or arguments that the submissions themselves do not "suggest," ... that we should not "excuse frivolous or vexatious filings by pro se litigants," ... and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law" ....

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191–92 (2d Cir. 2008).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006). The exhaustion requirement applies " 'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " Mauldin v. Kiff, No. 11-CV-107-A, 2014 WL 2708434, at \*4 (W.D.N.Y. June 16, 2014) (quoting Porter, 534 U.S. at 532). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Porter, 534 U.S. at 524. To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated. Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, the Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). As such, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

**\*4** Although the Supreme Court's decision in Ross eliminates the "special circumstances" exception promulgated by Hemphill, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

Here, there is no genuine dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5. First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident. Id. at § 701.5(a)(1). An IGP representative has sixteen calendar days to

informally resolve the issue. Id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to the Central Office Review Committee ("CORC") within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).

### 1. Application

First, the Court will address whether there is any genuine dispute that plaintiff failed to exhaust his administrative remedies. Courts in the Second Circuit have consistently held that any informal resolutions or relief outside of the administrative procedures do not satisfy exhaustion requirements. See, e.g., Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) (holding that regardless of whether prison officials know of plaintiff's complaints in a "substantive sense," procedural exhaustion of remedies must still occur); Ruggiero v. Cty. of Orange, 467 F.3d 170, 177-78 (2d Cir. 2006); Perez v. City of N.Y., No. 14 CIV. 07502(LGS), 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) ("Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process.").

Here, subsequent to the alleged events giving rise to the matter before the Court, plaintiff states he and family members contacted the Inspector General's Office to complain about prison conditions and concerns of plaintiff's safety. See Hummel Aff. Exh. A at 89, 90. Such correspondence does not satisfy exhaustion and falls outside of the grievance procedures. See Geer v. Chapman, No. 9:15-CV-952(GLS/ATB), 2016 WL 6091699, at *5 (N.D.N.Y. Sept. 26, 2016), report and recommendation adopted, No. 9:15-CV-952 (GLS/

ATB), 2016 WL 6090874 (N.D.N.Y. Oct. 18, 2016) ("It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies."); Salmon v. Bellinger, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4411338, at *4 (N.D.N.Y. July 5, 2016), report and recommendation adopted by, No. 9:14-CV-0827(LEK/DJS), 2016 WL 4275733 (N.D.N.Y. Aug. 12, 2016) (holding that letters sent to the Inspector General do not satisfy exhaustion procedures).

**\*5** After the alleged incident of excessive force, plaintiff was seen by a nurse in a room with "about ten" officers present, where he admits "having no choice" but to tell the nurse that the officers had beat him up. Hummel Aff. Exh. A at 59-60. Plaintiff alleges filing grievances on July 19, 2014 and July 29, 2014 that mention the assault. See id. at 93; Gregory Decl. Exh. B at 6, 8-10. Defendants state that there is no record of appeal on any grievances pertaining to the alleged assault. Gregory Decl. ¶ 15. While plaintiff's complaints were aired verbally and in writing, plaintiff failed to utilize the procedures required to exhaust administrative remedies. Timmons v. Schriro, No. 14-CV-6606(RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."). Thus, there is no genuine dispute that plaintiff failed to exhaust his administrative remedies.

As a result, the Court must determine whether administrative remedies were in fact available to plaintiff. See Ross, 136 S. Ct. at 1858 ("An inmate ... must exhaust available remedies, but need not exhaust unavailable ones"); Mena v. City of New York, No. 13-cv-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing Ross, 136 S. Ct. at 1862) ("[T]he lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him."). Plaintiff sets forth three factual arguments as to why administrative remedies were not available to him. First, plaintiff alleges that the grievance procedures were unavailable to him because he was denied access to paper and writing instruments. See Compl. at 3. Next, plaintiff alleges that he was physically beaten when he attempted to take steps to utilize the grievance process. Id. Lastly, plaintiff suggests that he never received a response to his grievance, his mail was tampered with, and his letters were not delivered. See Hummel Aff. Exh. A at 91-92, 94.

### a. Lack of Paper and Pen to
### Complete Grievance Procedures

The third prong of Ross is triggered by plaintiff's argument that he was denied access to pen and paper, as it shows an alleged attempt to stop him from taking part in the grievance process. When a plaintiff-inmate asserts that a defendant-facility withheld pens, courts have granted summary judgment against a plaintiff when "the record does not show that "[p]laintiff indicated to prison officials that he needed a pen so he could file a grievance or that prison officials refused to provide him a pen for this purpose." Mena v. City of N.Y., No. 12 CIV. 6838(GBD), 2013 WL 3580057, at *2 (S.D.N.Y. July 10, 2013). When an inmate argues that a correction officer denies him access to pen or paper, even assuming the allegations are true, courts examine whether the inmate was drafting other documents during the same time period, or whether they were able to access materials from other sources. See Williams v. Ramos, No. 13 CV 826(VLB), 2015 WL 864888, at *3 (S.D.N.Y. Feb. 9, 2015) ("It is unclear how plaintiff was able to submit [other] grievances if defendants took his pens and paper and threatened him ... Moreover, when defendants allegedly stole his pens and papers, plaintiff testified he was able to file grievances on his commissary sheet."); Lahoz v. Orange Cty. Jail, No. 08 CIV. 4364(RWS), 2010 WL 1789907, at *3 (S.D.N.Y. Apr. 29, 2010) (stating that an inmate was not deprived of writing materials when he drafted a handwritten letter during the same time period as the grievance process).

Here, the Court notes contradictory statements within the complaint pertaining to plaintiff's access to writing instruments or paper. When prompted as to why facts relating to the complaint were not presented in the grievance program, plaintiff asserts that he was denied a paper or pen. Compl. at 3. However, plaintiff also states that he wrote a grievance, the grievance was destroyed by a Sergeant, and he was beaten in retaliation for writing the grievance. See id. at 2. The only time plaintiff asserts that he was denied a paper and pen was when he was taken to the Special Housing Unit ("SHU") [6] on July 14, 2014 after the alleged incident. See id. at 3; Hummel Aff. Exh. A at 68. In fact, records indicate that plaintiff filed grievances on July 19, July 29, August 4, and November 19 of that same year. [7] Gregory Decl. Exh. A at 6. Plaintiff does not allege any difficulties obtaining a pen and paper after the

July 2014 SHU stay, but rather, admits having "a piece of paper that an inmate had and a pen" on at least one occasion. See id. at 94.

[6]   SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population...." N.Y. COMP. CODES R. & REGS . tit. 7, § 300.2(b). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[7]   Both the August and November grievances are unrelated to the cause of action before the Court. Gregory Decl. Exh. A at 6.

*6   Lastly, in his response to defendants' motion for summary judgment, plaintiff alleges that there is an "unwritten posture" at Clinton where inmates are not given grievance forms unless they provide a clear description of their complaint, or if their complaint does not involve staff misconduct. Dkt. No. 34 at 8. Such general allegations without any factual support are insufficient to show that procedures were unavailable, coupled with the fact that, grievances can and have been submitted by plaintiff on plain paper. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1) ("If this form is not readily available, a complaint may be submitted on plain paper."); see Veloz v. N.Y., 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) (granting summary judgment where plaintiff does not allege that any specific officer thwarted his efforts to timely file a grievance); Hummel Aff. Exh. A at 94.

Even if the Court assumes that plaintiff was denied access to pen and paper while in the SHU, the grievances filed in July 2014 were filed within the twenty-one calendar days required, and his subsequent failure to exhaust administrative remedies regarding those grievances is unaffected by any denial of pen and paper that occurred in the past. Thus, the Court rejects plaintiff's argument as there is no genuine dispute of fact that administrative remedies were unavailable due a lack of writing instruments or paper.

### b. Allegation that Grievance Was
### Not Received and Mail Tampering

Courts have long held that where an inmate does not receive a response to a written grievance, the inmate must appeal to the next level of review. See Khudan v. Lee, No. 12-cv-8147(RJS), 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015) (dismissing a plaintiff's complaint where plaintiff failed to appeal to the next level of review after not receiving a response to his filed grievance); see also Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004), aff'd, 178 Fed.Appx. 39 (2d Cir. 2006) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming.").

However, recent decisions by courts in the Second Circuit have addressed the availability of administrative remedies when an inmate's grievance is unfiled and unanswered. These cases have focused on the second prong of the Ross test, where a grievance process becomes unusable for an inmate. Ross, 136 S. Ct. at 1859. In Williams v. Priatno, the Second Circuit held that when an inmate's grievance is not filed, "the regulations plainly do not describe a mechanism for appealing a grievance." See 829 F.3d at 126. Thus, "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." Id. The Williams ruling relied upon a scenario where an inmate is housed in a SHU and personally gives a grievance to a correction officer, as required by grievance procedures. Id. at 120-21. Additionally, adding to the "opaque" nature of the procedures, the plaintiff in Williams followed up when he did not receive a response after a week, but was subsequently transferred one week later without any resolution or knowledge of his grievance being filed. Williams, 829 F.3d at 120-21. Ultimately, the Williams Court held that "in giving his grievance to the correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." Id. at 126.

Here, in his September 19, 2016 deposition, plaintiff sets forth facts suggesting prison staff filtered his mail and "when they [saw] grievances" they were thrown to the side, not delivered, "and were never [ ] seen." See Hummel Aff. Exh. A at 91-92. The grievance that plaintiff allegedly filed on July 19, 2014 was sent to the Clinton grievance office by his mother. Id. at 94. Plaintiff never received a response on the grievance or followed up on the status

of the grievance. Id. Without concrete facts, plaintiff states that his grievance was not resolved because "no civilian ... picks up your grievances. It's officers." Id. at 91. Plaintiff's allegations of mail tampering are conclusory and weakened by the fact that other correspondence, including complaints, were sent and received during the general time period material to the issues before the Court. Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) ("Plaintiff makes only a conclusory statement that his mailing was not allowed to leave the facility[,] ... his contention ... is belied by his admission that he was able to send other complaints about the matter to various New York State officials at around the same time."); see Hummel Aff. Exh. A at 89, 94 (providing an example where plaintiff successfully sent legal mail to his mother).

*7 In plaintiff's response in opposition to defendants' motion for summary judgment, he raises general complaints about defendants having total control over facility mail and defendants strategically removing grievances from the mailbox to cover up their excessive use of force against plaintiff and other inmates. See Dkt. No. 34 at 2. Plaintiff's bare assertions do not excuse exhaustion requirements. Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations. Khudan, 2016 WL 4735364, at *6 (citations omitted) (holding that under Ross, mere stand alone contentions of mail tampering without support and particularity cannot deem administrative remedies unavailable); Veloz, 339 F. Supp. 2d at 516 (holding that summary judgment is proper where the plaintiff contends that officers misplaced his grievances, but offers no evidence to support his claim). In Khudan, the court did not consider or rely upon conclusory allegations when plaintiff attested he "was informed by other [unnamed] inmates that grievances routinely go 'missing.' " Khudan, 2016 WL 4735364, at *6. This is similar to plaintiff's conclusory theory of injustice and displeasure with mail procedures, and other "recurrent pattern[s]" in New York correctional facilities. Dkt. No. 34 at 2, 4; see Khudan, 2016 WL 4735364, at *6 ("Plaintiff's accusations, which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment.") (quoting Bolton v. City of N.Y., No. 13-CV-5749(RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015)).

Courts have denied a defendant's motion for summary judgment when faced with an unanswered and unfiled grievance drafted in SHU. See, e.g., Juarbe v. Carnegie, No. 9:15-CV-01485(MAD/DEP), 2016 WL 6901277, at *1, 4 (N.D.N.Y. Nov. 23, 2016). This is distinguishable from plaintiff's alleged July 19, 2014 grievance drafted in keeplock. [8] Such a difference in inmate housing supports the notion that, "the Second Circuit's decision hinged on the 'extraordinary circumstances' specific to the case before it." Mena v. City of N.Y., No. 13-CV-2430(RJS), 2016 WL 3948100, at *5 (S.D.N.Y. July 19, 2016) (quoting Williams, 829 F.3d at 119); see N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7 (explaining that there are different grievance filing procedures for an inmate housed in the SHU). Inmates not housed in the SHU are in a different position to SHU inmates when determining if grievance procedures are "essentially unknowable" or unavailable. Id. at *5 (quoting Ross v. Blake, 136 S. Ct. at 1859).

<hr>

[8]    "Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3s 189, 192 (2d Cir. 1995); N.Y. COMP. CODES R. & REGS. tit. 7, § 301.6.

Plaintiff never followed up on the July 19, 2014 grievance. Hummel Aff. Exh. A at 94-95. However, on July 29, 2014, he filed a grievance in the facility that included medical complaints, but also a reference to the alleged assault on July 14, 2014. See Gregory Decl. Exh. B at 8. The Clinton grievance department received and responded to this grievance. Id. This grievance was not appealed. Id. ¶ 15. Even assuming, as the Court must on this motion, that plaintiff's allegations of mail tampering are true, he did not exhaust his administrative remedies when he failed to appeal the July 29, 2014 grievance to the next level of review. The fact that this grievance was subsequently filed and not appealed within close proximity to the July 19, 2014 grievance, coupled with three unrelated grievances filed within the next year, demonstrates that plaintiff's situation does not rise to the level where the grievance process is "opaque," unavailable, or unascertainable. See Hill v. Tisch, No. 02CV3901(DRH/AYS), 2016 WL 6991171, at *7 (E.D.N.Y. Nov. 29, 2016) (finding that the plaintiff failed to demonstrate that the grievance "procedures were essentially unknowable"); Gregory Decl. Exh. A at 6.

### c. Allegation that Plaintiff Suffered Retaliation and Physical Beatings

Plaintiff's pleadings also suggest an inquiry under the third prong of Ross, whether "machination, misrepresentation, or intimidation" occurred. See Ross, 136 S. Ct. at 1860. Specifically, plaintiff alleges that he did not comply with the grievance procedures because he was subjected to physical beatings, retaliation, and intimidation after complaining about conditions at Clinton. See Compl. at 3, 4, 7. For these reasons, he believed the grievance procedures were unavailable. See id. at 2-3.

*8 Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable. Ross, 136 S. Ct. at 1860 & n.3. However, a generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies. Salmon, 2016 WL 4411338, at *5. Estoppel is found where "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" occur showing that defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures. Id. at *5 (quoting Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011)). In Riles, the Second Circuit affirmed a district court's ruling that prison officials' alleged threats did not interfere with exhaustion efforts when plaintiff stated he was threatened "if he pushed the issue," but then subsequently filed a grievance in spite of the alleged threats. See Riles v. Buchanan, 656 Fed.Appx. 577, 581 (2d Cir. 2016) (summary order).

Relying on Ross, courts have carved out factual limitations to the third prong of unavailability concerning fear of retaliation. See, e.g., Aviles v. Tucker, No. 14-CV-08636(NSR), 2016 WL 4619120, at *3-4 (S.D.N.Y. Sept. 1, 2016) (citing Ross, 136 S. Ct. at 1860). In Aviles, the court noted a longstanding rule that general beliefs of retaliation or fears do not excuse the exhaustion requirement. Aviles, 2016 WL 4619120, at *4 (citations omitted). Circumstances that have met the threshold of unavailability by means of intimidation have included widespread beatings with assertions of fear for one's life, in conjunction with the plaintiff withholding all complaints until he was transferred to a different facility. See, e.g., id. (quoting Thomas v. Cassleberry, No. 03-cv-6394L, 2007 WL 1231485, at *2 (W.D.N.Y. Apr. 24, 2007)). Allegations of threats are conclusory where a plaintiff's

allegation "does not indicate who threatened him, when he was threatened, or how he was threatened." See Johnson v. Fraizer, No. 16-CV-6096(CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). In contrast, this Court has denied a summary judgment motion when a plaintiff alleged he was threatened by a specific correction that the officer would "break [plaintiff's] bones," and another specific correction officer threatened to beat plaintiff "a [sic] inch from life" if he filed a grievance. Galberth v. Durkin, No. 914CV115(BKS/ATB), 2016 WL 3910270, at *3 (N.D.N.Y. July 14, 2016).

Here, plaintiff offers conclusory allegations in his complaint that "[he] was beaten" while attempting to access Clinton's grievance program. Compl. at 2, 3. Plaintiff offers no information of when or how he was threatened or beaten after the July 14, 2014 incident. Some instances of threats alleged by plaintiff refer to a time period before he filed a grievance and he does not state how any specific threat or subsequent act of violence impacted his ability to exhaust administrative remedies related to the events that occurred on July 14, 2014. See Aviles, 2016 WL 4619120, at *4 (finding grievance procedures available where plaintiff offers conclusory allegations of fear and does not substantiate what specific fears or past acts preclude him from advancing in grievance procedures); Harrison v. Stallone, No. 9:06-CV-902(LEK/GJD), 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24, 2007) ("It has been held that a 'general fear' of retaliation is not sufficient to excuse the exhaustion requirement.... If an inmate could simply state that he feared retaliation, there would no point in having a grievance procedure.") (citations omitted); see, e.g., Hummel Aff. Ex. A at 58. Much of plaintiff's fear is generalized. For instance, he notes that corrections officers become agitated when they see legal mail and "that's when harassment comes." Hummel Aff. Ex. A at 92. By his own admission, plaintiff denies any actual physical force being used against him that prohibited him from taking part in the grievance program. Hummel Aff. Ex. A at 99; see Salmon, 2016 WL 4411338, at *5 (stating there must be affirmative actions or specific instances of physical assault or threats of retaliation for plaintiff to show unavailability of the grievance process).

**\*9** The Court notes that plaintiff directly contradicted allegations in his complaint by statements made in his deposition. While the complaint alleges conclusory instances of being "beaten by staff," plaintiff admits that other than being cut on his face by an inmate in the yard on October 5, 2015, there has not been any other physical force used against him by inmates or correction officers since July 14, 2014. Hummel Aff. Ex. A at 99; Compl. at 3. This statement contradicts plaintiff's allegations of being beaten by staff. See Williams v. Doe, No. 12-CV-1147(HKS), 2016 WL 4804057, at *5 (W.D.N.Y. Sept. 14, 2016) (granting a motion for summary judgment after noting that any triable issue of fact on exhaustion of administrative remedies can be eliminated when plaintiff's prior representations to the court are "flatly contradict[ed]").

Further, this Court finds that plaintiff's failure to follow the grievance procedures cannot be excused by fears or intimidation, when he simultaneously made his complaints known through other means. After the alleged incident, plaintiff was seen by a nurse in a room with "about ten" officers, where he admits "having no choice," but to tell the nurse that they had beaten him. Hummel Aff. Exh. A at 57-58. Plaintiff also aired his complaints and concerns in writing outside of the grievance procedures, clearly identifying his complaints in full substance, including the identification of those who committed acts against him. See, e.g., Hummel Aff. Exh. A at 93; Gregory Decl. Exh. A at 8. Similarly in Johnson v. Fraizer, the Court rejected plaintiff's argument that administrative remedies were unavailable where the plaintiff alleged he was threatened by correction officers but continued to make and send formal complaints to prison officials and other New York State officials. Johnson v. Fraizer, No. 16-CV-6096 (CJS), 2016 WL 7012961, at *5 (W.D.N.Y. Dec. 1, 2016). By plaintiff's own admission, it is clear that he sought to file the initial grievance and tell others about his complaints, which disprove any claim of intimidation or fear of retaliation. Quick v. Omittee, No. 14-CV-1503(TJM/CFH), 2016 WL 5219732, at *4 (N.D.N.Y. Aug. 11, 2016), report and recommendation adopted, No. 914CV1503 (TJM/CFH), 2016 WL 5107125 (N.D.N.Y. Sept. 20, 2016) (holding that fear of physical retaliation or assaults does not deem grievance procedures unavailable when plaintiff continuously sought to file complaints with officials). Like in Quick, where the plaintiff filed formal internal grievances and the grievance procedures were deemed available, here the plaintiff alleges drafting two internal grievances outlining the alleged July 14, 2014 incident. See id. at * 4; Hummel Aff. Exh. A at 93; Gregory Decl. Exh.

B at 8. Thus, plaintiff has not shown that administrative remedies were unavailable due to intimidation and threats.

In conclusion, the Court finds that defendants have met their burden in showing that there is no genuine issue of material fact as to plaintiff's failure to exhaust administrative remedies. Accordingly, the Court recommends that defendants' motion be granted.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 26) on plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **GRANTED**; and it is further

**RECOMMENDED** that plaintiff Edy Rodriguez's complaint (Dkt. No. 1) be **DISMISSED** in its entirety, without prejudice; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties in this action, pursuant to local rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F. 2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F. 2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

**All Citations**

Slip Copy, 2017 WL 2791063

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 6091699
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Pakenauth Geer, Plaintiff,

v.

Officer Chapman, et al., Defendants.

9:15-CV-952 (GLS/ATB)
|
Signed 09/26/2016

**Attorneys and Law Firms**

PAKENAUTH GEER, Plaintiff pro se.

MICHAEL G. McCARTIN, Asst. Attorney General for
Defendants.

## REPORT-RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge

**\*1** This matter has been referred to me for Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
LOCAL RULES N.D.N.Y. 72.3(c). Plaintiff originally
filed this action in the Eastern District of New York,
against several defendants, alleging violations of his
constitutional rights. (Dkt. No. 1, 4). On June 29, 2015,
the Honorable Carol Bagley Amon, Chief Judge in the
Eastern District of New York found that the complaint
did not state a claim for various reasons. [1] (Dkt. No. 5).
Chief Judge Amon dismissed without prejudice to plaintiff
filing an amended complaint only with respect to his First
Amendment retaliation claim. (*Id.*)

[1]   Chief Judge Amon found that some of plaintiff's
claims were barred by res judicata, and in addition, his
property claims could not be brought in federal court.
(Dkt. No. 5 at 3-4, 5-6). Chief Judge Amon also found
that plaintiff's claim for retaliation failed to state a
claim. (Dkt. No. 5 at 4-5).

On July 22, 2015, the Pro Se Office in the Eastern
District of New York received plaintiff's proposed
amended complaint. (Dkt. No. 6). The proposed
amended complaint alleged that plaintiff's typewriter
was "smashed" by defendants Chapman, McFarren, and

McMillan. (Dkt. No. 6 at 1). On July 29, 2015, after
reviewing the complaint for sufficiency, Chief Judge
Amon transferred plaintiff's amended complaint to the
Northern District of New York. (Dkt. No. 8). Chief Judge
Amon found that "[s]pecifically, he claims that defendant
corrections officers, who he alleges are employed at
Washington Correctional Facility, took adverse action
against him because he has filed lawsuits against other
officers and prison officials. (*Id.* at 1). Chief Judge Amon
also found that the events of which plaintiff
complained took place in the Northern District of New York. (*Id.* at
2). Thus, venue was improper in the Eastern District, and
the case was transferred to the Northern District of New
York "in the interest of justice." (*Id.* at 1-3).

On July 30, 2015, prior to the transfer, [2] plaintiff filed
a motion to amend the amended complaint. (Dkt. No.
9). On October 14, 2015, the Honorable Gary L. Sharpe,
reviewed plaintiff's submissions, including the first
amended complaint and plaintiff's newly filed motion to
amend. (Dkt. No. 14). Judge Sharpe interpreted plaintiff's
first amended complaint as alleging 1) harassment; 2)
wrongful destruction of personal property; 3) First
Amendment retaliation; and 4) First Amendment denial
of access to courts. (Dkt. No. 14 at 5).

[2]   Although the transfer order was signed on July
29, 2015 (Dkt. No. 8), the case was electronically
transferred on August 5, 2015. (Dkt. No. 10).

Judge Sharpe dismissed plaintiff's first, second, and fourth
claims. (Dkt. No. 14 at 6-11). Plaintiff's first and second
claims were denied on the merits and on the basis of
res judicata because plaintiff brought the same claims in
a previously dismissed Northern District of New York
action. *Geer v. McFarren*, No. 9:14-CV-0589, Dkt. No. 1.
Judge Sharpe noted that plaintiff brought his retaliation
claim in 14-CV-589, but that claim had been dismissed
"without prejudice." (Dkt. No. 14 at 7, n.7). Judge Sharpe
denied plaintiff's motion to amend. (*Id.* at 11-12). Thus,
the only remaining claim in this action is that defendants
Chapman, McFarren, and McMillan destroyed plaintiff's
typewriter in retaliation for plaintiff filing lawsuits against
other corrections officers and prison officials as stated in
the first amended complaint (Dkt. No. 6). [3] (Dkt. No. 14
at 9).

[3]   The operative pleading is Dkt. No. 6.

**\*2** Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 23). Plaintiff has not responded to the motion, notwithstanding two notices from the court of his response deadline. [4] (Dkt. Nos. 24, 25). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint.

[4]  On June 23, 2016, plaintiff filed a letter, complaining that, because defense counsel had failed to include an "errata sheet" with his motion, plaintiff could not respond to the motion for summary judgment. (Dkt. No. 26). Plaintiff apparently believed that defendants were required to file such a "sheet" because an "errata sheet" was sent with the transcript of plaintiff's deposition. (Dkt. No. 26). When plaintiff received his copy of his deposition, he appears to have utilized the errata sheet to make arguments about the merits of the action while citing to specific pages of the deposition. Defense counsel responded to plaintiff's allegations, and on June 28, 2016, I issued a Text Order, informing plaintiff that defendants did produce an errata sheet with their deposition transcript. I directed the Clerk to send plaintiff a copy of the errata sheet, but denied plaintiff's "request" that defendants produce another "errata sheet" before plaintiff responded to the summary judgment motion. My June 28, 2016 Text Order was "returned undeliverable" because plaintiff had been released to the Buffalo Federal Detention Center. (Dkt. No. 29). Plaintiff ultimately filed a change of address, indicating that he had been moved to the Federal Detention Center. (Dkt. No. 30). The court sent the Text Order to plaintiff's new address, but plaintiff still failed to respond to the summary judgment motion. (Dkt. No. 31).

## DISCUSSION

### I. Facts

Plaintiff alleges that on April 26, 2014, Officers Chapman and McMillan "ordered" Officer McFarren to smash plaintiff's typewriter at the end of Officer McFarren's "count." (Amended Complaint ("AC") at 1). Plaintiff claims that this "order" was issued because plaintiff "filed lawsuits against many officers and officials." (Id.) The second page of the amended complaint appears to be a June 13, 2014 letter that plaintiff wrote to Attorney General ("AG") Eric Schneiderman, in which plaintiff mentions that the defendants broke his typewriter, [5] but

essentially complains about subsequent events. Plaintiff states that he ordered another typewriter, which allegedly arrived at the facility on June 13, 2014. [6] However, in his letter to AG Schneiderman, plaintiff claims that unnamed officials refused to allow him to pick up the package, even after he was notified of its arrival. (Id.)

[5]  The letter states that it was "another notice of intention to file a claim, in which my typewriter are [sic] broken by officer McFarren and I've filed a lawsuit for my broken typewriter; so now I've order another typewriter from Union Supply Direct ...." (AC at 2).

[6]  It appears that plaintiff wrote the letter to the Attorney General on the same day that he was allegedly prevented from obtaining the new typewriter from the package room. The letter also states that the typewriter was "shipped" on June 13, 2014, which is not possible if it arrived on June 13, 2014 and plaintiff wrote the letter on June 13, 2014. However, the court finds that plaintiff may have written the incorrect date or he has interpreted "shipping" as "arriving."

### II. Summary Judgment

**\*3** Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Salahuddin v. Goord, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. Salahuddin v. Goord, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita

*Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

### III. Exhaustion of Administrative Remedies

#### A. Legal Standards

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be

appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id.* § 701.5(d). The court also notes that the regulations governing the Inmate Grievance Program encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id.* § 701.8.

**\*4** Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, ___ U.S. ____, 136 S. Ct. 1850, 1857) (2016). " '[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.' " *Riles v. Buchanan*, No. 15-3336-pr, 2016 WL 4572321, at \*2 (2d Cir. Sept. 1, 2016) (quoting *Ross*, ___ U.S. at ____, 136 S. Ct. at 1857). Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, ___ U.S. at ____, 136 S. Ct. at 1858. Courts evaluating whether an inmate has exhausted his or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id. See Riles*, 2016 WL 4572321 at \*2. An administrative procedure is "unavailable" when

(1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that is [sic] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, ___ U.S. at ____, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply. *Ross*, ___ U.S. at ____, 136 S. Ct. at 1859-60. The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief. *Id.* at 1859. The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it." *Id.* Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure. *Id.* at 1860.

### B. Application

Defendants argue that plaintiff has failed to exhaust his administrative remedies with respect to his First Amendment retaliation claim. Defendants state that plaintiff failed to grieve the retaliation claim through the DOCCS three-level grievance mechanism. (Def.'s Mem of Law at 3-7). Defendants have filed the declaration of Karen Bellamy, the Director of the Inmate Grievance Program for the Department of Corrections and Community Supervision ("DOCCS"). (Bellamy Decl. ¶ 1) (Dkt. No. 23-2). Director Bellamy states that she has searched the CORC records to determine whether plaintiff ever filed a grievance appeal to the CORC relating to the destruction of plaintiff's typewriter at Washington in April of 2014. (Bellamy Decl. ¶ 2). Director Bellamy declares that there are no such appeals. (*Id.*) She has attached as Exhibit A to her declaration a computer print-out listing the one CORC appeal filed by plaintiff, which is not related to the retaliation issue that he raises in this amended complaint. (Bellamy Decl. ¶ 3 & Ex A). According to the computer print-out, on June 21, 2013, plaintiff filed a grievance complaining that his legal mail was not sent out. (Bellamy Decl. Ex. A at 1). The CORC appeal was decided on January 22, 2014. (*Id.*) It is the only grievance appeal brought by plaintiff that appears on the CORC list of closed cases. (*Id.*)

**\*5** Plaintiff was deposed on February 12, 2016 at Washington Correctional Facility. (Pl.'s Dep.) (Dkt. No.

23-5). At his deposition, plaintiff testified that he wrote letters to the grievance committee, the Attorney General, and the Superintendent, but that was "the extent" of his exhaustion. (Pl.'s Dep. at 44-45). Plaintiff testified that he did not write to anyone else because a previous grievance was denied, and when he wrote to the CORC, "they sent me back to them so I say I have wasted my time." (*Id.* at 46). Defense counsel asked:

> Q. You are describing a situation in which you wrote to the Central Office?
>
> A. Yes.
>
> Q. But that was about a different matter not about the typewriter?
>
> A. Yes. I didn't write to them about this, because it's going to be the same. They're going to say I have to put it through a grievance and I have to put it through the superintendent and they don't answer. They won't answer.

(Pl.'s Dep. at 46). It is clear that plaintiff did not file a grievance [7] or appeal it properly because he did not think that he was going to get results, because he filed a previous grievance that was denied. He believed that doing so would be a "waste of time." He believed that he would not get an answer, but had no basis for that statement. The fact that his legal mail grievance was denied at the CORC level did not justify plaintiff's failure to exhaust his retaliation grievance or any other grievance that he may have had. It is well-settled that writing letters to prison officials, or other officials, is insufficient to properly exhaust administrative remedies. *See Macias v. Zenk*, 495 F.3d 37, 44-45 (2d Cir. 2007) (informal steps, putting officials on "notice" are insufficient to exhaust administrative remedies); *Gizewski v. NY DOCCS*, No. 9:14-CV-124, 2016 WL 3661434, at \*14 (N.D.N.Y. July 5, 2016) (notice through informal channels, including verbal complaints, is insufficient to exhaust administrative remedies).

[7]     During his deposition, plaintiff stated that, before he wrote to the Attorney General, he "wrote" to the superintendent and the grievance committee. (Pl.'s Dep. at 44). Plaintiff stated that he knew they would not respond.

As stated above, attached to the complaint, there is a letter that plaintiff "wrote" to the Attorney General on

June 13, 2014, stating that the letter was "another" notice of intention to file a claim. (AC at 2). The letter is in reference to the subsequent typewriter incident, and also states that plaintiff has already filed a lawsuit about the broken typewriter. [8] (*Id.*)

[8]      Plaintiff may be referring to the lawsuit that he brought in 2014 regarding the broken typewriter that was mentioned by Judge Sharpe in his October 14, 2015 order in this case. *Geer v. McFarren*, No. 9:14-CV-589 (DNH/TWD). The court notes that the complaint in 14-CV-589 states that he filed a grievance with the grievance committee and the superintendent. He also alleged that he sent the complaint to the CORC, but no action was taken. As shown herein, there was no appeal to the CORC of any grievance filed by plaintiff, relating to his claims in this case.

This is not a situation in which the administrative procedure was "unavailable" as discussed in *Ross, supra*. The grievance procedure was not complex. Plaintiff was not moved from Washington until long after the incident. Plaintiff was well-aware of how to bring a proper grievance because he had at least one previous grievance that was appealed to the CORC. Finally, there is no claim that the defendants prevented him from filing a grievance regarding the incident. Plaintiff's belief that bringing a grievance would be a waste of his time because it would be denied, or his unfounded belief that "they" would not answer, is not sufficient to justify his failure to exhaust. Thus, plaintiff has failed to exhaust his administrative remedies, and the complaint may be dismissed on that basis.

**\*6 WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 23) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 26, 2016.

**All Citations**

Slip Copy, 2016 WL 6091699

---

2003 WL 22241431
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Jose HERNANDEZ, Plaintiff,

v.

Kevin R. COFFEY, C.O., Lawrence J.
Featherston, C.O. James Chamberlain,
Sgt., M. Taylor, Nurse, Defendants.

No. 99 Civ. 11615(WHP).
|
Sept. 29, 2003.

Inmate brought a pro se § 1983 action against corrections officers, alleging civil rights violations. On a defense motion for judgment on the pleadings, the District Court, Pauley, J., held that the inmate failed to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement.

Motion granted.

West Headnotes (3)

**[1]     Courts**
👉 In General;Retroactive or Prospective Operation

Supreme court decision establishing that the Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust every claim he wishes to assert prior to filing a claim in district court applies retroactively to prisoners who filed their suits prior to the Supreme Court's pronouncement. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a).

2 Cases that cite this headnote

**[2]     Prisons**
👉 Particular Cases

Inmate's alleged complaint letters to the Commissioner of the New York Department of Corrections, a county district attorney, and

the State Police did not satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1).

6 Cases that cite this headnote

**[3]     Civil Rights**
👉 Criminal Law Enforcement;Prisons

Inmate claiming civil rights violations in connection with an alleged attack by corrections officers failed to satisfy the Prison Litigation Reform Act's (PLRA) exhaustion requirement, as required to file § 1983 suit, where he did not exhaust his administrative appeals or advance any excuse for his failure to exhaust. Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1).

14 Cases that cite this headnote

**Attorneys and Law Firms**

Jose Hernandez, Sullivan Correctional Facility, Fallsburg, New York, Plaintiff, pro se.

Susan H. Odessky, Assistant Attorney General, State of New York, Office of the Attorney General, New York, New York, for Defendants.

*MEMORANDUM AND ORDER*

PAULEY, J.

**\*1**   *Pro se* plaintiff, Jose Hernandez, brings this action against defendants Correction Officer Kevin R. Coffey, Corrections Officer Lawrence J. Featherston, Sergeant James Chamberlain, and M. (Michelle) Taylor, all employed at Downstate Correction Facility ("Downstate"), for civil rights violations pursuant to 42 U.S.C. § 1983 (2003). Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure based on Hernandez's failure

2003 WL 22241431

to exhaust his available administrative remedies prior to the initiation of this action. For the following reasons, defendants' motion is granted.

## Background

The Complaint alleges a horrific attack by the New York State Department of Correctional Services ("DOCS") personnel on Hernandez while he was incarcerated at Downstate. Hernandez was transiting through Downstate to Clinton Correctional Facility ("Clinton") following his appearance in New York State Family Court, King County. Following the attack, Hernandez was warned that if he told anyone about it he would be killed.

The alleged attack and events in its wake occurred on November 5 and 6, 1998. Hernandez commenced this action on November 29, 1999, alleging that the defendants beat him, and denied him medical care, in violation of his constitutional rights to due process and to be free from cruel and unusual punishment.

In his Complaint, and in an affidavit submitted to this Court on May 16, 2002,[1] Hernandez alleges that he exhausted the administrative remedies available to him by sending letters to Glenn S. Goord, the Commissioner of DOCS, the New York State Police, and William B. Grady, District Attorney of the "Poughkeepsie area."[2] Hernandez further indicated that as a result of these letters, no action was taken and "no results" were achieved.

[1]   At a pre-trial conference on May 3, 2002, this Court directed Hernandez to submit a sworn affidavit explaining how he exhausted his administrative remedies concerning the instant claims, and attaching any copies of grievances or letters he alleges were part of that process. The Court received such an affidavit from Hernandez on May 16, 2002. (Affidavit of Jose Hernandez, dated May 10, 2002 ("Hernandez Aff.").)

[2]   Plaintiff also notes that he sent a letter complaining about the incidents to then-Chief Judge Thomas P. Griesa of the Southern District of New York. Then-Chief Judge Griesa subsequently replied to plaintiff's letter by sending him instructions on how to file a civil lawsuit. (Hernandez Aff. ¶ 6.)

## Discussion

The applicable legal standards for a Rule 12(c) motion for judgment on the pleadings are the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *King v. American Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002); *Bunting v. Nagy,* No. 01 Civ. 5716(SHS), 2003 WL 21305339, at *2 (S.D.N.Y. June 6, 2003). The Court must accept as true the allegations contained in the Complaint and draw all reasonable inferences in favor of the nonmoving party. *King,* 284 F.3d at 356; *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Dismissal of a complaint pursuant to Rule 12(c) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Further, as with a 12(b)(6) motion, a *pro se* litigant such as Hernandez is allowed a special latitude in responding to a motion for judgment on the pleadings. See *Bunting,* 2003 WL 21305339, at *2.

Defendants present this Court with a single challenge to the Complaint. Defendants argue that judgment on the pleadings should be granted because, accepting the allegations contained in the Complaint as true and drawing all reasonable inferences in favor of the non-moving party, Hernandez failed to exhaust his administrative remedies as required by *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Hernandez contends that he filed both formal and informal grievances, but that no action was taken by DOCS, and thus his remedies should be deemed exhausted.[3]

[3]   Defendants attach several documents to their motion for judgment on the pleadings, and argue that the Court may consider them without converting the motion to one for summary judgment under Rule 56 because they are incorporated by reference into the Complaint. Without determining whether defendants are correct, this Court will not consider the documents defendants submitted since this Court finds that defendants' motion must be granted based on the four corners of the Complaint and plaintiff's affidavit.

I. *Failure to Exhaust Administrative Remedies*
**\*2** As Amended, the Prison Litigation Reform Act of 1996 ("PLRA"), 42 USC § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or another Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This provision of the PLRA imposes a mandatory exhaustion requirement on incarcerated plaintiffs prior to filing an action with the Court. *See Porter,* 534 U.S. at 524; *Brown v. Commissioner,* No. 99 Civ. 976(WHP), 2003 WL 1571699, at \*3 (S.D.N.Y. Mar.26, 2003); *Baskerville v. Blot,* 224 F.Supp.2d 723, 728-29 (S.D.N.Y.2003); *Harris v. Totten,* 244 F.Supp.2d 229, 232 (S.D.N.Y.2003). The effectiveness of the administrative remedy is no longer a prerequisite to the exhaustion requirement. *Porter,* 534 U.S. at 524.

Prior to the Supreme Court's decision in *Porter,* the law in the Second Circuit was that the " 'prison conditions' phrase [in the PLRA] cover[ed] only conditions affecting prisoners generally, not single incidents that immediately affect only particular prisoners, such as corrections officers' use of excessive force." *Porter,* 534 U.S. at 516. However, the Supreme Court, in *Porter,* held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 516.

Thus, after *Porter* it is clear that the PLRA requires a prisoner to exhaust every claim he wishes to assert prior to filing a claim in district court. *See Muhammad v. Pico,* No. 02 Civ. 1052(AJP), 2003 WL 21792158, at \*7-8 (S.D.N.Y. Aug.5, 2003); *Brown,* 2003 WL 1571699, at \*2; *Harris,* 244 F.Supp.2d at 232. Subsequent to *Porter,* courts in the Second Circuit have routinely ruled that excessive force and deliberate indifference claims, such as plaintiff's, are subject to the PLRA's exhaustion requirements. *See, e.g., Lawrence v. Goord,* 304 F.3d 198, 199 (2nd Cir.2002); *Harris,* 244 F.Supp.2d at 232-33. Accordingly, all of

Hernandez's claims are subject to the PLRA's exhaustion requirement.

**[1]** Hernandez argues that he should not be subject to *Porter* because the law in the Second Circuit when he filed this action did not require administrative exhaustion for claims such as his. Assuming *arguendo* that plaintiff's analysis is correct, there is no question that the law as enunciated in *Porter* applies retroactively to prisoners such as Hernandez who filed their suits prior to the Supreme Court's pronouncement in *Porter. See Brown,* 2003 WL 1571699, at \*3; *Harris,* 244 F.Supp.2d at 232 n. 2; *Espinal v. Goord,* No. 01 Civ. 6569(NRB), 2002 WL 1585549, at \*2 n. 3; *Hemphill v. New York,* 198 F.Supp.2d 546, 549-50 (S.D.N.Y.2002). Moreover, application of the *Porter* rule to plaintiff is neither inequitable nor unconstitutional since the Second Circuit's decisions on which plaintiff relies "were not handed down until well after the time when [plaintiff] failed to file a timely grievance," which in this case was late 1998. *Hemphill,* 198 F.Supp.2d at 550; *see, e.g., Lawrence v. Goord,* 238 F.3d 182 (2d Cir.2001), *vacated by Goord v. Lawrence,* 535 U.S. 901, 122 S.Ct. 1200, 152 L.Ed.2d 139 (2002); *Nussle v. Willette,* 224 F.3d 95 (2d Cir.2000), *vacated by Porter,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12.

A. *DOCS' Grievance Procedures*
**\*3 [2]** DOCS has a well-established three-step administrative inmate grievance program ("IGP") to resolve inmate grievances. *See* N.Y. Correction Law § 139; N.Y. Comp.Codes R. & Regs. tit. 7, § 701 .7(a)(1). The IGP requires the inmate to: (1) file a complaint with the Inmate Grievance Review Committee ("IGRC"); (2) appeal to the facility superintendent; and (3) appeal to the DOCS Central Office Review Committee ("CORC") in Albany. N.Y. Comp.Codes R. & Regs tit. 7, § 701.7(a)(1); *see also Brown,* 2003 WL 1571699, at \*3 (explaining IGP process); *Harris,* 244 F.Supp.2d at 233 (same); *Hemphill,* 198 F.Supp.2d at 548 (same).

A prisoner's remedies are not deemed exhausted until he goes though all three levels of the IGP. Thus, once an inmate files a grievance, he must exhaust all administrative appeals in order to satisfy the PLRA's exhaustion requirement. [4] *Brown,* 2003 WL 1571699, at \*3; *Rivera v. Goord,* 253 F.Supp.2d 735, 746 (S.D.N.Y.2003); *Harris,* 244 F.Supp.2d at 232; *Kearsey v. Williams,* No. 99 Civ. 8646(DAB), 2002 WL 1268014, at \*2 (S.D.N.Y. June 6,

2002); *Waters v. Schneider,* No. 01 Civ. 5217(SHS), 2002 WL 727025, at *1-2 (S.D.N.Y. Apr.23, 2002); *Hemphill,* 198 F.Supp.2d at 548-49; *see also Sulton v. Wright,* 265 F.Supp.2d 292, 296 (S.D.N.Y.2003) ("Inmates must therefore exhaust all administrative remedies, at all levels of appeal, in order for their claims to survive a motion to dismiss."); *Sedney v. Hasse,* No. 02 Civ. 2583(DC), 2003 WL 21939702, at *4 (S.D.N.Y. Aug.17, 2003) ("A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure."). Prison officials are entitled to require strict compliance with the existing grievance procedures. *Sedney,* 2003 WL 21939702, at *4; *Baskerville,* 224 F.Supp.2d at 730; *Hemphill,* 198 F.Supp.2d at 549. To satisfy the PLRA exhaustion requirement, inmates must follow procedures established by New York State rather than "invent their own grievance procedures." *Hemphill,* 198 F.Supp.2d at 549.

4      The Second Circuit and some courts in this district have found that a prisoner can be deemed to have informally exhausted his remedies if a resolution of the issue in the prisoner's favor has been reached. *See, e.g., Marvin v. Goord,* 255 F.3d 40, 43 n. 3 (2d Cir.2001); *Sedney v. Hasse,* No. 02 Civ. 2583(DC), 2003 WL 21939702, at *4 (S.D.N.Y. Aug.17, 2003); *Rivera,* 253 F.Supp.2d at 746. Notably, Hernandez alleges precisely the opposite, namely that despite his many pleas and letters, a resolution on this matter was never reached. Thus, he cannot be deemed to have informally exhausted his remedies.

Both in his Complaint and affidavit, Hernandez acknowledges that he never filed a formal IGP grievance for his claims in this action. Instead, he asserts that he sought to resolve his grievance by writing to Glenn S. Goord, the Commissioner of DOCS, the Dutchess County District Attorney and the State Police in Albany. However, it is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements. *See Sedney,* 2003 WL 21939702, at *4 (noting that courts have "repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Muhammad,* 2003 WL 21792158, at *8 ("District court decisions in this circuit have repeatedly held that complaint letters to DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Harris,* 244 F.Supp.2d at 233 ("However, letters to prison officials do not satisfy

the exhaustion requirement of the PLRA where the inmate has failed to follow the established grievance procedures."); *Hemphill,* 198 F.Supp.2d at 549 ("[A] letter to the Superintendent has been expressly held to be 'insufficient' to warrant considering a matter 'effectively grieved." '); *Beatty v. Goord,* 210 F.Supp.2d 250, 255-56 (S.D.N.Y.2000) (holding that writing letters to the Superintendent is not sufficient to comply with the IGP). The same rationale for requiring strict compliance with the IGP applies with equal force to the State Police and the District Attorney. Thus, Hernandez's complaint letters are insufficient to exhaust his administrative remedies.

**\*4 [3]**  Perhaps recognizing his deficiencies, Hernandez asserts in opposition to defendants' motion, that he filed a timely grievance. (Opp. at 5-6, 9-10.) Specifically, he now claims to have filed a grievance at Clinton on November 10, 1998, but asserts it was never answered, and that he did not receive a grievance number or hearing. (Opp. at 5 & Ex. F.) Hernandez also contends that he sent a request for a response to the chairperson of the inmate grievance office at Clinton on February 15, 2000. (Opp. at 6 & Ex. I.) These new allegations contradict Hernandez's earlier statements concerning his exhaustion efforts. However, this Court need not decide whether to accept Hernandez's new allegations because even if they are true, he still has not properly exhausted his administrative remedies.

As noted above, a prisoner must proceed though all three levels of the IGP to satisfy the PLRA's exhaustion requirement. *Brown,* 2003 WL 1571699, at *3; *Rivera,* 253 F.Supp.2d at 746; *Harris,* 244 F.Supp.2d at 232; *Waters v. Schneider,* No. 01 Civ. 5217(SHS), 2002 WL 727025, at *1 (S.D.N.Y. Apr.23, 2002); *Hemphill,* 198 F.Supp.2d at 548-49. Thus, where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC. *Brown,* 2003 WL 1571699, at *3; *Harris,* 244 F.Supp.2d at 232; *Kearsey,* 2002 WL 1268014, at *2; *Waters,* 2002 WL 727025, at *1; *Hemphill,* 198 F.Supp.2d at 548-49; *see also Saunders v. Goord,* No. 98 Civ. 8501(JGK), 2002 WL 1751341, at *3 (S.D.N.Y. July 29, 2002) ("Even if the plaintiff did not receive responses directed toward some grievances, the plaintiff was required, at a minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court...."). Hernandez's latest allegations do not establish that he pursued his available appeals within the IGP. Even assuming that plaintiff's request for a response

was a level two appeal under the IGP, it is clear that plaintiff never appealed to the CORC in Albany, and thus his claims are unexhausted. *Brown,* 2003 WL 1571699, at *3; *Benitez v. Straley,* No. 01 Civ. 181(RCC), 2002 WL 31093608, at *3 (S.D.N.Y. Sept.18, 2002); *Saunders,* 2002 WL 1751341, at *3; *Kearsey,* 2002 WL 1268014, at *2; *Waters,* 2002 WL 727025, at *1; *Hemphill,* 198 F.Supp.2d at 548.

Finally, Hernandez has not advanced any excuse for his failure to exhaust his administrative remedies under the IGP. The circumstances of this case do not warrant a determination that Hernandez exhausted his administrative remedies. [5] For example, he does not allege that anyone hindered his ability to file a grievance. Although Hernandez alleges that he was threatened with retaliation, he does not allege that those threats hindered him in any way. It is evident that he was not hindered from reporting the alleged incident because he wrote to DOCS officials and the District Attorney's office complaining about the attack at Downstate.

[5]   Moreover, although Hernandez does not make such an argument, to the extent that he could argue that his noncompliance with the IGP requirements was due to his transfer from Downstate back to Coxsackie the day after the incident, that argument is unavailing. First, "New York's Inmate Grievance Program contains provisions that allow prisoners to pursue grievances even after their transfer out of the facility where their claims arose." *Timmons v. Pereiro,* No. 00 Civ. 1278(LAP), 2003 WL 179769, at *2 (S.D.N.Y. Jan.27, 2003); *see also Delio v. Morgan,* No. 00 Civ. 7167(LTS), 2003 WL 21373168, at *3 (S.D.N.Y. Jun.13, 2003) (rejecting transfer argument and relying on 7 N.Y.C.R.R. § 701.3(k)(2)). Finally, such an argument would indirectly raise a futility argument, and it is well-settled that futility of the administrative remedy is not an excuse for failure to exhaust. *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000); *accord Paulino v. Amicucci,* No. 02 Civ. 208(LAP), 2003 WL 174303, at *3 (S.D.N.Y. Jan.27, 2003).

*Conclusion*

**\*5**  Accordingly, Hernandez's failure to exhaust available administrative remedies compels judgment on the pleadings in defendant's favor and dismissal of the Complaint. Dismissal of an action for failure to comply with the PLRA's exhaustion requirement is without prejudice. *Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) (per curiam). Defendant's motion for judgment on the pleadings is granted and the Complaint is dismissed without prejudice. The Clerk fo the Court is directed to close this case.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22241431

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3082657
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Al Hajj Ash Sheikh Siraj Abdul
Aziz Muhammad, Plaintiff,
v.
Correction Officer Douglas, Defendant.

No. 15-CV-0935 (NSR)
|
Signed May 25, 2016
|
Filed 05/26/2016

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

**\*1** Plaintiff Al Hajj Ash Sheikh Siraj Abdul Aziz Muhammad brings this action *pro se* against Defendant Correction Officer Douglas relating to Defendant's order that Plaintiff remove his beard while incarcerated at Downstate Correctional Facility ("Downstate") and Plaintiff's subsequent keeplock confinement. [1] Before the Court is Defendant's motion to dismiss (ECF No. 23). For the following reasons, Defendant's motion to dismiss is GRANTED.

[1]   "Keeplock confinement is 'a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates,' " *Saulter v. Hanslmaier*, No, 94-cv-6855 (JFK), 1997 WL 177887, at \*1 (S.D.N.Y. Apr. 14, 1997) (quoting *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989)) (citing N.Y. Comp. Codes R. & Regs. tit. 7, Section 251-1.6 (1988)).

## BACKGROUND

The following facts are derived from the § 1983 Complaint filed by Plaintiff (ECF No. 2) and Plaintiff's opposition papers (ECF No. 22). [2] Defendant submitted additional materials in support of the motion to dismiss, including an affidavit of Jeffrey Hale (Assistant Director of the Inmate Grievance Program at the New York State Department of Corrections and Community Supervision ("DOCCS")) and a printout record of Plaintiff's grievances. (ECF No. 25.) On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 Fed.Appx. 41, 43 (2d Cir. 2014). The Court may also consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Id.* The materials submitted by Defendants are neither incorporated into the Complaint nor are they documents of which the Court can take judicial notice. Therefore, the Court cannot consider these materials without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d) (where "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56."). Because Plaintiff has not been given an opportunity to respond to a motion for summary judgment, the Court will not convert the motion and will only consider the allegations in the Complaint and Plaintiff's opposition papers. *See Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995)) ("a district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings," so long as "the court give[s] 'sufficient notice to an opposing party and an opportunity for that party to respond'.").

[2]   Given Plaintiff's *pro se* status, the Court accepts as true the facts alleged in Plaintiff's opposition papers. *Mahon v. McCall*, No. 13-CV-2076 (RA), 2014 WL 4589855, at \*1 (S.D.N.Y. Sept. 15, 2014) (citing *Nielsen v. Rabin*, 746 F.3d 58, 62-64 (2d Cir. 2014); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)).

**\*2** On June 26, 2012, Plaintiff was received into custody by DOCCS at Downstate. (Compl. at III.B.) Defendant was the officer assigned to reception that day. (*Id.*) Plaintiff informed Defendant that in his property bag he possessed a court order from the New York State Supreme Court exempting Plaintiff from complying with DOCCS Directive 4914, which requires an inmate to shave his face (the "State Court Order"). (*Id.* at IV.) Plaintiff showed Defendant the State Court Order, but Defendant ordered Plaintiff to have his beard removed. (*Id.*) Plaintiff refused

to sit in the barber chair, was charged with disobeying a direct order, and was placed in keeplock until his hearing. (*Id.*) Plaintiff was placed in keeplock for 10 days. (Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Opp."), ECF No. 22 at 4.) At his hearing, Plaintiff presented the hearing officer with the State Court Order and also pointed out that the version of DOCCS Directive 4914 in the reception area at Downstate was outdated. (Compl. At IV.) Thereafter, the hearing officer dismissed Plaintiff's ticket. (*Id.*)

Plaintiff contends that as a result of being confined in keeplock, he suffered "psychological deprivation from religious services"; was "subjected to cold meals"; and was segregated from the general prison population during recreation time. (*Id.* at IV.A.) He also suffered physical injuries to his right knee after falling off his bed. (*Id.*)

Plaintiff alleges that he informed the Inmate Grievance Resolution Committee ("IGRC") at Downstate about Defendant's conduct. (*Id.* at II.B.) In particular, Plaintiff alleges he mailed a formal grievance to the IGRC. (Pl.'s Opp. at 4-5, Ex. G.) Plaintiff later wrote to the IGRC at Downstate regarding the disposition of the grievance, and on September 17, 2012, Plaintiff received a response from the IGRC that it did not have a record of receiving his grievance and directed Plaintiff to file a grievance at the facility in which he was currently housed (Gouverneur Correctional Facility). (Pl.'s Opp., Ex. G.) Plaintiff further alleges that he contacted the Central Office Review Committee ("CORC") about the underlying incident, but the CORC informed Plaintiff that it had no record of his grievance. (Compl. at C.1.) Plaintiff also alleges that he sent a copy of the State Court Order to the CORC. (Pl.'s Opp. at 5.)

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal.*" *Thomas v. Westchester*, No. 12-CV-6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs ... cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to rewrite it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

### I. Plaintiff Did Not Exhaust His Grievance

**\*3** Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' " *Giano v. Goord*, 380 F.3d

670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

Exhausting all remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Washington v. Chaboty*, No. 09-cv-9199 (PGG), 2015 WL 1439348, at *6 (S.D.N.Y. Mar. 30, 2015) (quoting *Hernandez*, 582 F.3d at 305) (internal quotation marks and citations omitted). A plaintiff must invoke all available administrative mechanisms, including appeals, "through the highest level for each claim." *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007); *Veloz v. New York*, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). The defendants bear the burden of demonstrating that the plaintiff's claim is not exhausted. *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). "[A] motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if 'nonexhaustion is clear from the face of the complaint.' " *Lopez v. Cipolini*, No. 14-cv-2441 (KMK), 2015 WL 5732076, at *4 (S.D.N.Y. Sept. 30, 2015) (citing *Lovick v. Schriro*, No. 12-cv-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks omitted)). *See also Lee v. O'Harer*, No. 13-cv-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No. 04-cv-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks omitted)).

A person detained or incarcerated at a DOCCS facility must exhaust all of the steps of the DOC Inmate Grievance Resolution Program ("IGRP"). *See Robinson v. Henschel*, No. 10-cv-6212 (PKC), 2014 WL 1257287, at *10 (S.D.N.Y. March 26, 2014) ("the PLRA requires complete exhaustion in accordance with the administrative procedures within [DOCCS]") (internal quotation marks and citations omitted). The IGRP provides a three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the IGRC, (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the CORC. *See Espinal v. Goord*, 558

F.3d 119, 125 (2d Cir. 2009) (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7 (1999)).

Defendant argues that Plaintiff failed to exhaust his grievance because he did not appeal to the CORC. Plaintiff, meanwhile, alleges that he informed the IGRC at Downstate about Defendant's conduct, but the IGRC told Plaintiff it never received a copy of his grievance. (Compl. at II.B.) Plaintiff further clarifies in his opposition brief that on June 27, 2012, Plaintiff mailed a formal grievance to the IGRC. (Pl.'s Opp. at 4-5, Ex. G.) Thereafter, Plaintiff wrote to the IGRC at Downstate regarding the disposition of the grievance, and on September 17, 2012, Plaintiff received a response from the IGRC that it did not have a record of receiving his grievance and directed Plaintiff to file a grievance at the facility in which he was currently housed (Gouverneur Correctional Facility). (Pl.'s Opp., Ex. G.) Plaintiff contacted the CORC about the underlying incident, but the CORC informed Plaintiff that it had no record of his grievance. (Compl. at C.1.) In his opposition brief, Plaintiff argues that he sent a copy of the State Court Order to the CORC. (Pl.'s Opp. at 5.)

**\*4** Though Plaintiff appears to have attempted to seek redress for his grievance with the IGRC and the CORC, case law is clear that "[a]n inmate must fully comply with the procedural rules of the local administrative agency." *Harris v. Gunsett*, No. 12-cv-3578 (PAC) (JCF), 2013 WL 3816590, at *1 (S.D.N.Y. July 22, 2013) (citing *Espinal*, 558 F.3d at 124). Compliance requires an inmate to appeal properly to the CORC, even if the inmate receives no response from the IGRC at the first stage of exhaustion. *See Torres v. Carry*, 691 F. Supp. 2d 366, 370 (S.D.N.Y. 2009) (citing *Arce v. Keane*, No. 01-cv-2648, 2004 WL 439428, at *2 (S.D.N.Y. Mar. 9, 2004) ("An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance."); *Hernandez v. Coffey*, No. 99-cv-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) ("where a prisoner files a grievance, and the IGRC does not respond, the inmate must nevertheless exhaust his appeals to the facility superintendent and the CORC")). It is apparent from the face of the Complaint that Plaintiff did not properly exhaust his grievance. Even assuming Plaintiff did file a grievance with the IGRC, as he alleges, Plaintiff failed to appeal that grievance to the CORC. Indeed, Plaintiff was on notice that he had not properly appealed his grievance to the CORC as Plaintiff affirmatively alleges that the

CORC informed him that it did not have a copy of the grievance. (Compl. at C.1.)

## II. Plaintiff Is Exempt From Exhaustion

The Second Circuit has recognized three situations in which a plaintiff is not required to satisfy the PLRA exhaustion requirement. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). [3] *See also Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012), *aff'd*, 2013 WL 3214625 (2d Cir. 2013). The failure to exhaust administrative remedies may be excused or Plaintiff's claim may be deemed exhausted: (1) when administrative remedies are not available to the prisoner, (2) when the defendants waive the defense by failing to raise or preserve it, or acted in such a manner that they are estopped from raising it, or (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement. *Hemphill*, 380 F.3d at 686.

[3] While the Second Circuit has left unresolved the continuing vitality of the *Hemphill* exceptions in light of the Supreme Court's ruling in *Woodford v. Ngo*, *Hemphill* remains good law, and the Court must therefore consider whether any exceptions apply to Plaintiff's failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (recognizing that *Woodford* called the latter two *Hemphill* exceptions into question but declining to resolve the issue). But *see Messa v. Goord*, 652 F.3d 305, 309-10 (2d Cir. 2011) (treating the *Hemphill* exemptions as good law and finding that a prisoner is not entitled to a jury trial on the issue of whether he has asserted a valid excuse for non-exhaustion).

The test for determining the availability of administrative remedies is "an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688 (internal citation and quotation omitted). A remedy must afford " 'the possibility of some relief for the action complained of.' " *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). "In some circumstances, a defendant's behavior will render an administrative remedy unavailable." *Sloane*, 2006 WL 3096031 at *6 (citing *Hemphill*, 380 F.3d at 687).

In *Cruz v. Lee*, this Court determined that the plaintiff was excused from exhausting his grievance regarding retaliation because the administrative grievance process

appeared to be unavailable to the plaintiff. No. 14-cv-4870 (NSR) (JCM), 2016 WL 1060330, at *5 (S.D.N.Y. Mar. 15, 2016). In that case, the plaintiff alleged that he filed the grievance with the IGRC but was later informed that the grievance could not be located in the IGRC system. *Id.* Thereafter, the plaintiff wrote to his counselor, mental health doctor, and the prison superintendent in an attempt to appeal his grievance. *Id.* This Court concluded:

> **\*5** Accepting all allegations as true, it is clear that Plaintiff attempted to grieve his protective custody claim. When Plaintiff reasonably believed that his grievances were not being filed, he tried to grieve his complaints by writing letters of appeal. Further, in light of the fact that Plaintiff has filed numerous grievances in the past, he is clearly familiar with the grievance process and aware of the steps he must take before availing himself of the Court's remedies. Therefore, the administrative grievance process may have been unavailable to Plaintiff, and the Court cannot dismiss his retaliation/denial of protection claim for failure to exhaust.

*Id.* In the instant case, Plaintiff alleges that he filed a grievance with the IGRC but was later informed that the IGRC never received his grievance. (Pl.'s Opp. at 4-5, Ex. G.) Subsequently, Plaintiff sought redress from the CORC by writing to the CORC about his grievance and forwarding a copy of the court order. (Compl. at C.1.) Plaintiff alleges that the IGRC and CORC "BAMBOOZELED" [sic] him. (Pl.'s Opp. at 5.) Plaintiff appears to assert that despite his good faith efforts to comply with the grievance requirements, the IGRC and the CORC engaged in some sort of deception to prevent him from properly exhausting his grievance. Like the plaintiff in *Cruz*, Plaintiff has filed other grievances and appears to be familiar with the grievance process. Construing the allegations in the light most favorable to Plaintiff, and mindful of the leeway courts must provide to *pro se* plaintiffs in their pleadings, the Court concludes that Plaintiff is exempt from the strict exhaustion requirements because the administrative grievance process may have been unavailable to Plaintiff. [4]

4        Having concluded that the administrative grievance process may have been unavailable to Plaintiff, the Court need not address the other two grounds for exemption from exhaustion—estoppel and special circumstances.

### III. Plaintiff Fails to State a First Amendment Claim

The Court next turns to the merits of Plaintiff's First Amendment claim—that Directive 4914 violates Plaintiff's Muslim faith. "The First Amendment provides that, 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ....' " *Ross v. Coughlin*, 669 F. Supp. 1235, 1238 (S.D.N.Y. 1987) (quoting U.S. Const. amend. I.) "The free exercise clause is made applicable to the states by the Fourteenth Amendment." *Ross*, 669 F. Supp. at 1238 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303-07 (1940)). Where an inmate alleges that a prison regulation impinges upon his or her First Amendment right to free exercise of religion, such regulation "passes constitutional muster ' "if it is reasonably related to legitimate penological interests." ' " *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))).

"Courts must evaluate four factors in making the reasonableness determination: whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." *Salahuddin*, 467 F.3d at 274 (citing *Turner*, 482 U.S. at 90-91). "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (citation omitted). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these [articulated] concerns were irrational." *Id.* at 275 (internal quotations and citations omitted).

**\*6** Even assuming Plaintiff can establish that Directive 4914 substantially burdens his sincerely held religious beliefs, various courts in this Circuit have previously determined that Directive 4914 is reasonably related to legitimate penological interests. *See Singh v. Goord*, 520 F. Supp. 2d 487, 507 (S.D.N.Y. 2007) ("numerous courts have held that Directive 4914's initial shave requirement serves a legitimate penological interest in maintaining prison security and a record of prisoners' appearances in case of escape.") (citing *Young v. Goord*, No. 01-cv-626, 2005 WL 562756, at \*2 (E.D.N.Y. Mar. 10, 2005), *aff'd*, 192 Fed.Appx. 31 (2d Cir. 2006) ("The legitimacy of the penological interest in policing the facial hair of inmates is clear. Corrections officials specifically, and law enforcement generally, must be able to accurately identify present, former and escaped prisoners by their physical appearance."); *Solomon v. Chin*, 96-cv-2619, 1998 WL 473953, at \*3 (S.D.N.Y. Aug. 10, 1998); *Ross*, 669 F. Supp. at 1240-41; *Phillips v. Coughlin*, 586 F. Supp. 1281 (S.D.N.Y. 1984)). *See also Benjamin v. Coughlin*, 905 F.2d 571, 575, n.3 (2d Cir. 1990) (citing *Fromer v. Scully*, 874 F.2d 69, 76 (2d Cir. 1989)). Accordingly, Plaintiff cannot state a First Amendment claim on the basis of Directive 4914, and the Court dismisses this claim.

### IV. Plaintiff Cannot State a Claim Based on the Violation of Directive 4914

The Complaint appears to assert a claim premised upon Defendant's violation of Direction 4914. (Compl. at IV.) However, "the law is settled that the failure to follow a [DOCCS] Directive or prison regulation does not give rise to a federal constitutional claim." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (citing *Hyman v. Holder* No. 96-cv-7748, 2001 WL 262665, at \*6 (S.D.N.Y. Mar. 15, 2001)). While such a theory of liability "may give rise to state law claims, [it does not] constitute [a] due process violation[ ] of a constitutional nature." *Rivera*, 232 F. Supp. 2d at 123. "Thus, a § 1983 claim brought in federal court is not the appropriate forum to urge violations of prison regulations ...; rather, in order to prevail on a § 1983 claim, the allegations asserted must constitute violations of constitutional due process standards." *Id.* (citation omitted). Therefore, the Court dismisses Plaintiff's claim that Defendant violated Directive 4914.

### V. Plaintiff Fails to State a Claim Arising From Pre-Hearing Keeplock

Finally, the Court turns to Plaintiff's allegation that his pre-hearing confinement in keeplock resulted in

"psychological deprivation from religious services"; "cold meals"; and "segregated recreation." (Compl. at IV.A.). "In *Sandin*, the Supreme Court altered the landscape of prisoner due process, constructing a new approach for analyzing claims of prisoners who are segregated from the prison population." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998). "To establish a due process violation, it is necessary to prove that the state has created a protected liberty interest and that the process due was denied." *Id.* "To identify a protectable liberty interest under the *Sandin* framework, prisoners must establish that a given restraint imposes an '*atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life.' " *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995) (emphasis added)). The Court must undertake a "detailed, fact-intensive inquir[y] into the scope of the prisoner's alleged deprivation" to determine whether a keeplock confinement constitutes an atypical and significant hardship. *Sales v. Barizone*, No. 03-cv-6691 (RJH), 2004 WL 2781752, at *6 (S.D.N.Y. Dec. 2, 2004) (citing *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000)). Courts consider "factors such as (1) the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and (2) the duration of the disciplinary segregation imposed compared to discretionary confinement." *Sales*, 2004 WL 2781752, at *6 (internal quotations and citations omitted).

**\*7** In the present case, the allegations regarding Plaintiff's keeplock confinement do not constitute atypical and significant hardship. *See Saulter*, 1997 WL 177887, at *2 (collecting cases) ("Courts in this District have routinely held that the New York prison system's practice of placing prisoners in keeplock confinement does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life."). First, a confinement for a period of 10 days is neither atypical nor significant. *See Pampalone v. Young*, No. 95-cv-2348 (SHS), 1996 WL 511569, at *3 (S.D.N.Y. Aug. 7, 1996)

(collecting cases) ("[T]he decisions in the Second circuit are unanimous that keeplock or SHU confinement of 30 days or less in New York prisons is *not* an 'atypical or significant hardship' under *Sandin*."). Additionally, the allegations regarding the conditions of Plaintiff's keeplock confinement do not rise to the level of atypical and undue hardship. With respect to Plaintiff's argument that his keeplock confinement imposed a hardship on his ability to observe his religious practices, the Second Circuit has held that "[c]onfinement in keeplock does not deprive prisoners of [the right to participate in congregate religious services.]" *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.), *cert denied*, 492 U.S. 909 (1989)). As for cold meals and segregated recreation, these conditions of keeplock are hardly severe, particularly given the short time frame of Plaintiff's keeplock confinement. [5] Accordingly, Plaintiff's allegations fail as a matter of law to state a claim under the Due Process Clause of the Fourteenth Amendment.

[5]    Additionally, Plaintiff's allegation regarding his injury resulting from falling off the bed in keeplock is not a condition of keeplock. (Compl. at IV.A.)

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is dismissed. The Court respectfully directs the Clerk to terminate the motion at ECF No. 23 and close the case.

SO ORDERED.

## All Citations

Slip Copy, 2016 WL 3082657

---

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.      6

2004 WL 439428
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

George ARCE, Plaintiff,
v.
John P. KEANE, Thomas J. Miller,
and Ronald K. Krom, Defendants.

No. 01 Civ. 2648(BSJ).
|
March 9, 2004.

**Synopsis**

**Background:** State prisoner brought civil rights action against correctional officers.

**Holdings:** On defendants' motion to dismiss, the District Court, Jones, J., held that:

[1] prisoner failed to exhaust his administrative remedies under Prison Litigation Reform Act (PLRA);

[2] letters written to prison officials were not sufficient to exhaust prisoner's administrative remedies;

[3] prisoner reasonably could not have believed that he was being instructed to not file grievance;

[4] comment from corrections officer could not be read as preventing or obstructing state prisoner from filing grievance or appealing denial of grievance; and

[5] futility was not exception to exhaustion requirement.

Motion granted.

West Headnotes (5)

[1]    **Civil Rights**
       👉 Criminal law enforcement;prisons

       State prisoner failed to exhaust his administrative remedies under Prison

Litigation Reform Act (PLRA) before bringing § 1983 claim, although he filed two formal written grievances; prisoner failed to appeal denial or lack of response to those grievances to superintendent of correctional facility, and prisoner's failure to appeal grievance could not otherwise be excused. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e(a); N.Y.Comp. Codes R. & Regs. title 7, § 701.8.

       15 Cases that cite this headnote

[2]    **Civil Rights**
       👉 Criminal law enforcement;prisons

       Letters written to prison officials were not sufficient to exhaust state prisoner's administrative remedies under Prison Litigation Reform Act (PLRA) before bringing § 1983 claim. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), as amended, 42 U.S.C.A. § 1997e.

       2 Cases that cite this headnote

[3]    **Civil Rights**
       👉 Criminal law enforcement;prisons

       State prisoner asserting § 1983 claim reasonably could not have believed that he was being instructed to not file grievance, and, therefore, he was not eligible for exception to exhaustion requirement under Prison Litigation Reform Act (PLRA) for not appealing his grievance to superintendent, on allegation that corrections officers commented that prisoner was already on list to be transferred to single cell and that he should "save the paper and the time," i.e., stop sending written complaints; comment was made in response to prisoner's "Housing Style Change Request Form," prisoner subsequently filed his grievance, and corrections officers did not otherwise impede or prevent his efforts to follow grievance procedure. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

6 Cases that cite this headnote

**[4]   Civil Rights**

🔑 Criminal law enforcement;prisons

Comment from corrections officer, that requests of state prisoner to be transferred to single cell "[were] not necessary and need not be addressed," could not be read as preventing or obstructing state prisoner from filing grievance or appealing denial of grievance, and consequently, when prisoner sued under § 1983 he was not eligible for exception to exhaustion requirement under Prison Litigation Reform Act (PLRA) for not appealing his grievance to superintendent, since comment was made after prisoner filed his grievance. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

5 Cases that cite this headnote

**[5]   Prisons**

🔑 Exhaustion of Other Remedies

Futility is not an exception to the exhaustion requirement under the Prison Litigation Reform Act (PLRA). Civil Rights of Institutionalized Persons Act, § 7, 42 U.S.C.A. § 1997e.

1 Cases that cite this headnote

*Opinion*

JONES, J.

**\*1** Plaintiff George Arce, an incarcerated inmate, brings this action against Defendants pursuant to 42 U.S.C. § 1983. After the appointment of counsel, Plaintiff filed an amended complaint on July 12, 2002. Defendants move to dismiss the amended complaint on the grounds that (1) Plaintiff failed to exhaust his administrative remedies; (2) Plaintiff's Amended Complaint fails to state a claim; and (3) they are entitled to qualified immunity. For the reasons explained below, the Court finds that Plaintiff has failed

to exhaust his administrative remedies and GRANTS Defendants' motion to dismiss. [1]

[1]    The Court does not reach the other grounds offered by Defendants in support of their motion to dismiss.

*BACKGROUND*

While incarcerated at Woodbourne Correctional Facility ("Woodbourne"), Plaintiff, who suffers from asthma, was originally housed in a single cell in Woodbourne's C–Block. (Compl.¶ 8). [2] On December 18, 1997, Plaintiff was moved out of his single cell into a dormitory, which also housed cigarette smokers. (Compl.¶ 12). After this move, Plaintiff made a series of complaints—in the form of letters or conversations—to Defendants Keane, Krom, and Miller, in which he advised them of his health condition and requested that he be housed in a non-smoking environment. (Compl.¶¶ 13–14, 18–19, 21–23, 26–28). Plaintiff suffered several asthma attacks, which he attributes to exposure to secondhand smoke in his dormitory, during this period. (Compl.¶¶ 15, 17, 35). Plaintiff's wife also attempted to contact Defendant Keane, via letter and telephone, requesting that her husband be moved to a non-smoking cell. (Compl.¶ 20).

[2]    References to Plaintiff's First Amended Complaint are cited (Compl.¶ __).

On January 5, 1998, a medical review of Plaintiff was conducted. The doctor who evaluated Plaintiff concluded that Plaintiff should be placed in a single cube beside a window and, if placed in a cell, Plaintiff should be housed only with a non-smoker. (Compl.¶ 24). The doctor's instructions notwithstanding, Plaintiff was not given alternate housing accommodations, and his asthma attacks continued through March of 1998.

On January 13, 1998, Plaintiff spoke to Defendants Keane and Krom and asked them to transfer him to a non-smoking cell. (Compl.¶¶ 26–27). Plaintiff's requests were refused. One week later, on January 20, 1998, after complaining to Defendant Miller, Plaintiff was moved to another dormitory, which was occupied by more smokers than the previous dormitory in which he had been housed. (Compl.¶ 28, 30). Plaintiff contends that this move was made in retaliation for his complaints regarding his housing accommodations.

After his transfer to the second dormitory, Plaintiff submitted a "Housing Style Change Request Form" requesting a change of his housing location. (Compl. ¶ 32). Plaintiff received the following written response: "Your [sic] already on the single cell list, save the paper and time." (Compl.¶ 33).

After several additional attempts to speak to Defendants Keane and Miller about his housing accommodations, Plaintiff filed a grievance with the Inmate Grievance Relations Committee ("IRGC") on March 20, 1998 ("First Grievance"). (Compl.¶ 36). It is unclear from Plaintiff's papers whether he ever received a formal response from the IRGC. For the purposes of this motion, the Court will assume that he did not.

**\*2** Plaintiff did subsequently receive several written responses from Woodbourne indicating that his requests were denied and that Plaintiff had failed to submit a written request for a change of accommodation. (Compl.¶ 39, 41). The response Plaintiff received from Defendant Miller, dated March 24, 1998, "indicat[ed] [Miller] would not consider Arce's requests for a housing change, claiming the prison had no responsibility in the matter. [The request also stated] 'Be advised that cell mate smoking and compatibility issues are regulated by law; therefore, your request for special provisions is not necessary and need not be addressed." (Compl.¶ 42).

On April 17, 1998, Plaintiff filed a second grievance regarding his exposure to secondhand smoke and his asthma ("Second Grievance"). [3] (Compl.¶ 46). Plaintiff received no response to this grievance from the IRGC. Plaintiff was transferred out of Woodbourne on May 18, 1998 and commenced this action on March 28, 2001. (Compl.¶ 49).

[3]    Defendants dispute the authenticity of these grievances because neither bears an inmate grievance number or the signature of the grievance clerk. (Def. Mem. at 4–5). As this is a motion to dismiss, the Court assumes the truthfulness of Plaintiff's allegations—including his allegations regarding his filing of these two grievances.

## DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a plaintiff to exhaust all available administrative remedies before filing a complaint in federal court. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.") The New York State Department of Correctional Services ("DOCS") has established a three-step grievance process for prisoner complaints. See N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7. First, an inmate must file a grievance with the IRGC, which is composed of fellow inmates and various prison officials. See id. § 701.7(a). Second, if the inmate is dissatisfied with the IGRC decision, he must appeal to the superintendent of the facility. See id. § 701.7(b). Third, if the inmate does not receive a favorable decision from the superintendent, he must appeal to the DOCS Central Office Review Committee ("CORC"). See id. § 701.7(c). After the inmate completes his appeal to the CORC, the grievance process is then complete and the inmate, if still dissatisfied, may bring a complaint in the appropriate court. See Hemphill v. New York, 198 F.Supp.2d 546, 548 (S.D.N.Y.2002). "A prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." Id.

**[1]**    There is no dispute that the PLRA's exhaustion requirement "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Here, Plaintiff failed to exhaust his administrative remedies because, although he filed two formal written grievances, he failed to appeal the denial or lack of response to those grievances to the superintendent of the facility. An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance.

**\*3**    Among other reasons, Congress enacted § 1997e(a) to give prison officials an opportunity to take corrective actions that might obviate the need for litigation and to assure that adjudication by federal courts would be facilitated by an administrative record that clarifies the contours of a controversy. See Porter, 534 U.S. at 524–25; Booth v. Churner, 532 U.S. 731, 737, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Allowing an inmate to opt out

of New York's grievance scheme without filing even one appeal and before receiving any response from prison authorities would undermine these goals. *New York's legislature, recognizing that some grievances will not be answered within seven days, gave prisoners the right to bring their grievances to the attention of the Superintendent even in the absence of an adverse response from the IGRC. See* N.Y. Comp.Codes R. & Regs., tit. 7, § 701.8. *It is unreasonable to read these regulations as providing that a federal action is the next and only recourse when the prison fails to respond to an initial grievance.*

*Petty v. Goord,* 2002 U.S. Dist. LEXIS 21197, at *13–14 (S.D.N.Y. Nov. 4, 2002) (emphases added); *see also McNair v. Jones,* 2002 U.S. Dist. LEXIS 17409, at *30 n. 5 (S.D.N.Y. Sept. 18, 2002); *Sims v. Blot,* 2003 U.S. Dist. LEXIS 12729 (S.D.N.Y. July 30, 2003). *But see John v. N.Y.C. Dep't of Corrs.,* 183 F.Supp.2d 619, 625 (S.D.N.Y.2002) (finding that the plaintiff exhausted administrative remedies under N.Y. Comp.Codes R. & Regs., tit. 7, § 701 where he filed a grievance and received no response because "there was no [adverse] decision to appeal").

 **[2]**   Nonetheless, Plaintiff maintains that his claims should not be dismissed because they fall within a narrow exception that allows an incarcerated plaintiff to maintain an action "even when the requirements of all administrative remedies have not technically been exhausted." (Pl. Mem. at 10).

Two exceptions to the PLRA's exhaustion requirement were articulated in *O'Connor v. Featherstone,* 2002 WL 818085 (S.D.N.Y. April 29, 2002), two months after the Supreme Court reiterated the exhaustion requirement in *Porter v. Nussle. O'Connor* held that an inmate may defeat a motion to dismiss even when administrative remedies have not technically been exhausted if (1) the inmate was led to believe by prison officials that his alleged incident was not a "grievance matter" and assured that his claims were otherwise investigated; or (2) the inmate makes a "reasonable attempt" to exhaust his administrative remedies, especially where it is alleged that corrections officers failed to file the inmate's grievances

or otherwise impeded or prevented his efforts. *O'Connor,* 2002 WL 818085, at *2. Even assuming that these are valid exceptions to the exhaustion requirement, Plaintiff's arguments are unavailing.

Here, Plaintiff does not allege that corrections officers impeded or prevented his efforts to follow the grievance procedure. Rather he argues that his two formal grievances and numerous letters evidence "substantial and repeated efforts to obtain a remedy under DOCS' procedures," and because Defendants instructed Plaintiff to "save the paper and time" and told him that his requests "[are] not necessary and need not be addressed," the remedies contemplated by the PLRA "were not 'available' under the meaning of the PLRA." (Pl. Mem. at 13–14).

 **\*4**   The Court reads Plaintiff's argument as two-fold: First, that Plaintiff's efforts—including his informal letters, oral conversations, and two formal grievances—constitute a "reasonable attempt" to exhaust his administrative remedies; and second, that Defendants' comments that Plaintiff should "save the paper and time" and that Plaintiff's requests "[are] not necessary and need not be addressed" led Plaintiff to believe that his alleged incident was not a "grievance matter" and/or that his complaints were being investigated. Neither argument is convincing.

 **[3]**   It is well established that writing letters to prison officials is insufficient to exhaust administrative remedies. *E.g., Mills v. Garvin,* 2001 WL 286784 at *3 (S.D.N.Y. Mar.2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA"). Therefore, Plaintiff's letters and conversations with Defendants are not relevant in determining whether he exhausted his administrative remedies. Moreover, Plaintiff could not have reasonably believed that Defendants' statements indicated that he need not follow the three-step grievance procedure. The comment that Plaintiff was already on the list to be transferred to a single cell and that he should "save the paper and the time"—*i.e.,* stop sending written complaints—was made in response to Plaintiff's "Housing Style Change Request Form" and, therefore, Plaintiff could not reasonably believe that he was being instructed not to file a grievance. Furthermore, this comment was made *before* Plaintiff filed his First Grievance. Plaintiff could not have reasonably believed that a comment made before he filed his First Grievance

Case 9:16-cv-00593-EJS-TWD    Document 43    Filed 07/11/17    Page 83 of 121

justified his failure to appeal that grievance when he received no response.

**[4]** The second comment, that Plaintiff's requests "[are] not necessary and need not be addressed," was made after Plaintiff filed his First Grievance. However, in his Memorandum of Law, Plaintiff described this comment as being made in a document that "indicat[ed] [Miller] would not consider Arce's requests for a housing change, claiming the prison had no responsibility in the matter." (Pl. Mem. at 7). Such a comment cannot be read as preventing or obstructing Plaintiff from filing a grievance or appealing the denial of a grievance. *Cf. Thomas v. N.Y. State Dep't of Corr. Servs.,* 2003 U.S. Dist. LEXIS 20286, at *13 (S.D.N.Y. Nov. 10, 2003) (dismissing plaintiff's claims for failure to exhaust even though two prison officials told plaintiff he need not file a grievance; "while [plaintiff] was told that it was not necessary for him to file a grievance, there is no evidence that he was told that he could not file a grievance. Thus, the instructions are properly understood as bad advice, not prevention or obstruction ."). Indeed, Plaintiff does not appear to have relied upon Miller's comment, as he filed a second grievance with the IGRC *after* receiving Miller's March 24, 1998 response. In any event, the Court finds that the types of representations made in this case by prison officials outside of the grievance process do not warrant an exception to the exhaustion requirement. Such an exception is at odds with the Congressional goals of reducing the quantity and improving the quality of prisoner suits by affording corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. *Porter,* 534 U.S. at 524–525.

**\*5** **[5]** Finally, Plaintiff argues that an appeal to Defendant Keane was not an "available" administrative remedy, as contemplated by the PLRA, because Keane had refused his previous informal requests and because, in a letter to Plaintiff's counsel dated March 23, 1998, Defendant Keane had denied ever receiving a written request from Arce to be transferred to a non-smoking

cell.[4] (Def. Mem. at 13). Plaintiff's argument is unclear, but presumably he is arguing that, in light of Defendant Keane's previous refusals and allegedly false statement that he had not received any written requests from Plaintiff to change his housing accommodations, an appeal to Defendant Keane would have been futile. However, futility will not excuse an inmate's failure to exhaust his administrative remedies. *Cf. Porter,* 534 U.S. at 524 ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit."). In any event, even assuming that Defendant Keane would have denied Plaintiff's appeal, Plaintiff still could have obtained relief from the CORC, which would have "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525.

[4]    As superintendent of Woodbourne, an appeal to Defendant Keane would have been the second step in the grievance process.

### CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies before filing this action, the Court GRANTS Defendants' motion and dismisses Plaintiff's claims without prejudice. *See Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (per curiam) ("clarif[ying] that if a district court dismisses a prisoner's complaint for failure to exhaust administrative remedies, it should do so without prejudice").

The Clerk of the Court is directed to close this case.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 439428

2014 WL 4715863
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Garry WARREN, Plaintiff,

v.

Sgt. BEALEY, Sergeant, Greene Correctional
Facility, Damiano, Correction Officer, Greene
Correctional Facility, Lampoutus, Correction
Officers, Greene Correctional Facility, Hayes,
Correction Officer, Greene Correctional Facility,
John Doe, Correction Officer, Mid–State
Correctional Facility, John Doe(s), Correction
Officers, Greene Correctional Facility, Defendants.

No. 9:12–CV–1318.
|
Signed Sept. 22, 2014.

**Attorneys and Law Firms**

Garry Warren, Brooklyn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General of the
State of New York, Michael G. McCartin, Esq.,
Assistant Attorney General, of Counsel, Albany, NY, for
Defendants.

## DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

## I. INTRODUCTION

*1 This *pro se* action brought pursuant to 42 U.S.C.
§ 1983 was referred to the Hon. Randolph F. Treece,
United States Magistrate Judge, for a Report and
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c). No objections to the Report–
Recommendation and Order dated July 28, 2014 have
been filed, and the time to do so has expired.

The Docket indicates that the underlying motion for
summary judgment, upon which Magistrate Judge Treece
issued his Report–Recommendation and Order, was
filed on January 17, 2014. Despite being granted three
extension of time in which to file opposition, Plaintiff
failed to do so. As indicated, Magistrate Judge Treece

issued his Report–Recommendation and Order on July
28, 2014. On August 8, 2014, Plaintiff filed a request
to withdrawal this action without prejudice until he
can acquire legal representation. Defendants opposed
the request. On August 11, 2014, the Court denied
Plaintiff's request and granted him an extension until
September 15, 2014 to either file objections to Magistrate
Judge Treece's Report-recommendation or to have an
attorney electronically file a notice of appearance and
to file any objections to the report-recommendation on
Plaintiff's behalf. On September 2, 2014, the Report–
Recommendation and Order, mailed to Plaintiff's last
reported address, was returned as "undeliverable."

Every litigant is required to keep the Court advised of his
or her address so that documents and decisions may be
served upon them by mail. *See* Local Rules of the United
States District Court for the Northern District of New
York, 10.1(b), 41.(2) & (b). Failure to do so can greatly
delay proceedings and, therefore, can be construed as
an abandonment of the action. Under the circumstances,
including Plaintiff's failure to respond to the motion for
summary judgment despite three extension and his request
to withdraw his action *after* Defendants filed their motion
for summary judgment, the Court deems that Plaintiff
has intentionally failed to file any objections and has
abandoned this action.

Furthermore, after examining the record, this Court has
determined that the Report–Recommendation and Order
is not subject to attack for plain error or manifest injustice.

## II. CONCLUSION

Accordingly, the Court **ADOPTS** the Report–
Recommendation and Order (Dkt. No. 33) for the reasons
stated therein. Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary
Judgment (Dkt. No. 24) is **GRANTED,** and all claims in
this action are **DISMISSED.** The Clerk of the Court may
enter judgment for the Defendants and mark this case as
closed.

**IT IS SO ORDERED.**

*REPORT–RECOMMENDATION and ORDER*

**Warren v. Bealey, Not Reported in F.Supp.3d (2014)**

2014 WL 4715863

RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Garry Warren brings this action, pursuant to 42 U.S.C. § 1983. Plaintiff's surviving claims [1] are that: (1) on September 12, 2011, Defendant Damiano issued a false misbehavior report against him in retaliation for a grievance he filed against her co-workers; (2) on October 16, 2011, Defendant Hayes used excessive force while pat-frisking Plaintiff; and (3) Defendants Hayes, Lampoutus, Begley, [2] and John Doe(s) used excessive force when they assaulted him on November 6, 2011. *See generally* Dkt. No. 9, Dec. & Order, dated Feb. 5, 2013; *see also* Dkt. No. 1, Compl. Defendants now move for Summary Judgment on the grounds that Plaintiff failed to exhaust any of his claims, and has failed to state a retaliation claim against Defendant Damiano or an excessive force claim against Defendant Hayes regarding the October 16 pat-frisk incident. *See generally* Dkt. No. 24–15, Defs.' Mem. of Law. Plaintiff has not opposed the Motion. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED**.

[1]   On February 5, 2013, The Honorable Thomas J. McAvoy, Senior United States District Judge, severed and transferred to the Western District of New York, Plaintiff's claims regarding alleged incidents which occurred at at Attica Correctional Facility, as well as dismissed multiple claims and Defendants from this action. *See* Dkt. No. 9, Dec. & Order, dated Feb. 5, 2013.

[2]   Plaintiff mistakenly refers to Defendant Begley as "Bealey." *See* Dkt. No. 24–15, Defs.' Mem. of Law, at p. 3 n. 1.

## I. STANDARD OF REVIEW

**\*2**  Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted

facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ( "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se,* the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

2014 WL 4715863

**\*3** "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Even in the absence of a response, Defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford,* 288 F.3d 467, 470 (2d Cir.2002).

In the instant case, we note that on January 17, 2014, Defendants filed and served upon Plaintiff, a Motion for Summary Judgment and the Court's NOTIFICATION OF THE CONSEQUENCES OF FAILING TO RESPOND TO A SUMMARY JUDGMENT MOTION. Dkt. Nos. 24, 24–1, & 26. That same day, a second copy of the Court's Notice to *pro se* litigants was sent to Plaintiff by the Clerk of the Court. Dkt. No. 25, Notice to Pl., dated Jan. 17, 2014. On February 28, 2014, Plaintiff's initial deadline to respond to Defendants' Motion terminated without response. On March 3, 2014, pursuant to a request from Plaintiff, the Court extended the response deadline to March 26, 2014, and once again sent Plaintiff a copy of the Court's Notice to *pro se* litigants outlining the consequences of failing to respond to a motion for summary judgment. Dkt. Nos. 27, Lt.-Mot., dated Feb. 25, 2014, & 28, Text Order, dated Mar. 3, 2014. On April 2, 2014, the Court received an additional request from Plaintiff for an extension of the response deadline. Dkt. No. 29, Lt.-Mot., dated Mar. 27, 2014. Although the Court granted Plaintiff's request and extended the response deadline until May 14, we noted that "[n]o further extensions w[ould] be granted absent a showing of good cause." Dkt. No. 30, Text Order, dated April 3, 2014. On May 11, 2014, Plaintiff requested an additional extension of the response deadline. Dkt. No. 31, Lt.-Mot., dated May 11, 2014. On May 15, the Court denied Plaintiff's request on the ground that Plaintiff failed to establish good cause in support of his Motion. Dkt. No. 32, Text Order, dated May 15, 2014.

Accordingly, because Plaintiff failed to comply with Local Rule 7 .1(a)(3), the Court accepts, as true, the factual assertions contained in Defendants' submissions. *See Lopez v. Reynolds,* 998 F.Supp. 252, 256 (W.D.N.Y.1997) (citing *Champion v. Artuz,* 76 F.3d at 486, for the

proposition that "where the movant's papers give the opposing party 'easily comprehensible notice' of the possible consequences of not replying to the motion, and the party does not provide a response to the motion, the court may consider as undisputed the facts set forth in the moving party's affidavits, and may enter judgment in favor of the movant.").

## II. DISCUSSION

### A. Facts

**\*4** Plaintiff was incarcerated at Greene Correctional Facility ("Greene") from February 16 to November 25, 2011, when he was transferred to Mid–State Correctional Facility ("Mid–State"). [3] Plaintiff remained at Mid–State until March 29, 2012, when he was transferred to Attica Correctional Facility. *See* Compl. at pp. 12, 39, & 45.

[3]    The precise sequence of events which occurred during this period are unclear from the parties' papers. However, according to Plaintiff, on November 17, 2011, at a disciplinary hearing, he was sentenced to serve a year in the Solitary Housing Unit ("SITU") (this sentence is later commuted to six months). Compl. at p. 38. Following the hearing, he was placed in Greene's SITU until he was transferred to the SITU at Mid–State on November 25, 2011. *Id.* at pp. 34 & 54.

On September 12, 2011, Defendant Damiano issued a misbehavior report against Plaintiff for two rule violations, "Lying and Being Out of Place." Dkt. Nos. 24–11 through 24–13, Stefanie Damiano Decl., dated Jan. 13, 2014, at ¶ 2 & Ex. A. At a subsequent Tier II disciplinary hearing, Plaintiff was convicted of being out of place and received two days loss of programming and twenty days loss of recreation, receipt of packages, commissary buys, and the use of the telephone. *Id.* at ¶ 3 & Ex. B.

At his Deposition, and in response to questions asked regarding the alleged October 16 patfrisk incident involving Defendant Hayes, Plaintiff testified that the amount of force used by Defendant Hayes would not have been painful for any other person; indeed, it was only painful for Plaintiff because he had suffered multiple gun shot wounds to one of the areas of his body that Defendant Hayes touched during the pat-frisk. Dkt. No. Dkt. Nos.

24–2 & 24–3, Michael G. McCartin Decl., dated Jan. 17, 2014, at Ex. A, Gary Warren Dep., dated Oct. 8, 2013 (hereinafter "Warren Dep."), at pp. 15–16.

Although Plaintiff filed at least two grievances while at Greene, neither grievance was related to Plaintiff's surviving claims. Rather, on September 13, 2011, the day after he was allegedly retaliated against by Defendant Damiano, Plaintiff filed, and ultimately appealed to the Central Office Review Committee ("CORC"), a grievance regarding medical care which had nothing to do with Defendant Damiano's alleged act of retaliation on the previous day. Additionally, on October 27, Plaintiff filed, and ultimately appealed to the CORC, a grievance entitled "unprofessional" regarding staff conduct unrelated to his claim against Defendant Hayes regarding the October 16 pat-frisk. Dkt. No. 24–4, Anthony Black Decl., dated Jan. 14, 2014, at ¶¶ 2–3; Dkt. Nos. 24–7 through 24–10, Karen Bellamy Decl., dated Jan. 16, 2014, at ¶¶ 2–6 & Exs. A–C.

On November 26, 2011, after his transfer to Mid–State, Plaintiff wrote a grievance with regard to his excessive force claim against Defendants Begley, Hayes, Lampoutus and John Doe(s). Dkt. Nos. 24–5 & 24–7, Christopher Tapia Decl., dated Jan. 14, 2014, at Ex. A, Grievance, dated November 26, 2011. However, that grievance was not filed until December 13, 2011. *Id.* at ¶¶ 1–2 & Ex. A. That grievance was returned to Plaintiff unfiled, with a note explaining that the grievance was untimely and that Plaintiff could apply to the Inmate Grievance Program supervisor for an extension of time to re-file his grievance based on mitigating circumstances; but that in no case would an extension be granted more than forty-five days after the alleged occurrence. *Id.* at ¶ 4 & Ex. A, Lt., dated Dec. 14, 2011. Plaintiff failed to provide an explanation of mitigating circumstances, either before or after the forty-five day period expired. *Id.* at ¶ 4.[4]

[4]    In his Complaint, Plaintiff alleges that his late grievance was returned to him, within the forty-five day period during which an extension could be granted, "stating that he should write to the I.G.P. (Inmate Grievance Program) Supervisor, but because the Plaintiff had no idea who he was, he just wrote back to the I.G.P. Representative C. Tapia asking him for the extension, which he never responded to." Compl. at p. 39.

**\*5** Additionally, Plaintiff never appealed any grievance related to the three incidents relevant to the instant Complaint, nor regarding a request for an extension of time to re-file his belated December 13 grievance, to the CORC. Bellamy Decl. at ¶¶ 1–3 & Ex. A.

## B. Failure to State a Claim

Defendants argue that Plaintiff failed to exhaust any of his surviving claims, and that he failed to state a retaliation claim against Defendant Damiano or an excessive force claim against Defendant Hayes regarding the pat-frisk incident. Defs.' Mem. of Law at pp. 11–15. Because we agree that Plaintiff's pat-frisk and retaliation claims are plainly meritless, we need not consider whether they were properly exhausted. *See Woodford v. Ngo,* 548 U.S. 81, 101 (2006) (citing 42 U.S.C. § 1997e(c)(2), for the proposition that "the PLRA exhaustion requirement is not jurisdictional, and thus ... a district court [may] dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies.").

### 1. Pat–Frisk Incident

According to Plaintiff, on October 16, 2011, Defendant Hayes "placed the Plaintiff in a frisk position ... which there was no reason for .... [and] began to man handle him to the point that he was causing the Plaintiff undue and unnecessary pain." Compl. at pp. 33–34. At his Deposition, Plaintiff testified that "the point of the matter wasn't that he frisked me, it's the way he frisked me and knowing of my disability and the pain that my leg carries by touching. It's sensitive. It's like, you can't really touch it. I can't even touch it." Warren Dep. at p. 15. Plaintiff also admitted at his Deposition that no other individual would have felt pain from the amount of force used by Defendant Hayes during the frisk. *Id.* at p. 16.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 666–67 (cited in *Tramell v. Keane,* 338 F.3d 155, 161 (2d Cir.2003)). In *Hudson v. McMillian,* 503 U.S. 1 (1992), the Supreme Court clarified the standards for determining

2014 WL 4715863

whether an Eighth Amendment violation occurred in the context of excessive force. Specifically, the Court stated that, "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6–7 (quoted in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994)). To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) objectively, that the defendant's actions violated "contemporary standards of decency," and (2) subjectively, that the defendant acted wantonly and in bad faith. *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks and citations omitted).

 **\*6** Regarding the objective element, we note initially that "a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) (quoted in *Hudson v. McMillian,* 503 U.S. at 10). However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such instances "contemporary standards of decency always are violated." *Blyden v. Mancusi,* 186 F.3d at 263 (citing *Hudson v. McMillian,* 503 U.S. at 9). For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a per se violation of the Eighth Amendment occurs." *Beckford v. Portuondo,* 151 F.Supp.2d 204, 216 (N.D.N.Y.2001) (citation omitted).

In assessing the objective component, the court should consider the seriousness of the injury, however, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury;" thus, "the seriousness of the injury is relevant to the Eight Amendment inquiry, but does not end it." *Davidson v. Flynn,* 32 F.3d 27, 29–30 n. 1 (2d Cir.1994) (alterations in original) (quoting *Hudson v. McMillian,* 503 U.S. at 4).

With regard to the subjective component, a court should consider whether the defendant had a wanton state of mind when engaging in the alleged misconduct. To determine whether a defendant acted wantonly or maliciously, several factors should be examined, including:

> the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by defendants to temper the severity of a forceful response.

*Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (internal quotation marks and citations omitted); *see also Hudson v. McMillian,* 503 U.S. at 7).

Plaintiff's excessive force claim against Defendant Hayes is plainly meritless. To begin with, according to Plaintiff's own testimony, the amount of force used was clearly *de minimis, i.e.,* Plaintiff admitted that no other person would have considered the force Defendant used during the pat-frisk to be excessive, and that other than temporary discomfort, Plaintiff sustained no injury from the incident. Crucially, there is no evidence that Defendant Hayes had any intent to harm Plaintiff. Indeed, by Plaintiff's own admission "up until this point [he] didn't think of Defendant Officer Hayes [as] such a bad individual, since he had been the Officer who ... had sent [another inmate] to help [him] with his package after becoming stuck in the yard." Compl. at p. 34. Moreover, although the alleged impetus for the pat-frisk, that Plaintiff was to meet with an investigator, related to a grievance he filed, the grievance had nothing to do with Defendant Hayes. *See id.* at pp. 20–21 & 33–34. Thus, nothing in the record would permit a reasonable juror to conclude that Defendant Hayes possessed the requisite subjective state of mind for purposes of an excessive force claim.

 **\*7** Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's excessive force/pat-frisk claim against Defendant Hayes.

*2. Retaliation Claim*

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak,* 389 F.3d 379, 381–83 (2d Cir.2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin,* 58 F.3d at 872 (citation omitted); *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak,* 389 F.3d at 380 (citing *Dawes v. Walker,* 239 F.3d at 492); *see also Morales v. Mackalm,* 278 F.3d 126, 131 (2d Cir.2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. To satisfy the second prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995). A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus

obviating the need for direct evidence. *Bennett v. Goord,* 343 F.3d 133, 139 (2d Cir.2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia,* the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003) (citing *Dawes v. Walker,* 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker,* 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id.* at 492 (internal quotation marks and citations omitted) (cited in *Davis,* 320 F.3d at 353).

**\*8** In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing, *inter alia, Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (cited in *Carpio v. Walker,* 1997 WL 642543, at \*6 (N.D.N.Y. Oct. 15, 1997)); *see also Gayle v. Gonyea,* 313 F.3d at 682 (defendant may successfully meet this burden of justification with regard to a particular punishment by demonstrating that "plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report" (internal quotation marks and citations omitted)).

On September 12, 2011, Defendant Damiano issued a misbehavior report against Plaintiff, charging him with lying and being out of place; Plaintiff was subsequently convicted of being out of place at a Tier II disciplinary hearing. Damiano Decl. at ¶¶ 2–3 & Exs. A–B. Plaintiff maintains that the misbehavior report was fabricated by Defendant Damiano in retaliation for a grievance he filed against her and two other officers at Greene on August 6, 2011; and that as a result he was confined to his dorm at mid-state for thirteen days [5] without any privileges. Compl. at p. 31; Warren Dep. at pp. 39–52.

2014 WL 4715863

[5]    Plaintiff testified at his Deposition that, as a result of his disciplinary conviction, in addition to losing all of his privileges, he was confined to his cube (keeplocked) for thirteen days. Warren Dep. at pp. 46–49.

Plaintiff's August 6, 2011, grievance against Defendant Damiano and other officers at Greene, *see* Compl. at pp. 26–27 & 31, [6] was clearly a protected exercise, *Jones v. Coughlin,* 45 F.3d at 679–80. However, even if we assume, *arguendo,* that Defendant Damiano's disciplinary report constituted an adverse action, Plaintiff's retaliation claim would still fail because it is uncontested that Defendant Damiano also had a legitimate non-retaliatory reason for filing the misbehavior report on September 12, 2011; namely, that Plaintiff was "out of place." *See* Damiano Decl. at ¶ 2 & Ex. A. Thus, even if Defendant Damiano was partially motivated by retaliatory animus, the fact that she also had a legitimate non-retaliatory reason for writing the misbehavior report nullifies Plaintiff's claim. *See Graham v. Henderson,* 89 F.3d at 79.

[6]    Nothing in Defendants' submissions controvert Plaintiff's claim that he filed a grievance against Defendant Damiano and others on August 6, 2011. *Cf.* Black Decl. at ¶ 3 (referring only to the grievances Plaintiff filed at Greene "after the date of September 11, 2011").

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's retaliation claim against Defendant Damiano.

### C. Exhaustion

Defendants argue that Plaintiff's claim that he was assaulted by Defendants Hayes, Begley, Lampoutus, and John Doe(s) on November 6, 2011, should be dismissed because he failed to exhaust his administrative remedies before filing the instant action. Defs.' Mem. of Law at pp. 4–10.

Pursuant to the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a). The Supreme Court has held that "the

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner,* 531 U.S. 731, 741 n. 6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord,* 255 F.3d 40, 43 (2d Cir.2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner,* 531 U.S. 731 (2001)).

**\*9** In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord,* 520 F.Supp.2d 487, 495–96 (S.D.N.Y.2007) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).

In New York State, the administrative remedies ordinarily consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. [7] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the CORC makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett,* 686 F.Supp.2d 238, 239 (W.D.N.Y.2010) (citing, *inter alia, Porter v. Nussle,* 534 U.S. 516, 524 (2002)); *see also Neal v.*

*Goord,* 267 F.3d 116, 121 (2d Cir.2001), *overruled on other grounds by* *Porter v. Nussle,* 534 U.S. 516.

7    The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a nonvoting chair (who may be an inmate, staff member of volunteer). N.Y. COMP.CODES R. & REGS tit.7, § 701.4.

Additionally, there is an expedited procedure for the review of grievances alleging harassment. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.8. Once it is determined that the grievance presents a "bona fide harassment issue" the Superintendent is required to initiate an in-house investigation, and within twenty-five (25) calender days of receipt of the grievance, the superintendent must render a decision. *Id.* at § 701.8(d) & (f). If the superintendent fails to respond within the required twenty-five (25) day time limit, the grievant may appeal directly to CORC by filing a Notice of Decision to Appeal (Form # 2133) with the inmate grievance clerk. *Id.* at § 701.8(g). CORC then has thirty (30) calender days from the time the appeal was received to render a decision. *Id.* at § 701.5(d)(3).

It is uncontested that Plaintiff failed to file any grievances with regard to the November 6 assault while at Greene. Black Decl. at ¶ 2.[8] Furthermore, on December 13, 2011, Plaintiff attempted to file a grievance regarding the November 6 issue at Mid–State. Tapia Decl. at ¶ 3 & Ex. A. That grievance was denied as untimely, and Plaintiff was instructed that he could request an extension of time to file the grievance, based on extenuating circumstances, but that in no event would such an extension be granted more than forty-five days after the alleged event; nonetheless, Plaintiff failed to provide extenuating circumstances within the proscribed forty-five day period (or thereafter). *Id.* at ¶ 4 & Ex. A. Additionally, Plaintiff never appealed any grievance related to the November 6, 2011 alleged use of excessive force or a request for an extension to re-file his belated grievance to the CORC. Bellamy Decl. at ¶¶ 2–6 & Ex. A.

8    Plaintiff claims in his Deposition that he filed a grievance with regard to the November 6 incident on November 8, but never received a response. Warren Dep. at p. 61. However, he provides no evidence, beyond his vague and unsupported statements to support this proposition. Such a statement, standing on its own, is insufficient as a matter of law to raise

a triable issue of fact in light of Defendants' properly supported Motion for Summary Judgment. *See* *Carey v. Crescenzi,* 923 F.2d at 21. Moreover, even if we accept this allegation as true, the fact that Plaintiff did not receive a response did not alleviate his duty to continue to pursue the administrative remedies that were available to him. Indeed, in the event that the IGRC or superintendent (in cases involving the expedited grievance procedure), do not respond to an initial grievance within the period prescribed, it remains the prisoner's responsibility to file an appeal with the CORC. *See* *Charles v. Gordon,* 2013 WL 6667632, at *4 (S.D.N.Y. Dec. 17, 2013) (citing *Williams v. City of New York,* 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005), for the proposition that "[c]ourts in this circuit require an inmate to pursue all levels of appeal even if the inmate does not receive a response to his initial grievance"); *Torres v. Carry,* 672 F.Supp.2d 338, 343 (S.D.N.Y.2009) (superintendent's failure to respond within twenty-five days did not alleviate prisoner's duty to file an appeal with the CORC in order to exhaust administrative remedies).

**\*10** Accordingly, Defendants have established that no issues of material fact exist with regard to whether Plaintiff exhausted his November 6 excessive force claim. However, such a conclusion does not render our exhaustion inquiry complete. Notwithstanding his failure to respond to Defendants' Motion, given the special solicitude and liberality afforded to *pro se* plaintiffs in the Second Circuit, we must still look to the allegations of the Plaintiff's Complaint and his Deposition testimony to determine whether Plaintiff has met his burden of production with regard to the issues of availability, estoppel, and/or special circumstances.

### *1. Availability*

The availability inquiry is a two part test, first courts must ask whether the prison had a grievance procedure in place that inmates could avail themselves of, and second, "whether threats rendered 'all administrative remedies unavailable' or 'some procedures that would ordinarily be available ... effectively unavailable.' " *Snyder v. Whittier,* 428 F. App'x 89, 91 (2d Cir.2011) (citing *Hemphill v. New York,* 380 F.3d at 686–87). "Unavailability of administrative remedies ... is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." *Puga v. Choto,* 2014 WL 675824, at *4 (N.D.N.Y. Feb. 21, 2014) (quoting *Kasiem*

*v. Switz,* 756 F.Supp.2d 570, 576–77 (S.D.N.Y.2010)) (alterations in original). In the instant case it is clear, from the fact that Plaintiff availed himself of the grievance procedures at both Greene and Mid–State, that such procedures did in fact exist. Black Decl. at ¶ 3; Bellamy Decl. at ¶¶ 4–5 & Exs. A–C; Tapia Decl. at ¶ 3 & Ex. A.

In his Complaint, Plaintiff alleges that on multiple occasions grievances which he submitted at Greene were either discarded or never filed, that on or about September 14, 2011, Inmate Grievance Procedure ("IGP") Supervisor M. Meyers and IGP Officer Snide summoned him to their office, where he was told not to "submit anymore grievances or else he was gonna [sic] have problems the next time he came to the grievance office[,]" and that he was threatened and intimidated by Defendants and others while at Greene in retaliation for having filed grievances and complaints about them and other officers. *See, e.g.,* Compl. at pp. 21–22, 27–28, 31–32, 35, & 38; *see also* Warren Dep. at pp. 52–53. It is certainly possible that such behavior rendered all or part of the grievance procedure unavailable to Plaintiff while he was at Greene. *See* Hemphill v. New York, 380 F.3d at 688 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance.") (citation omitted).

Crucially, however, these threats did not foreclose all of the administrative remedies available to Plaintiff. To begin with, although the threats and intimidation Plaintiff alleges he suffered at Greene may have caused the ordinary grievance procedures to be unavailable to him, such threats did not necessarily preclude him "from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Id.* Plaintiff has failed to allege any facts from which a reasonable juror could conclude that Plaintiff was precluded from utilizing the expedited grievance procedure available to him for claims of employee harassment while at Greene.

**\*11** Moreover, Plaintiff was transferred to Mid–State on November 25, 2011, with two days remaining in the twenty-one day limitations period to timely file a grievance regarding the November 6, 2011 incident. And, Plaintiff acknowledges that he filed several grievances after arriving at Mid–State. Compl. at pp. 31 & 34. The only explanation Plaintiff offers for his failure to timely

file a grievance on November 25, 26, or 27 is that between approximately November 17, 2011 and November 26, 2011 he did not have adequate access to pen and paper with which to file grievances. Warren Dep. at pp. 54, 61–62, & 64. Yet, this claim is plainly belied by Plaintiff's own allegations that, while at Greene, he wrote letters on November 21 and 23, 2011, Compl. at pp. 38–39, and while at Mid–State on November 26, 2011, he wrote a four-page grievance which he belatedly filed on December 13, 2011, Tapia Decl. at Ex. A, Greivance, dated Nov. 26, 2011; *see also* Warren Dep. at pp. 63–64 (Plaintiff acknowledges that after about a month he "finally g[o]t somewhere ... stationary" and "the box [was] working pretty good at Midstate [sic] where [he] could get some paper and a pencil to resubmit that grievance."). Thus, it is also possible that Plaintiff could have filed a timely grievance when he first arrived at Mid–State. *See* Rambert v. Mulkins, 2014 WL 2440747, at \*11 (S.D.N.Y. May 30, 2014) (concluding that grievance procedure was available to prisoner where "by his own admission, Plaintiff had the ability and opportunity to grieve the [alleged] incident within the relevant time period").

Finally, as noted above, after his belated December 13 grievance regarding the November 6 incident was rejected as untimely, Plaintiff was given explicit instructions on how to apply for an extension of time to re-file within the forty-five day limitations period for such requests; nonetheless, he failed to follow those instructions. Tapia Decl. at ¶ 4 & Ex. A, Lt., dated Dec. 14, 2011. Plaintiff admitted as much at his deposition. Warren Dep. at p. 64. Yet, Plaintiff failed to do so. [9] Thus, administrative remedies were available to Plaintiff well after his November 25 arrival. *See* Lopez v. Goodman, 2013 WL 3105550, at \*3 (W.D.N.Y. June 18, 2013); [10] Woodford v. Ngo, 548 U.S. at 115 n. 10 ("If a prison regulation explicitly grants prison officials discretion to consider untimely or otherwise procedurally defective grievances, of course prison grievance remedies would still be 'available,' and thus unexhausted, if a prisoner had not even tried to file a grievance simply because it was untimely or otherwise procedurally defective.") (J. Breyer, concurring); *cf.* Tomony v. Cnty. of Suffolk, 2013 WL 55821, at \*4 (E.D.N.Y. Jan. 3, 2013) (quoting Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir.1999), for the proposition that " '[s]ince appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies.' ").

2014 WL 4715863

9    Plaintiff's claim that he was unable to file such a request properly because he did not know who the IGP supervisor was, is dealt with *infra* at Part II.C.3.

10   In *Lopez v. Goodman,* the court stated:

The grievance procedure is not unavailable to an inmate simply because he missed an initial deadline for filing a grievance. If an inmate misses the deadline for filing, the IGP contains provisions for requesting an extension of time to file in cases of mitigating circumstances. 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a). Moreover, a denial of an extension of time to file a grievance is itself a grievable complaint that may be pursued via the IGP. 7 N.Y.C.R.R. § 701.6(g)(1)(ii). Plaintiff fails to assert in his Reply why he has apparently not attempted to avail himself of the IGP, or that he has attempted to file for an extension of time to file a grievance but has been denied. Therefore, Plaintiff has not exhausted all of his administrative remedies.

*Lopez v. Goodman,* 2013 WL 3105550, at *3; *compare with Mandell v. Goord,* 2009 WL 3123029, at *11 (N.D.N.Y. Sept. 29, 2009) (finding issue of fact with regard to exhaustion where "plaintiff's grievance provided an explanation for his delay, that grievance was tersely rejected as untimely, and the defendants did not advise the plaintiff at that time that he should request an exception to the time limit from the IGP supervisor based on mitigating circumstances, or that additional information regarding his delay in filing the grievance was needed. It was not until the letter of October 6, 2006 from the Commissioner's office, responding to the plaintiff's attempted appeal of the denial of his grievance as untimely, that the plaintiff was instructed to file for an exception under section 701.6(g); by that time, one hundred and seventeen days had passed since the alleged occurrence, and the time limit for seeking extensions—forty-five days from the alleged occurrence—had long since expired.").

### 2. Estoppel

**\*12**  The Second Circuit has stated that "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" can constitute cause to estop a defendant from raising the affirmative defense of exhaustion. *Amador v. Andrews,* 655 F.3d 89, 103 (2d Cir.2011).

At the same time, "a defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies (for purposes of the second part of the three-part inquiry established by the Second Circuit) based on the actions or inactions of *other* individuals." *Smith v. Kelly,* 2013 WL 6154366, at *6 & n. 17 (N . D.N.Y. Oct. 30, 2013) (emphasis in original) (collecting cases). Thus, to the extent that Plaintiff's Complaint can be interpreted as asserting that estoppel is warranted due to the alleged interference/destruction of his grievances by non-party Officers Snide and Myers, the difficulties he experienced while in SHU or the Box at Greene or Midstate, or the actions or threats of anyone other than Defendants Hayes, Lampoutus, Begley, or John Doe(s), such claims are unavailing.

Moreover, to the extent that any of the Defendants personally interfered with Plaintiff's ability to file grievances while he was at Greene, as noted above, *supra* Part II.C.2, Plaintiff had ample opportunity to avail himself of the grievance procedure while he was at Mid–State, away from the influence of Defendants. Accordingly, estoppel is not warranted in the instant case. *See Harvey v. Corr. Officers 1–6,* 2014 WL 2779252, at *10 (N.D.N.Y. Mar. 18, 2014) (no estoppel where "Plaintiff ... was transferred to a different facility while he still had over two weeks to file a grievance .... [and][t]here [wa]s no testimony in the record that suggests the Plaintiff's concerns about staff at Clinton became a concern at Downstate for any reason, nor that he would have had any difficulty in filing a timely grievance at Downstate due to any actions of the named Defendants."); *Goodson v. Silver,* 2012 WL 4449937, at *8 (N.D.N.Y. Sept. 25, 2012) (reaching a similar conclusion).

### 3. Special Circumstances

Plaintiffs allegations that he was unable to seek an extension because "[he] didn't know anything about the grievance process at that time," Warren Dep. at p. 53, or, "because [he] had no idea who [the supervisor] was," Compl. at p. 39, do not evince special circumstances. Plaintiff's tacit admission of ignorance is a far cry from the type of mistake that ordinarily constitutes special circumstances, such as where a prisoner attempting to navigate the grievance procedure reasonably misinterprets a confusing or ambiguous procedural regulation. *See*

2014 WL 4715863

*Harrison v. Goord,* 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009) (quoting *Giano v. Goord,* 380 f.3d at 678, for the proposition that "[t]he existence of such special circumstances 'must be determined by looking at circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way.' "). Moreover, we have reviewed Plaintiff's other arguments, and we can find no evidence that special circumstances warrant reprieving Plaintiff of the PLRA's exhaustion requirement.

**\*13** Accordingly, having found no indication that the grievance process was unavailable, that Defendants should be estopped from asserting the defense of exhaustion, or that special circumstances warrant a reprieve from the PLRA's exhaustion requirement, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's November 6, 2011, excessive force claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that Defendants' Motion for Summary Judgment (Dkt. No. 24), be **GRANTED,** and this action be **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72 & 6(a).

Date: July 28, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4715863

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2008 WL 1848650
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Pete CHALIF, Plaintiff,
v.
Eliot SPITZER, et al., Defendants.

No. 9:05-CV-1355 (LEK/DEP).
|
April 23, 2008.

**Attorneys and Law Firms**

Pete Chalif, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State
of New York, Megan M. Brown, Esq., Assistant Attorney
General, of Counsel, Syracuse, NY, for Defendant.

## *DECISION AND ORDER*

LAWRENCE E. KAHN, District Judge.

 **\*1** This matter comes before the Court following a
Report-Recommendation filed on March 17, 2008 by the
Honorable David E. Peebles, United States Magistrate
Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of
the Northern District of New York. Report-Rec. (Dkt.
No. 90). After ten days from the service thereof, the Clerk
has sent the entire file to the undersigned, including the
objections by Pete Chalif, which were filed on March 27,
2008. Objections (Dkt. No. 91).

It is the duty of this Court to "make a de novo
determination of those portions of the report or specified
proposed findings or recommendations to which objection
is made." 28 U.S.C. § 636(b). "A [district] judge ...
may accept, reject, or modify, in whole or in part, the
findings or recommendations made by the magistrate
judge." *Id.* This Court has considered the objections and
has undertaken a de novo review of the record and has
determined that the Report-Recommendation should be
approved for the reasons stated therein.

Accordingly, it is hereby

ORDERED, that the Report-Recommendation (Dkt. No.
90) is **APPROVED** and **ADOPTED** in its **ENTIRETY;**
and it is further

ORDERED, that Plaintiff's Amended Complaint (Dkt.
No. 15) is **DISMISSED WITHOUT PREJUDICE** as
to Defendants Tenent, Strickland, Mueller, Potts and
Betters; and it is further

ORDERED, that Defendants' Motion for judgment on
the pleadings (Dkt. No. 78) is **GRANTED;** and it is further

ORDERED, that Plaintiff's Amended Complaint (Dkt.
No. 15) is **DISMISSED;** and it is further

ORDERED, that the Clerk serve a copy of this Order on
all parties.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

Plaintiff Pete Chalif, a former New York State prison
inmate who is currently undergoing psychiatric treatment
under the auspices of the New York State Office of
Mental Health ("OMH"), has commenced this action
alleging deprivation of his civil rights. In his complaint,
which names eighteen defendants, among them such high
ranking officials as former New York State Governor
Eliot Spitzer, who at the relevant times served as the
New York State Attorney General; the Commissioner
of the New York State Department of Correctional
Services ("DOCS"); the former Director of the Central
Intelligence Agency ("CIA"); and the Director of the
Federal Bureau of Investigation ("FBI"), plaintiff asserts
various constitutional claims stemming from an alleged,
politically-motivated conspiracy, the object of which was
to cause his death in order to silence him, the failure of
prison officials at the various facilities in which he was
housed to protect him from harm by fellow inmates, and
excessive force used against him by certain corrections
workers. Representative of his claims are the allegations
that former Governor Spitzer, former CIA Director
George Tenent, and FBI Director Robert Mueller jointly
have ordered his assassination, and the assertion that
there are approximately 10,000 state law enforcement

officers operating under cover as DOCS prisoners as part of a "scam ... to falsely inflate (N.Y.SDOC) prisoner census to receive federal funding." [1] Amended Complaint (Dkt. No. 15) ¶ 38C. Plaintiff seeks declaratory relief, an injunction directing that he be placed in administrative segregation or transferred into federal custody, and recovery of compensatory and punitive damages.

[1]    In the plaintiff's words, "[t]he complaint alleges that plaintiff was and is the target of a classic Co. In. Tel. Pro. type counterintelligence operation targeting the plaintiff for political assassination because he's a white supremacist and an intelligence officer in the Nationalist Militias ect [sic]...." Plaintiff's Memorandum (Dkt. No. 84-2) at 1.

**\*2** Currently pending before the court is a motion by the defendants seeking judgment on the pleadings dismissing plaintiff's complaint. In their motion, defendants assert that despite having been given one final opportunity to state objective facts which would demonstrate the existence of a plausible constitutional claim, by virtue of an earlier decision in the case from the Second Circuit Court of Appeals, plaintiff has failed to do so, instead reiterating the same conclusory allegations which, while sensational, are lacking in substance and any supporting objective facts demonstrating any constitutional deprivation. [2]

[2]    Defendants also seek the entry of an order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure staying discovery pending disposition of their dismissal motion. Since that relief was already requested and granted, *see* Dkt. Nos. 80, 81, it is not necessary to address this request.

Having reviewed plaintiff's complaint in light of defendants' motion, which plaintiff vigorously opposes, I find that with the exception of plaintiff's claim of excessive force as against defendant Brown, a corrections sergeant, arising from an incident alleged to have occurred on or about January 15, 2006 at the Great Meadow Correctional Facility, plaintiff's complaint fails to allege any plausible claim of constitutional deprivation. I further find that pursuit of plaintiff's sole viable remaining excessive force claim is barred by his failure to exhaust available administrative remedies before filing suit.

I. *BACKGROUND* [3]

[3]    Although in their responsive pleadings the defendants have denied the vast majority of them, the underlying factual allegations set forth in plaintiff's amended complaint have been accepted as true for purposes of the present motion, in light of the procedural posture of the case. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73 (1994); *DeJean v. County of Nassau,* No. CV-06-6317, 2008 WL 111187, at *1 n.2 (E.D.N.Y. Jan. 8, 2008). As will be seen, however, the court is not required to, nor does it, accept those of plaintiff's conclusory allegations which are lacking in factual support, particularly those which are patently frivolous on their face. *See Aguilar v. United States,* Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at *2 (D.Conn. Nov. 8, 1999).

The substance of plaintiff's claims in this action is difficult to distill, inasmuch as his complaint states his claims in broad and general terms regarding incidents which allegedly occurred at several different prison facilities. Plaintiff's claims appear to stem from his incarceration at various facilities operated by the DOCS in whose custody he was held at the relevant times, including the Auburn Correctional Facility ("Auburn"), the Great Meadow Correctional Facility ("Great Meadow"), and the Clinton Correctional Facility ("Clinton"). *See generally* Amended Complaint (Dkt. No. 15) ¶¶ 2-3.

Plaintiff avers that he is a former CIA Human Intelligence ("HUMINT") agent. Amended Complaint (Dkt. No. 15) ¶ 22. In that position, plaintiff claims to have reported false information to former CIA Director George Tenent and CIA Case Agent Lee Strickland at various times, including in mid-2001, at a time when he was in DOCS custody. *Id.*

Chalif contends that he has experienced difficulties within the DOCS system, attributed by him as stemming from published media reports that he is the commander of the Aryan Nations Special Forces, as well as rumors spread by DOCS employees throughout the corrections system that he is also a member of the Ku Klux Klan. *Id.* ¶¶ 21-24. Plaintiff contends that as result of those rumors he was labeled as a racist, requiring him to be placed in administrative segregation in December of 2001. *Id.* ¶¶ 24-25.

Plaintiff also maintains that a directive was given by Eliot Spitzer, with the approval of former CIA Director Tenent, FBI Director Mueller and CIA Case Agent

2008 WL 1848650

Strickland, that he be murdered, and additionally claims that while incarcerated, he has been subjected by certain of the defendants, including Dale Artus, Superintendent at Clinton, Corrections Sergeant J. Tedford, former Governor Spitzer, former DOCS Commissioner Goord, former CIA Director Tenent, and FBI Director Mueller, to psychological torture "via 'Death threats' Psy-Op (mind war)", *see id.,* and as a result, has suffered mental anguish and attempted to commit suicide. *Id.* ¶¶ *27-28.* Plaintiff contends that despite his efforts defendants refused to place him in administrative segregation, thus causing him to be exposed to danger.[4] *Id.* ¶ 31. Plaintiff attributes defendants' efforts to have him killed to several factors, including based on their awareness that 1) "[he] is an intelligence SHARK"; 2) based upon his efforts "to have Christian Identity/Aryan Nations recognized as a religion"; 3) because of his discovery that at the direction of Attorney General Spitzer, undercover state agents whose identities are known to Chalif were placed into the DOCS systems pretending to be prisoners; and 4) "[b]ecause the plaintiff dares to petition the Government for a redress of grievances." Amended Complaint (Dkt. No. 15) ¶ 38. Plaintiff also asserts that various of the defendants have engaged in "psychological torture" apparently in an effort to force him to commit suicide.[5] *Id.* ¶ 27.

[4] While the bulk of plaintiff's claims concerning administrative segregation appear to relate to his efforts to be afforded such protection, as was noted earlier he also complains of having been placed in administrative segregation in or about December of 2001 based upon the belief that he was a racist. *See* Amended Complaint (Dkt. No. 15) ¶ 25.

[5] It should be noted that while in his complaint plaintiff admits having attempted to commit suicide by hanging himself on or about January 15, 2006, *see* Amended Complaint (Dkt. No. 15) ¶ 45, on October 13, 2004 he wrote to the State Commission of Correction, stating the following:

I wish to be placed in Administrative Segregation upon my return to Clinton C.F., for the remainder of my incarceration. I am not suicidal and it is against my religious beliefs to take my own life so if I am found hung in my cell it was murder ....

Amended Complaint (Dkt. No. 15) Exh. 5.

II. *PROCEDURAL HISTORY*

**\*3** Plaintiff commenced this action on October 26, 2005 by the filing of a complaint, accompanied by an application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. By order issued on November 3, 2005 District Judge Lawrence E. Kahn conferred IFP status upon the plaintiff, but dismissed his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) as largely containing conclusory allegations which, while shocking, lacked specifics disclosing the existence of a cognizable claim against one or more of the named defendants in the case. Dkt. No. 4. The resulting judgment dismissing plaintiff's complaint was subsequently reversed on appeal by order issued on March 8, 2006, by the United States Court of Appeals for the Second Circuit, and the matter was returned to this court in order to afford plaintiff the opportunity to file a proper amended complaint. Dkt. No. 10.

An amended complaint was subsequently received from the plaintiff, and accepted by the court for filing on or about November 7, 2006. *See* Dkt. Nos. 14, 15. In that amended complaint plaintiff names, as defendants, various state and federal officials and DOCS employees, including, *inter alia,* former Governor and Attorney General Eliot Spitzer, former DOCS Commissioner Glenn Goord, former CIA Director George Tenent, FBI Director Robert Mueller, and Clinton Superintendent Dale Artus, and sets forth four separate causes of action, alleging 1) violation of his First Amendment rights of free religious exercise, speech, and association; 2) cruel and unusual punishment, in violation of the Eighth Amendment; 3) violation of his substantive due process rights, as guaranteed under the Fourteenth Amendment; and 4) conspiracy to deprive him of access to the courts. Issue was subsequently joined by the filing of an answer by the New York State Attorney General, acting on behalf of the various defendants served in the action, on May 31, 2007. Dkt. No. 70. In their answer the defendants have generally denied the material allegations of plaintiff's complaint and asserted various affirmative defenses.[6] *See id.*

[6] According to the court's records, to date defendants Tenent, Strickland, Mueller, Potts and Betters have neither been served nor appeared in the action. In light of this fact the court has never acquired jurisdiction over those defendants, and plaintiff's complaint should be dismissed as against them, without prejudice. *See Michaelson v. Merrill, Lynch,*

2008 WL 1848650

*Pierce, Fenner & Smith, Inc.,* 709 F.Supp. 1279, 1282 (S.D.N.Y.1989) (citing *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444-45, 66 S.Ct. 242, 245-46 (1945)) (court lacks jurisdiction until defendants are properly served with the summons and complaint).

On August 23, 2007 the answering defendants moved seeking the entry of judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 78. Plaintiff has since responded in opposition to defendants' motion, Dkt. No. 84, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). [7] [8] *See also* Fed.R.Civ.P. 72(b).

[7]    While plaintiff's submission was styled as a motion to strike defendants' motion, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, it has been treated by the court as the functional equivalent of an opposition to that motion, which was properly interposed by the defendants. *See* Dkt. No. 85.

[8]    An application was made by the plaintiff for a preliminary injunction affirmatively mandating his transfer by the defendants into custody of the United States Bureau of Prisons. *See* Dkt. Nos.,18, 58. That motion was denied by order issued by Senior District Judge Lawrence E. Kahn on September 5, 2007, based upon the lack of showing that absent injunctive relief plaintiff would experience irreparable harm and additionally because plaintiff failed to name the OMH, in whose custody he was at the time of his application, as the proper party against whom injunctive relief was sought, rather than the DOCS. Dkt. No. 82.

III. *DISCUSSION*

A. *Judgment on the Pleadings Standard*

Defendants motion is brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which governs the entry of judgment on the pleadings. [9] Such motions are analyzed under the familiar standard applicable to motions brought under Rule 12(b)(6). *See, e.g., Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73 (1994); *Wynn v. Uhler,* 941 F.Supp. 28, 29 (N.D.N.Y.1996) (Pooler, J.).

[9]    Rule 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party

may move for judgment on the pleadings." Rule 12(d) further mandates that:

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(d).

*4 A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements. Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible"). Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim. *Twombly,* 127 S.Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 (1957), "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule

Chalif v. Spitzer, Not Reported in F.Supp.2d (2008)
Case 9:16-cv-00593-FJS-TWD    Document 43    Filed 07/11/17    Page 99 of 121
2008 WL 1848650

12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly,* 127 S.Ct. at 1969, 1974; *see also Patane v. Clark,* 508 F.3d 106, 111-12 (2d Cir.2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.' ") (quoting *Twombly* ). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (3d Cir.2007) (quoting *Twombly,* 127 S.Ct. at 1974).

**\*5** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

While the standards by which a federal court pleading are measured are unexacting, they nonetheless require that a complaint contain "more than bare assertion of legal conclusions." *In re Cardinal Health, Inc. ERISA Litig.,* 424 F.Supp.2d 1002, 1015 (S.D.Ohio 2006) (citing *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir.1993)); *see also In re Polaroid ERISA Litig.,* 362 F.Supp.2d 461, 470

(S.D.N.Y.2005). Moreover, the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as well as factors which inform analysis of dismissal motions under Rule 12, particularly in light of the Supreme Court's recent decision in *Twombly,* demand that a plaintiff do more than simply set forth allegations which, while potentially shocking, do not disclose the existence of a claim which can properly be characterized as "plausible". *See, e.g., Russian Standard Vodka ( USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,* 523 F.Supp.2d 376, 385 (S.D.N.Y.2007) (noting that to survive a motion to dismiss, a complaint need not allege detailed factual assertions, but must state a plausible basis for recovery rather than conclusory or speculative allegations, and as such, dismissing plaintiffs' unjust enrichment claim in light of its illogical and "ludicrous" nature; *see also Aguilar v. United States,* Nos. 3:99-MC-304, 3:99-MC-408, 1999 WL 1067841, at \*2 (D.Conn. Nov. 8, 1999) (indicating that a complaint is considered frivolous if it lacks an arguable basis in either law or fact, with factual frivolity occurring where "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy." (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotations omitted))).

### B. *Personal Involvement*

Before turning to the specifics of plaintiff's amended complaint, it is important to note the requirement that the plaintiff establish a basis for holding each of the named defendants personally accountable for any constitutional deprivations. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282 (1978)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*6** Some of the defendants named in plaintiff's amended complaint, including, for example, former DOCS Commissioner Goord and Clinton Superintendent Artus, are potentially named based upon their supervisory responsibilities. It is well-established that a supervisor

2008 WL 1848650

cannot be liable for damages under section 1983 solely by virtue of being a supervisor-there is no *respondeat superior* liability under section 1983. *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501. A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty,* 490 F.3d 143, (2d Cir.2007); *see also Richardson,* 347 F.3d at 435; *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986).

In reviewing plaintiff's claims for facial sufficiency the court must be particularly attuned to the issue of whether the plaintiff has adequately identified a basis for holding any particular named defendant accountable for the constitutional deprivations alleged. Failing such identification, there can be no liability and any defendant whose involvement in the unconstitutional conduct alleged is entitled to judgment on the pleadings dismissing plaintiff's claims against him or her.

### C. *Plaintiff's First Amendment Claims*

Leaving aside his claim of denial of access to the courts, which is addressed elsewhere in this report, and also implicates a right arising under that provision, the particulars of plaintiff's First Amendment free speech, free exercise and right of assembly claims are not readily apparent. Interpreting plaintiff's First Amendment claim, which is admittedly vague, as asserting a cause of action for retaliation, defendants argue in their motion that such a claim has not been properly stated. In response, plaintiff disavows any claim of unlawful retaliation, instead asserting that his First Amendment claim arises from the efforts of the defendants to silence him in response for expressing his political and religious views.

The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble...." U.S. Const. amend. I. The protections afforded by the First

Amendment, like many other constitutional guarantees, are not necessarily forfeited by a person upon his or her entry into prison; many rights conferred by the Constitution, however, are by definition extinguished, or in some cases give way to legitimate, counterveiling penological concerns, upon incarceration. *Shakur v. Selsky,* 391 F.3d 106, 113 (2d Cir.2004). As the Supreme Court has noted, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537-38 (1977).

**\*7** While the point of demarcation is not always readily discernable, it is clear that prison inmates enjoy some measure of First Amendment protection, including the rights of free speech, association, and freedom of religious exercise, yet forfeit those rights to the extent they are incompatible with legitimate penological considerations. *See Pell v. Procunier,* 417 U.S. 812, 822, 94 S.Ct. 2800, 2804 (1974). As the Supreme Court has observed,

> [a] prison inmate retains those First Amendment rights that are not inconsistent with his [or her] status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.

*Id.*

Thus, for example, prison officials may not deter the right of a prison inmate to voice complaints regarding prison conditions through established processes by taking adverse actions which are intended, or which have the affect, of chilling or abridging such rights. *See Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004). Conversely, and at the other end of the spectrum, prison officials are empowered to control the use of threatening and abusive language by inmates. *Jermosen v. Coughlin,* 878 F.Supp. 444, 450-51 (N.D.N.Y.1995) (McAvoy, C.J.).

The right of officials to control inmate speech and other behavior through the imposition of measures reasonably calculated to preserve the safety and security of a prison facility, its employees and inmates, is well-established, even though such measures may impinge upon an inmate's ability to speak freely or to associate with others. *See Auleta v. LaFrance,* 233 F.Supp.2d 396, 399 (N.D.N.Y.2002) (Kahn, D.J.) (noting that restrictions on inmate communication are constitutional if reasonably related to legitimate penological interests) (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261 (1987)).

From his response to defendants' motion it appears that plaintiff's First Amendment claim stems from alleged efforts on the part of defendants Spitzer, Mueller, Potts, and Tenent to silence him through ordered assassination.[10] *See* Plaintiff's Memorandum (Dkt. No. 84-2) at 5-7. Because plaintiff's first cause of action fails to allege specific participation on the part of any defendant other than former Governor Spitzer in the First Amendment violation, the remaining defendants are entitled to dismissal of that claim against them, as a matter of law.

[10]   As was previously noted, defendants Mueller, Potts and Tenent, who have yet to be served, are entitled to dismissal of plaintiff's complaint without prejudice, on the basis that the court lacks jurisdiction over them. *See* p. 9, n. 6, *ante.*

The question of whether defendant Spitzer is entitled to dismissal of plaintiff's First Amendment claim presents a somewhat closer question. Without doubt, adverse action taken by defendant Spitzer against the plaintiff with the intended purpose of interfering with his speech, religious exercise, or association would potentially implicate the protections of the First Amendment. In this instance, however, plaintiff has not alleged *facts* which would support a plausible First Amendment claim. While plaintiff's complaint makes vague reference to his activity of speaking out on matters which could potentially be viewed as of public concern, he does not identify any concrete interference with the exercise of his religious exercise and his freedom of association. Additionally, plaintiff's complaint makes no specific allegations as to defendants' actions in attempting to silence him other than to wildly speculate that former Governor Spitzer has initiated or endorsed a plot to have him killed. Such outlandish allegations, devoid of specifics, cannot withstand scrutiny and should not be permitted to survive

defendants' motion. *See Russian Standard Vodka,* 523 F.Supp.2d at 385; *see also Aguilar,* 1999 WL 1067841, at \*2-3 (finding that plaintiff's complaint was devoid of any arguable basis in law or fact, highlighting that most of his factual allegations, to the extent they were even understandable, were conclusory, vague and baseless). I therefore also recommend dismissal of plaintiff's First Amendment claims against defendant Spitzer as lacking in palpable facial merit.

### D. *Failure to Protect*

**\*8**  Plaintiff's second and third causes of action both stem from alleged failure on the part of DOCS prison officials to protect him from threats of harm at the hands of fellow inmates. Plaintiff's second cause of action alleges that this failure is tantamount to cruel and unusual punishment, in violation of the Eighth Amendment, while his third claim asserts that by their actions, defendants have also deprived him of substantive due process, as guaranteed under the Fourteenth Amendment.

#### 1. *Eighth Amendment*

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty includes within it an obligation to protect prisoners from harm caused by fellow inmates. *Farmer v. Brennan,* 511 U.S. 825, 833-34, 114 S.Ct. 1970, 1976-77 (1994) (citations omitted); *see also Matthews v. Armitage,* 36 F.Supp.2d 121, 124 (N.D.N.Y.1999) (Homer, M.J.) (citing, *inter alia, Farmer* ). When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight. *Farmer,* 511 U.S. at 834, 837, 114 S.Ct. at 1977, 1979; *Matthews,* 36 F.Supp.2d at 124-25; *Coronado v. Lefevre,* 886 F.Supp. 220, 224 (N.D.N.Y.1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

#### a. *Objective Test*

In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities." *Dawes v. Walker,* 239 F.3d 489, 493-94 (2nd Cir.2001) (internal quotations and citations omitted), *overruled on*

2008 WL 1848650

other grounds, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992 (2002). Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was incarcerated under conditions posing a substantial risk of serious harm. *Farmer,* 511 U.S. at 834, 837, 114 S.Ct. at 1977, 1979; *Dawes,* 239 F.3d at 493; *Matthews,* 36 F.Supp.2d at 124-25.

### b. *Subjective Test*

To demonstrate that defendants were deliberately indifferent to his or her plight, a plaintiff must show that prison officials actually knew of, but disregarded, an excessive risk to his or her health and safety-"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Matthews,* 36 F.Supp.2d at 124-25.

### 2. *Fourteenth Amendment*

Claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process provision. Though the requisite mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must transcend mere negligence. *Davidson v. Cannon,* 474 U.S. 344, 347-48, 106 S.Ct. 668, 670 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663 (1986) (same); *Morales v. New York State Dep't of Corrs.,* 842 F.2d 27, 30 (2nd Cir.1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul-Matiyn v. New York State Dep't of Corr. Servs.,* 871 F.Supp. 1542, 1546-47 (N.D.N.Y.1994) (Chin, J.) (citing *Morales* ).

**\*9** Plaintiff's failure to protect cause of action is set forth in wholly conclusory terms. *See, e.g.,* Amended Complaint (Dkt. No. 15) ¶ 30 ("The plaintiff is subjected to credible [sic] threats because (N.Y.SDOC) prison population believes he's Ku Klux Klan which credible threats of immediate [sic] are not acted on [by various of the defendants] .... [t]he plaintiff is subjected to

psychological torture by imminent threat of death by [various defendants]...." Aside from letters from his counsel echoing these allegations, in similarly conclusory terms, plaintiff has offered no specific information to establish that he was incarcerated under conditions posing a substantial risk of harm. Plaintiff's complaint does not recount, for example, any incidents whereby he was assaulted by any fellow inmates, or that such an assault was threatened and imminent at any of the various facilities in which he was housed. Similarly, plaintiff's complaint fails to identify which of the various defendants are alleged to have had knowledge of the existence of conditions posing a substantial risk of serious harm, but were deliberately indifferent to that risk.

Under these circumstances, plaintiff has failed to comply with the Second Circuit's directive that he allege objective facts demonstrating the existence of a plausible claim of unlawful failure to protect on the part of one or more of the defendants, in violation of the Eighth and Fourteenth Amendments. Accordingly, defendants are entitled to judgment on the pleadings dismissing that claim. *See, e.g., Dawes,* 239 F.3d at 494 (affirming dismissal of failure to protect claim where plaintiff did not allege that he was assaulted or even threatened by other inmates); *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998) ("Plaintiffs' testimony that they lived in fear of assault from their cellmates is not an objectively serious enough injury to support a claim for damages.").

### E. *Conspiracy to Deprive Plaintiff of Access to the Courts*

In his fourth cause of action plaintiff alleges that defendants conspired to deprive him of access to the courts "by stirring up Negro and Hispanic prisoners by telling them plaintiff is Klu Klux Klan." Amended Complaint (Dkt. No. 15) ¶ 60. Plaintiff also asserts that the orders to assassinate him were intended to punish him and suppress his access to the courts to redress his grievance and petition the government for relief. *Id.* ¶ 66. Defendants seek dismissal of this claim as a matter of law, based upon plaintiff's failure to establish the requisite elements of a conspiracy under section 1983.

### 1. *Conspiracy Generally*

To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a willful manner, culminating in an agreement,

2008 WL 1848650

understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177 (1983).

**\*10** Plaintiff's complaint is exceedingly short on specifics in providing the identity of the parties to the alleged conspiracy, a showing of agreement or a "meeting of the minds", and the details as to the time and place of conspiracy as well as its objective. While it is true, for example, that the plaintiff alleges an agreement between defendants Tenent, Strickland, Mueller and Potts, acting in concert with former Governor Spitzer, to have Chalif assassinated "on sight", the complaint lacks any details as to when that agreement was formed and whether it was oral, in writing, or both. Such deficiencies are fatal to plaintiff's conspiracy claim.[11] *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999). Because plaintiff has asserted his conspiracy claims in only vague and conclusory terms, conspicuously lacking in any detail regarding the participants in the conspiracy, the meeting of the minds, and an overt act committed in furtherance of the goal of the conspiracy, I recommend dismissal of plaintiff's conspiracy claim as a matter of law. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937, 111 S.Ct. 1399 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

[11]   It should be noted, moreover, that by its express terms plaintiff's conspiracy cause of action relates to his access to the courts, rather than defendants' alleged efforts to have him assassinated in order to interfere with his First Amendment free speech, religious exercise, and assembly rights.

### 2. *Access to the Courts*

Even assuming plaintiff had properly pleaded the elements of the conspiracy, he would also be required to demonstrate that the object of the conspiracy was to deprive him of his civil rights. In this instance, Chalif alleges that the objective of the conspiracy was to deprive him of access to the courts, asserting that in light of his commitment to OMH custody, on five separate occasions he was denied access to his legal work in the law library for

a combined period of four years, thus interfering with this access to the courts. *See* Plaintiff's Memorandum (Dkt. No. 84-2) at 14. The court must therefore evaluate the legal sufficiency of this claim in order to determine whether his fourth cause of action can withstand defendants' dismissal motion.

An inmate's constitutional right to "meaningful" access to the courts is firmly established. *See Bounds v. Smith,* 430 U.S. 817, 823, 97 S.Ct. 1491, 1495 (1977) (citations and internal quotation marks omitted). That right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828, 97 S.Ct. at 1498. The Court has clarified, however, that

> prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.

**\*11** *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 2180 (1996) (internal quotations and citations omitted). Accordingly, an inmate asserting a denial of court access claim predicated upon the lack of available library resources or meaningful assistance "must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his [or her] efforts to pursue a legal claim." *Id.* In other words, to establish a violation of the right of access to the courts, a plaintiff must demonstrate that defendants' interference caused him or her actual injury-that is, that a "nonfrivolous legal claim had been frustrated or was being impeded" as a result of defendants' conduct. *Id.* at 353, 116 S.Ct. at 2181. Since plaintiff's complaint fails to allege any prejudice in the form of interference with his pursuit of a non-frivolous legal claim, this provides an independent

2008 WL 1848650

basis for dismissal of plaintiff's section 1983 conspiracy claim. *See King v. City of New York,* Nos. 99 CV 3669, 05 CV 3247, 2007 WL 959696, at *13 (E.D.N.Y. Mar. 30, 2007).

There is yet another basis for dismissal of plaintiff's fourth cause of action. While the graveman of the claim is a conspiracy by the defendants to deny him access to the courts by placing him in OMH custody, nowhere does the plaintiff identify the specific defendants responsible for that placement and the resulting deprivation. Plaintiff's fourth cause of action is therefore subject to dismissal on the additional, independent basis of his failure to demonstrate the personal involvement of any of the defendants in the denial of court access. *See Taylor v. Santana,* No. 05 Civ. 1860, 2007 WL 737485, at *6 (S.D.N.Y. Mar. 6, 2007) (dismissing plaintiff's right of access to the courts claim because plaintiff failed to establish the personal involvement of any of the defendants in depriving him of that right).

### F. *Failure to Exhaust*

Stripped of its conclusory allegations, all that is left of plaintiff's complaint is the assertion that excessive force was exerted against him by defendants Brown and Betters on or about January 15, 2006. [12] *See* Amended Complaint (Dkt. No. 15) ¶ 14. In their motion defendants argue that any such claim is barred based upon plaintiff's failure to exhaust available administrative remedies before commencing this action on October 26, 2005.

[12]    Plaintiff's complaint does not contain a cause of action specifically asserting the use of excessive force. In light of his *pro se* status, however, the court is obligated to overlook this defect and to interpret his complaint in the face of defendants' motion, as asserting the strongest argument which could be made, consistent with the facts alleged. *Diaz v. United States,* 517 F.3d 608, 2008 WL 495653, at *4 (2d Cir. Feb. 26, 2008) (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1990)).

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), imposing several

restrictions on the ability of prisoners to maintain federal civil rights actions. An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007). This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record." *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532, 122 S.Ct. at 992 (citation omitted).

**\*12** The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S.Ct. at 918. In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal. *See Pettus v. McCoy,* No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford,* 126 S.Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies). "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford,* 126 S.Ct. at 2388; *see also Macias v. Zenk,* 495 F .3d 37, 43 (2d Cir.2007) (citing *Woodford* ). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias,*

495 F.3d at 43 (quoting *Johnson,* 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[13] *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.

[13]    In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap. *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n. 14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003) and *Snider v. Melindez,* 199 F.3d 108, 112-13 (2d Cir.1999)). The IGP consists of a three-step review process. First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[14] 7 N.Y.C.R.R. § 701.5(a). The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701 .4(b), 701.5(b). If an appeal is filed, the

superintendent of the facility next reviews the IGRC's determination and issues a decision. *Id.* § 701.5(c). The third level of the process affords the inmate the right to appeal the superintendent's ruling to the Central Office Review Committee ("CORC"), which makes the final administrative decision. *Id.* § 701.5(d). Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court. *Reyes v. Punzal,* 206 F.Supp.2d 431, 432 (W.D.N.Y.2002) (citing, *inter alia, Sulton v. Greiner,* No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

[14]    The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances." 7 N.Y.C.R.R. § 701 .6(g)(1)(i)(a)-(b).

**\*13** The excessive force claim asserted against defendants Brown and Betters involves terms and conditions of incarceration, and thus is a matter which could have been pursued through the New York IGP. *Heath v. Saddlemire,* No. 96-CV-1998, 2002 WL 31242204, at *4 (N.D.N.Y. Oct. 7, 2002). It therefore appears that plaintiff had available to him an administrative remedy which should have been pursued to completion before pressing his excessive force claim in this action.

While not asserting any facts regarding whether plaintiff did in fact file a grievance concerning the incident, in light of the procedural posture of the case, defendants argue that since the use of force occurred on January 15, 2006, after the commencement of this action, exhaustion could not have been accomplished before plaintiff's complaint was filed.

Under the PLRA, exhaustion of internal available administrative remedies must be complete prior to commencement of suit. *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001), *overruled on other grounds, Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983 (2002). The fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing. *Id.*

In this instance plaintiff could not possibly have fulfilled his exhaustion requirement at the time this action was commenced, since the alleged assault forming the basis of his claim did not occur until later. While plaintiff attempts to salvage his claim by asserting the relation back

doctrine employed in certain instances to revive otherwise untimely claims, I am unaware of any cases from this or any other circuit which would permit the inverse-that is, to deem an action commenced, for purposes of the exhaustion requirement, as of the date of amendment rather than when the case was filed. And, while the court would ordinarily be reluctant to address the question of exhaustion in a motion for judgment on the pleadings, without the benefit of a more fully developed record, it is clear in this instance that exhaustion had not yet occurred when this action was filed and, accordingly, plaintiff's last remaining, facially meritorious claim, is subject to dismissal, without prejudice, based upon his failure to exhaust available administrative remedies.

## IV. *SUMMARY AND RECOMMENDATION*

In its decision dated March 8, 2006, reversing this court's earlier dismissal of plaintiff's complaint as patently lacking in merit, the Second Circuit court determined that the plaintiff should be afforded "an opportunity to amend his complaint to include *objective facts* to support his Eighth Amendment claim." See Decision dated March 8, 2006, issued as a mandate on April 24, 2006 (Dkt. No. 10) (emphasis added) (citation omitted). Despite having been given that opportunity, however, the plaintiff interposed a complaint which suffers from the same infirmities as that previously dismissed, containing a host of allegations against many defendants, including high profile figures, stated in spectacular yet grossly conclusory terms generally lacking in any factual specifics. Aside from the claim that excessive force was used against him by defendants Brown and Betters-the latter of whom has never been served and thus is not a party to the action-plaintiff's allegations fail to satisfy even

the most generous pleading requirements of the Federal Rules of Civil Procedure. With respect to that excessive force claim, the plaintiff failed to fulfill his obligation to exhaust administrative remedies before filing suit. Under these circumstances I recommend dismissal of plaintiff's complaint in its entirety. [15]

[15]    In light of this determination I have not addressed the qualified immunity argument asserted by defendants as an independent ground for dismissal of plaintiff's claims in this action. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151 (2001).

**\*14** Accordingly, it is hereby

RECOMMENDED, that defendants' motion for judgment on the pleadings (Dkt. No. 78) be GRANTED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1848650

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 2639369
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

James PETTUS, Plaintiff,

v.

Jospeh McCOY, Superintendent,
Deputy Ryan, Defendants.

No. 9:04-CV-0471.
|
Sept. 13, 2006.

**Attorneys and Law Firms**

James Pettus, Comstock, NY, pro se.

Charles J. Quackenbush, New York State Attorney
General, The Capitol Albany, NY, for Defendants.


***DECISION and ORDER***

THOMAS J. McAVOY, Senior District Judge.

 **\*1** Plaintiff commenced the instant action asserting
various violations of his constitutional rights arising out
of his placement at the Southport Correctional Facility.
In his Complaint, Plaintiff alleges that he was improperly
sent to the Special Housing Unit ("SHU") at a maximum
security facility and that being in SHU has put his life
in jeopardy. Currently before the Court is Defendants'
motion for summary judgment pursuant to Fed.R.Civ.P.
56 seeking dismissal of the Complaint in its entirety for
failure to exhaust administrative remedies.


**I. FACTS** [1]

[1]     The following facts are taken from Defendants'
statement of material facts submitted pursuant to
N.D.N.Y.L.R. 7.1(a)(3). These facts are deemed
admitted because they are supported by the record
evidence and Plaintiff failed to submit an opposing
statement of material facts as required by Rule 7.1(a)
(3). Plaintiff was specifically advised by Defendants
of his obligation to file an opposing statement of
material facts and to otherwise properly respond to
the motion for summary judgment.

Plaintiff is an inmate in the custody of the New York
State Department of Correctional Services. Plaintiff
signed the instant Complaint on April 7, 2004. On
his Complaint form, Plaintiff indicated that there is
a grievance procedure available to him and that he
availed himself of the grievance procedure by filing a
complaint with the IGRC [2], followed by an appeal to
the superintendent of the facility, and then to the Central
Office Review Committee in Albany. The Complaint
indicates that Plaintiff is "waiting for response from
Albany." The Complaint was filed on April 27, 2004.

[2]     Inmate Grievance Review Committee.

On April 12, 2004, prior to the filing of the instant
Complaint, Plaintiff filed a grievance relating to the issues
presented in this case. On April 19, 2004, the IGRC
recommended that Plaintiff's grievance be denied. Plaintiff
then appealed that decision to the facility Superintendent.
In the meantime, on April 27, Plaintiff commenced the
instant litigation. On May 3, 2004, after Plaintiff filed
the Complaint in this case, the Superintendent denied
Plaintiff's grievance. On May 5, 2004, Plaintiff appealed
the decision to the Central Office Review Committee in
Albany. On June 23, 2004, the Central Office Review
Committee denied Plaintiff's appeal. Plaintiff did not file
any other grievances in connection with the matters raised
in this lawsuit.

Defendants now move to dismiss on the ground that
Plaintiff commenced the instant action before fully
exhausting his available administrative remedies.


**II. DISCUSSION**

The sole issue presented is whether Plaintiff was
required to complete the administrative process before
commencing this litigation. This issue has already been
addressed by the Second Circuit in *Neal v. Goord,* 267 F.3d
116 (2d Cir.2001). The issue in that case was "whether
plaintiff's complaint should have been dismissed despite
his having exhausted at least some claims during the
pendency of his lawsuit." *Id.* at 121. The Second Circuit
held that "exhausting administrative remedies after a
complaint is filed will not save a case from dismissal." *Id.*

In this case, Defendants have established from a
legally sufficient source that an administrative remedy
is available and applicable. *Mojias v. Johnson,* 351 F.3d
606, 610 (2d Cir.2003); *see also* 7. N.Y.C.R.R. § 701.1,

*et seq.* Plaintiff's Complaint concerns his placement in SHU at a maximum security facility. These are matters that fall within the grievance procedure available to NYSDOCS inmates and are required to be exhausted under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Plaintiff has failed to demonstrate any applicable exception to the exhaustion requirement. Because Plaintiff commenced the instant litigation prior to fully completing the administrative review process, the instant Complaint must be dismissed without prejudice. *Neal,* 267 F.3d 116.

## III. CONCLUSION

 **\*2** For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2639369

---

**End of Document**    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    2

Case 9:16-cv-00593-FJS-TWD    Document 43    Filed 07/11/17    Page 109 of 121
Hilbert v. Fischer, Not Reported in F.Supp.2d (2013)
2013 WL 4774731

2013 WL 4774731
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Stanley HILBERT, Plaintiff,
v.
Brian FISCHER, et al., Defendants.

No. 12 Civ. 3843(ER).
|
Sept. 5, 2013.

**OPINION AND ORDER**

EDGARDO RAMOS, District Judge.

**\*1** Plaintiff Stanley Hilbert ("Plaintiff"), proceeding
*pro se*, brings this action pursuant to 42 U.S.C. §
1983, the Americans With Disabilities Act and the
Rehabilitation Act against Brian Fischer, Commissioner
of the New York State Department of Corrections
and Community Supervision ("DOCCS"); Green Haven
Correctional Facility ("Green Haven") Superintendent
William Lee; and various Green Haven "contractors and
employees" (collectively, the "Defendants"). [1] Presently
before the Court is Defendants' motion to partially dismiss
Plaintiff's Amended Complaint. [2] Doc. 65. Specifically,
Defendants seek dismissal of Plaintiff's claim of deliberate
medical indifference for failure to exhaust administrative
remedies. Defendants Fischer and Lee move in the
alternative to dismiss Plaintiff's deliberate indifference
claim because Plaintiff has failed to demonstrate that they
were personally involved in the alleged Constitutional
violation. For the reasons discussed below, Defendants'
motion for partial dismissal of the Amended Complaint is
GRANTED.

[1]     On June 5, 2012, the Court dismissed DOCCS as a
        Defendant in this action. Doc. 6.

[2]     Plaintiff filed a Notice of Motion along with his
        opposition papers for an "Order pursuant to Rule
        7(b) of the Federal Rule[s] of Civil Procedure granting
        a trial concerning the complaint." Doc. 77. As the
        motion is procedurally improper, the Court assumes
        that Plaintiff filed the Notice of Motion in further

support of his opposition to Defendants' motion to
dismiss, and will consider it accordingly.

**I. Factual Background**
The Court accepts the factual allegations in the Amended
Complaint as true for purposes of Defendants' motion.
*Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106,
108 (2d Cir.2010).

In September 2011, Plaintiff was incarcerated at
Marcy Correctional Facility's ("Marcy") Residential
Mental Health Unit ("RMHU"). Amended Complaint
("Am.Compl.") ¶ 42. Plaintiff sought mental health
treatment at that facility; however, due to the
unavailability of observational cells, he was transferred
to Green Haven. [3] *Id.* ¶¶ 42–43. On September 27, 2011,
at approximately 10:40 am, while still at Green Haven,
Plaintiff complained of chest pains and was escorted
to the facility infirmary. *Id.* ¶ 45. After Plaintiff had
been examined, Defendants Kowalchuk, Rodriguez and
Surprenant escorted him back to his cell. *Id.* ¶ 47. On the
way back to the cell, Surprenant told Plaintiff that he was
"full of shit," that he was "bullshitting and wasting his
time," and that "this ain't Marcy [and] we have another
way to treat mental illness and you're going to find out
soon enough." *Id.* ¶¶ 48–50. Upon hearing this, Plaintiff
requested that Surprenant allow him to see a mental health
therapist. *Id.* ¶ 51. Defendant Rodriguez then interjected
and said that "we got some therapy for you" and that
"your [sic] going to need a physical therapist to teach you
how to walk again." *Id.* ¶ 52.

[3]     The exact date on which Plaintiff was transferred
        to Green Haven is not clear from the face of the
        Amended Complaint.

Upon returning to his cell, Plaintiff was ordered to
face the wall, which he did. *Id.* ¶ 53. Surprenant then
instructed Plaintiff, who was still in restraints, to turn
around and face him. *Id.* ¶ 54. After Plaintiff complied,
Surprenant "got nose to nose" with him and stated, "you
played games and wasted my time. I told you we have
another way to treat mental illness." *Id.* ¶ 55. At that
point, Rodriguez "[s]uddenly" punched Plaintiff in the
left eye. *Id.* ¶ 56. Defendants Kowalchuk, Rodriguez and
Surprenant then began beating Plaintiff "mercilessly with
their hands and feet," and "punched and kicked [him]
repeatedly about the body, face and head." *Id.* ¶¶ 57–
58. Plaintiff alleges that upon information and belief,
Defendant Rodriguez then "stepped on [his] lower back

while Defendants Surprenant, Tillotson, Kowalchuk, Keran [sic], and Brothers held [him] down and removed the restraints." *Id.* ¶ 59. Defendants then left the cell and locked it behind them. *Id.* ¶ 61.

**\*2** Plaintiff alleges that he then informed Defendant Kowalchuk that he was in "excruciating pain and need[ed] medical attention," *id.* ¶ 60; however, Kowalchuk refused Plaintiff's request. *Id.* ¶ 62. Approximately one hour later, Defendant Miller, a nurse, arrived at Plaintiff's cell with a corrections officer to take photographs. *Id.* ¶ 63. At that point, Plaintiff's nose was bleeding profusely, he was bleeding out of his left eye, and he could barely stand up. *Id.* ¶ 64. Plaintiff informed Miller that he was in excruciating pain, but she did not "even [perform] a cursory examination ... [and] told Plaintiff that there was nothing wrong." *Id.* ¶¶ 64–65. Plaintiff alleges that Miller told him to "stop whining" and that crying is what babies do. *Id.* ¶ 66. She then exited the cell with the corrections officer. *Id.* ¶ 67.

Over the next two days, from September 27 to 29, 2011, Plaintiff alleges that he requested medical assistance for his injuries from Defendants Morlas, Patil, Panuto, Zwillinger, O'Conner, Brandow, Hannd, Sposato, Santoro, Edwards, Kutz, Kowalchuk, Lamay, and Gotsch, and that these Defendants all denied his requests. *Id.* ¶¶ 68–81. On the morning of September 29, 2011, a doctor came to Plaintiff's cell and, after examining him, determined that he was seriously injured and in need of immediate medical attention. *Id.* ¶ 82. Plaintiff was then transferred to an outside hospital, Westchester County Medical Center, where he was treated and later released. *Id.* ¶ 83. Plaintiff claims that he suffers from frequent migraines, "extreme debilitating back pain," loss of vision and a broken nose. *Id.* ¶ 84.

## II. Plaintiff has not Exhausted Administrative Remedies with Respect to his Eighth Amendment Deliberate Medical Indifference Claim

Plaintiff claims that Defendants violated his Eighth Amendment rights by using unnecessary and excessive force against him and by acting with "deliberate indifference or reckless disregard toward [his] serious medical needs by failing to take the steps necessary to ensure that [he] received treatment for his injuries." Am. Compl. ¶ 87. Defendants argue that Plaintiff's deliberate medical indifference claim should be dismissed because he failed to exhaust the administrative remedies

available under DOCCS' three-tiered Inmate Grievance Program ("IGP"). Specifically, Defendants argue that Plaintiff's grievance only alleged that he was assaulted by several officers at Green Haven, and did not include any allegations that Defendants were deliberately indifferent to his medical needs.

### a. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones v. Bock,* 549 U.S. 199, 202 (2007) (citations omitted). The PLRA's exhaustion requirement is "mandatory," *Porter v. Nussle,* 534 U .S. 516, 524 (2002), and " 'applies to all inmate suits about prison life.' " *Johnson v. Killian,* 680 F.3d 234, 238 (2d Cir.2012) (quoting *Porter,* 534 U.S. at 532). The Supreme Court has held that "the PLRA exhaustion requirement requires proper exhaustion." *Id.* (quoting *Woodford v. Ngo,* 548 U.S. 81, 93 (2007)) (internal quotation marks omitted). That is, "prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* (quoting *Jones,* 549 U.S. at 218).

**\*3** In New York, prisoners must exhaust each level of the three-tiered IGP. *Kasiem v. Switz,* 756 F.Supp.2d 570, 575 (S.D .N.Y.2010). Under the IGP, an inmate must: (i) file a complaint with the grievance clerk; (ii) appeal an adverse decision by the Inmate Grievance Resolution Committee ("IGRC") to the superintendent of the facility; and (iii) appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). N.Y. Comp.Codes R. & Regs. ("NYCRR") tit. 7, § 701.5. The IGP regulations provide that an inmate must submit a complaint on an inmate grievance complaint form, or on plain paper if the form is not readily available. 7 NYCRR § 701.5(a)(1). The regulations further require that "the grievance ... contain a concise, specific description of the problem and the action requested." 7 NYCRR § 701.5(a) (2).

Although failure to exhaust is "an absolute bar to an inmate's action in federal court," *George v. Morrison–Warden,* No. 06 Civ. 3188(SAS), 2007 WL 1686321, at \*2 (S.D.N.Y. June 11, 2007), the Second Circuit has recognized three grounds for exceptions to the exhaustion requirement. *See Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). First, a court must ask "whether

administrative remedies were in fact 'available' to the prisoner." *Id.* (citation omitted). Second, a court must determine whether the defendant forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendant's own actions estop him from raising the affirmative defense of non-exhaustion. *Id.* Finally, if the court finds that administrative remedies were available to the plaintiff, and that the defendant is not estopped and has not forfeited his non-exhaustion defense, a court should consider whether any " 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Id.* (quoting *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004)).

### b. The Court May Consider Extrinsic Material Because Plaintiff was on Notice that Defendants' Motion to Dismiss Might be Converted to One for Summary Judgment and had the Opportunity to Submit Evidence Relevant to the Issue of Exhaustion

Defendants move to dismiss Plaintiff's deliberate indifference claim pursuant to Fed.R.Civ.P. 12(b)(6). Along with their moving papers, Defendants submit the declaration of Jeffery Hale, as well as a copy of the grievance Plaintiff filed at Marcy, numbered MCY–15928–12. *See* Doc. 68. On a Rule 12(b)(6) motion, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Accordingly, courts in this district have held that where non-exhaustion is clear from the face of a complaint, a court should dismiss the complaint under Rule 12(b)(6). *See Mateo v. Bristow,* No. 12 Civ. 5052(RJS), 2013 WL 3863865, at *3 (S.D.N.Y. July 16, 2013) (citing *Kasiem,* 756 F.Supp.2d at 575; *McCoy v.. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003)). However, where non-exhaustion is not clear from the face of the complaint, courts should convert a Rule 12(b) motion into a Rule 56 motion for summary judgment "limited to the narrow issue of exhaustion and the relatively straightforward questions about ... whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *Id.* (quoting *McCoy,* 255 F.Supp.2d at 251). Before converting a Rule 12(b)(6) motion into a Rule 56 motion, courts must notify the parties and "afford [them] the opportunity to present supporting material." *Id.* (quoting *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000)). Such notice and

opportunity are "especially important when a plaintiff is *pro se.*" *Id.* (quoting *McCoy,* 255 F.Supp.2d at 251).

**\*4** Here, non-exhaustion is not clear from the face of Plaintiff's complaint. Accordingly, the Court must convert the current motion to one for summary judgment and look to extrinsic evidence. Before converting the motion, however, the Court must determine whether Plaintiff has been given "unequivocal notice" of his obligation to submit evidentiary materials and an opportunity to do so. *See McCoy,* 255 F.Supp.2d at 255.

The Court finds that Plaintiff has been given both notice and opportunity. First, Defendants moved to dismiss specifically on the ground of failure to exhaust and notified Plaintiff that the Court might choose to treat the motion to dismiss as one for summary judgment, and that to oppose it, he would need to submit evidence, such as affidavits. Doc. 67 (Notice to Pro Se Litigant); *see Kasiem,* 756 F.Supp.2d at 575 (holding that formal notice of conversion was not necessary where defendants attached as exhibits to their motion the records they had of plaintiff's grievances and appeals and notified plaintiff that the court might treat the motion to dismiss as one for summary judgment and that plaintiff must therefore submit evidence to oppose the motion); *see also McCoy,* 255 F.Supp.2d at 255–56 (holding that formal notice was not necessary where defendants moved to dismiss specifically on the ground of exhaustion and where plaintiff directly addressed exhaustion in his opposition papers and referred the Court to documentary evidence). Additionally, in his opposition papers, Plaintiff directly addresses the issue of exhaustion and refers the Court to documentary evidence, including a copy of Plaintiff's hospital records and "Special Watch Log Book # S1533," attached to his brief as exhibits. *See* Doc. 80. Accordingly, the Court finds that Plaintiff had "unequivocal notice" that the Court might convert Defendants' motion to dismiss to one for summary judgment and that Plaintiff had the opportunity to submit extrinsic materials pertinent to that issue.

### c. Plaintiff did not Exhaust Administrative Remedies with Respect to his Claim of Deliberate Indifference to his Medical Needs

Defendants argue that Plaintiff has not exhausted administrative remedies with respect to his claim of deliberate medical indifference because his grievance does not contain any allegations regarding Plaintiff's medical

care; rather, Plaintiff's grievance only alleges that he was subjected to excessive force by several of the Defendants. Accordingly, Defendants argue that Plaintiff's grievance failed to " 'alert[ ] the prison to the nature of the wrong for which redress is sought,' " thereby failing to afford it "time and opportunity to address [his] complaints internally before allowing the initiation of a federal case." *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004) (quoting *Porter,* 534 U.S. at 524–25; *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002)).

The Second Circuit has held that "a claim may be exhausted when it is closely associated with, but not explicitly mentioned in, an exhausted grievance, as long as the claim was specifically addressed in the prison's denial of the grievance and, hence, was properly investigated." *Percinthe v. Julien,* No. 08 Civ. 893(SAS), 2009 WL 2223070, at *4, *4 n. 9 (S.D.N.Y. July 24, 2009) (citing *Espinal v. Goord,* 558 F.3d 119, 128 (2d Cir.2009) (holding that the plaintiff's claim for denial of medical care was exhausted by a grievance alleging excessive force and retaliation, explaining, "while Espinal's grievance ... does not explicitly discuss the misconduct by medical personnel which is alleged in the complaint, it is clear that the State considered these allegations when reviewing Espinal's grievance," because denial of medical care was addressed in the grievance's denial)). Ultimately, the question for the Court is "whether [the] plaintiff's grievance sufficiently alerted prison officials that he was alleging some wrongdoing beyond" that alleged against the individual or individuals specifically named in the grievance. *Id.*

**\*5** Here, Plaintiff's grievance merely alleges that he was subjected to excessive force by Defendants Surprenant, Rodriguez, Tillotson, Brothers, Krein, and Kowalchuk;[4] it does not allege that Defendants were deliberately indifferent to Plaintiff's medical needs. *See* Hale Decl., Ex. A. Indeed, the *only* reference in the grievance to Plaintiff's medical care is his allegation that on September 29, 2011, he was taken to Westchester Medical Center "for a cat scan for [his] left eye and a broken nose." *Id.* The Court also notes that Plaintiff's subsequent communications with prison officials regarding his grievance failed to mention any allegations of deliberate indifference to Plaintiff's medical needs. For example, in a December 26, 2011 letter to DOCCS' employee Teri Thomas, Plaintiff refers to his grievance as a "grievance of assault." *Id.* Similarly, in a January 14,

2012 letter to Karen Bellamy, Director of the IGP, regarding the status of his grievance, Plaintiff states that he "was assaulted in Green Haven Facility on 9/27/11" and makes no mention of Defendants' alleged denials of his requests for medical care. *Id.* Moreover, the Court's review of Plaintiff's grievance file indicates that the State did not investigate Plaintiff's allegation of deliberate indifference.[5] Indeed, the grievance file contains memoranda specifically regarding the alleged use of force by only those Defendants actually named in Plaintiff's grievance. Accordingly, the Court finds that Plaintiff's grievance did not "sufficiently alert[ ] prison officials that [Plaintiff] was alleging some wrongdoing beyond" the allegation that he was subjected to excessive force by Defendants Surprenant, Kowalchuk, Brothers, Krein, Tillotson, and Rodriguez.

4     The grievance mistakenly refers to Defendants Krein, Kowalchuk and Surprenant as "Keran," "Wallchuck" and "Suprintnay," respectively.

5     As Defendants mention in their motion papers, a September 27, 2011 memorandum from Defendant Surprenant to Defendant Lee regarding the incident states that "RN Miller reported to PSU to conduct the medical exam of inmate Hilbert in the cell. Swelling to his left eye and a small abrasion on the right arm was reported on the medical exam. All injuries were deemed minor in nature and the inmate remained in MH–OB–004 on the 1 to 1 watch." Hale Decl., Ex. A. Defendant Surprenant's reference to Plaintiff's medical examination and status immediately following the alleged excessive use of force does not suggest that the State investigated Plaintiff's claim of deliberate indifference. Moreover, Defendant Surprenant's description of Plaintiff's medical exam by Defendant Miller would not put the State on notice of any potential allegations regarding Defendants' alleged refusal of Plaintiff's requests for medical care. Additionally, Plaintiff's grievance file includes the medical report by Defendant Miller, dated September 27, 2011, describing the nature of Plaintiff's injuries. That report, however, also does not suggest that the State investigated or considered Plaintiff's claim of deliberate indifference; nor would the report have put the State on notice of such a claim.

Moreover, the Court finds that none of the three exceptions to the exhaustion requirement articulated by the Second Circuit in *Hemphill,* 380 F.3d at 686, are applicable to Plaintiff's case. First, administrative remedies were clearly "available" to Plaintiff, as he filed

a grievance at Marcy on December 8, 2011, which was subsequently investigated by the Inspector General's Office. Hale Decl., Ex. A. Second, Defendants have not forfeited the affirmative defense of non-exhaustion, nor are they estopped from asserting it. Estoppel is found where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Winston v. Woodward,* No. 05 Civ. 3385(RJS), 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008) (citations omitted). As such, the Second Circuit has held that a plaintiff's non-exhaustion may be excused on the grounds of estoppel where the plaintiff was misled, threatened or otherwise deterred from fulfilling the requisite procedures. *Id.* (citing *Hemphill,* 380 F.3d at 688–89; *Ziemba v. Wezner,* 366 F.3d 161, 163–64 (2d Cir.2004)). Here, Plaintiff does not allege that Defendants improperly deterred him from filing a grievance regarding the alleged deliberate indifference, and the record does not evidence the existence of any such threats or misconduct on the part of Defendants.

**\*6** With respect to the third exception, the Second Circuit has held that "there are certain 'special circumstances,' " such as a reasonable misunderstanding of grievance procedures, "in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified." *Hemphill,* 380 F.3d at 689 (citations omitted). While Plaintiff does not specifically allege any "special circumstances" justifying his failure to exhaust administrative remedies, he states in his opposition papers that he "was told that his grievance was untimely" when he attempted to file it at Marcy, and that he believed he had "taken all the proper steps" by filing a complaint "with risk management at CNYPC [Central New York Psychiatric Center] for the excessive force claim and medical negligence." PL's Affirmation in Support of Motion (Doc. 78); *see also* PL's Mem. L. Opp. 6 (stating that Plaintiff filed a complaint concerning his "medical issues" with the risk management office at CNYPC on October 14, 2011). In light of its obligation to interpret Plaintiff's submissions as raising the strongest arguments that they suggest, *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006), the Court will treat Plaintiff's argument regarding his failure to exhaust administrative remedies as a request to excuse his non-exhaustion under the third *Hemphill* exception.

A review of the grievance file indicates that Plaintiff remained at Green Haven until October 13, 2011, where he was in a psychiatric observation cell in the Mental Health Unit and did not have access to any writing tools. Hale Deck, Ex. A. Plaintiff was then transferred to CNYPC, where he claims to have filed a complaint with "risk management." *Id.* After Plaintiff returned to Marcy on December 8, 2011, his grievance regarding the September 27, 2011 assault was rejected as untimely. *Id.* However, after prison officials confirmed that Plaintiff did not have access to the grievance process while at Green Haven and determined that he had shown "mitigating circumstances," Plaintiff's grievance was filed at Marcy on January 27, 2012. *Id.* Accordingly, the record indicates that despite initially being informed that his grievance was untimely, Plaintiff was ultimately permitted to file his grievance upon his return to Marcy.

Moreover, to the extent that Plaintiff argues that his attempt to file a complaint while at CNYPC constitutes a "special circumstance" justifying his failure to exhaust administrative remedies, the Court disagrees. First, Plaintiff failed to provide the Court with a copy of the complaint that he allegedly filed at CNYPC, and the declaration of Jeffery Hale, Assistant Director of the IGP for DOCCS, states that after conducting a "diligent search for grievances and appeals filed by [Plaintiff] based on grievances filed at the facility level," Mr. Hale determined that Plaintiff "did not file a grievance alleging that defendants were deliberately indifferent to his medical needs while at Green Haven in September 2011." Hale Decl. ¶ 10. Plaintiff's unsupported allegation that he filed a grievance at CNYPC is insufficient to withstand a motion for summary judgment. *See Santiago v. Murphy,* No. 08 Civ.1961(SLT), 2010 WL 2680018, at *2–*3 (E.D.N.Y. June 30, 2010) (dismissing complaint where declarations submitted by defendant stated that there was "no record of any grievance" for the alleged incident and holding that plaintiff's unsupported allegation that he filed a grievance is insufficient to withstand a motion for summary judgment). Second, even assuming that Plaintiff did file a complaint with the risk management office at CNYPC, that complaint was clearly not exhausted. The IGP requires that inmates file grievances "with an IGP clerk." 7 NYCRR § 701.2(a); *see also id.* §§ 701.4(g), 701.5. Accordingly, Plaintiff's complaint to the risk management office was not properly filed. Additionally, Plaintiff does not assert that he appealed from the

2013 WL 4774731

denial of that grievance, nor is there any record of such appeal. *Santiago,* 2010 WL 2680018, at *3. Finally, even if at the time of allegedly filing his complaint at CNYPC Plaintiff misunderstood the grievance procedure, his failure to exhaust administrative remedies would still not be justified. Upon his return to Marcy, Plaintiff clearly had an understanding of the grievance procedure sufficient enough to allow him to properly file a grievance regarding the excessive force allegation in accordance with the IGP. Plaintiff has provided the Court with no explanation to justify his failure to include in that grievance the allegation regarding Defendants' alleged deliberate indifference to his medical needs. Accordingly, as the record establishes that Plaintiff is aware of and has shown that he is capable of following the correct grievance procedure, the Court finds that he has failed to demonstrate the existence of "special circumstances" sufficient to excuse his non-exhaustion.[6] *See Kasiem,* 756 F.Supp.2d at 577–78 (holding that the plaintiff failed to demonstrate the existence of "special circumstances" justifying his non-exhaustion where he had previously shown that he was capable of following the correct grievance procedure).

[6]  The Court notes that the exhibits attached to Plaintiffs' opposition papers, which include a copy of Plaintiff's hospital records and "Special Watch Log Book # S1533," do not compel a different outcome, as they do not go to the issue of exhaustion.

**\*7** The Court therefore finds that Plaintiff has failed to exhaust administrative remedies with respect to his deliberate medical indifference claim and that none of the three exceptions to the exhaustion requirement apply. Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Prisoners have 21 days from the date of the alleged occurrence to initiate the first formal step of the IGP, subject to exceptions "based on mitigating circumstances." 7 NYCRR §§ 701.5(a)(1), 701.6(g)(1)(i)(a). However, an exception to the time limit may not be granted if the request is made more than 45 days after the alleged occurrence. 7 NYCRR § 701.6(g) (1) (i)(a). Accordingly, because the time to both file a grievance and request an exception to the time limit has long expired, and because Plaintiff has not offered any reason for his delay in filing a grievance with respect to his deliberate indifference claim, the claim is dismissed

with prejudice.[7] *See Santiago,* 2010 WL 2680018, at *3 (dismissing complaint with prejudice because "[a]ny grievance or appeal would now be untimely under 7 NYCRR § 701.5, and the time limit for seeking an exception to the time limitations under 7 NYCRR § 701.6 has also passed"); *see also Bridgeforth v. Bartlett,* 686 F.Supp.2d 238, 240 (W.D.N.Y.2010) (dismissing complaint with prejudice where the time limits for plaintiff to file an administrative appeal had long since passed and plaintiff did not allege "any facts excusing his failure to exhaust").

[7]  The Supreme Court has held that the PLRA does not require dismissal of an entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. *Jones,* 549 U.S. at 223–24. Accordingly, although the Court finds that Plaintiff's deliberate indifference claim should be dismissed for non-exhaustion, his remaining exhausted claims may proceed.

### d. Fischer and Lee are Dismissed as Defendants

Defendants move in the alternative to dismiss the Amended Complaint against Defendants Fischer and Lee. Plaintiff's sole allegation with respect to these Defendants relates exclusively to his deliberate medical indifference claim. *See* Am. Compl. ¶ 5. Accordingly, because the Court finds that Plaintiff has failed to exhaust administrative remedies with respect to his deliberate indifference claim, Defendants' motion to dismiss with respect to Defendants Fischer and Lee is granted.

Moreover, to the extent that Plaintiff seeks to hold Defendants Fischer and Lee liable for his excessive force claim, that claim is also dismissed against them. Case law is clear that supervisors may not be held vicariously liable for their subordinates' violations. *See Rahman v. Fisher,* 607 F.Supp.2d 580, 584–85 (S.D.N.Y.2009). It is therefore "well settled" that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Id.* at 585 (citation omitted). Neither the factual allegations contained in the Amended Complaint nor the grievance file submitted by Defendants indicate that Defendants Fischer or Lee were "personally involved" in the alleged violation, either by directly participating in it or by failing to stop it. Although a review of Plaintiff's grievance file indicates that Defendant Lee received a memorandum from Defendant Surprenant regarding the

alleged excessive use of force, case law is clear that "[a]fter the fact notice of a violation of an inmate's rights is insufficient to establish a supervisor's liability for the violation." *Id.*

## III. Conclusion

**\*8** For the reasons set forth above, Defendants' partial motion to dismiss is GRANTED. Accordingly, Plaintiff's First Cause of Action for Deliberate Indifference to an Inmate's Medical Needs in Violation of the Eighth and Fourteenth Amendments is DISMISSED with prejudice. [8] The only remaining claims are those for unnecessary and excessive use of force in violation of the Eighth Amendment; violations of the Americans with Disabilities Act; and violations of the Rehabilitation Act. The only remaining Defendants in this action are Surprenant, Tillitson, Brothers, Krein, Kowalchuk, and Rodriguez.

[8]  Although Defendants Santoro, Krein and Rodriguez did not join in Defendants' partial motion to dismiss, because the Court finds that Plaintiff failed to exhaust administrative remedies with respect to his deliberate medical indifference claim, that claim is dismissed as to those Defendants as well.

The Clerk of the Court is respectfully directed to terminate the motions. Docs. 65, 77. The parties are directed to appear for a status conference on October 2, 2013 at 9:30 am.

It is SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4774731

---

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 931729
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony M. GARRAWAY, Plaintiff,

v.

BROOME COUNTY, NEW YORK; Ronald J.
Bill, Chief Civil Deputy; Broome County Sheriff's
Department; Dennis Rowlands, Deputy # 260;
and Chris Smith, Deputy # 223, Defendants.

No. 5:03-CV-0681.
|
April 7, 2006.

**Attorneys and Law Firms**

Anthony M. Garraway, Moravia, NY, pro se.

Aaron J. Marcus, Binghamton, NY, for Defendants.

*DECISION and ORDER*

THOMAS J. McAVOY, Senior United States District
Judge.

## I. INTRODUCTION

*1 Plaintiff commenced this action pursuant to 42
U.S.C. § 1983 alleging that Defendants violated his
Fourth Amendment right against unreasonable search
and seizures and his Fourteenth Amendment right to
equal protection and due process. Defendants move for
summary judgement pursuant to Fed.R.Civ.P. 56 based
on the untimeliness of Plaintiff's claim and his failure to
state a cause of action. Plaintiff opposes arguing his claim
is timely under the "prison mailbox rule" and that there
are genuine issues of fact warranting a trial.

## II. BACKGROUND

Plaintiff claims that on or about May 15, 2000 he entered
into an oral agreement with Esther Gardner for a "month-
to-month lease" of a mobile home. Plaintiff contends that
he made a rent payment for the remainder of the month
and was given "the only key to the property so he could
move in." (Pl.'s Statement of Undisputed Facts at ¶ 1).
Gardner, however, states she never met or talked with

Plaintiff prior to May 31, 2000 and that she did not
lease any property to him. (Gardner Aff. ¶ 9.) Gardner's
daughter, Margaret Dunn, claims that Denise Houck,
Plaintiff's then girlfriend, contacted her a few weeks prior
to May 31, 2000 about renting the property. (Dunn Aff.
¶ 2.) Dunn claims she and Houck had an oral agreement
that Houck would not move in until she had paid Dunn
the first month's rent and a security deposit. Dunn gave
Houck permission to fix the property up prior to moving
in and gave Houck a key. Dunn states she never intended
to rent the property to Plaintiff, but rather to Houck and
her children. (Dunn Aff. ¶ 8.) No formal lease documents
were drawn up. There remains a factual dispute as to what
rental agreements, if any, were made between Plaintiff,
Houck, Gardner, and Dunn.

Dunn became aware that Houck had moved in without
making any rent or security deposit payments. (Dunn Aff.
¶ 5.) Dunn claims Houck told her she would have the rent
money within the next few days and, upon that belief,
Dunn allowed Houck to stay in the mobile home. *Id.*

On May 31, 2000, Gardner went to the mobile home and
saw that Houck and Plaintiff had moved in and had pit
bulls living on the property. Gardner claims she no longer
wanted Houck to lease the property and called the Broome
County Humane Society and the Broome County Sheriff's
Office to see what actions could be taken. (Gardner Aff.
¶ 5.)

When the Humane Society arrived, Plaintiff came outside
from within the mobile home and an argument ensued
between he and Gardner as to her request for the Humane
Society to remove Plaintiff's dogs. Shortly thereafter,
Defendant Sheriff's Deputy Rowlands arrived on the
scene and claims he was advised by Gardner that Plaintiff
did not belong on the property. (Rowlands Aff. ¶ 3.)

Defendant Sheriff's Chief Civil Deputy Bill claims he
responded to the scene after hearing a discussion of it on
his radio. Upon arrival, Bill claims he spoke with Gardner
who advised him that, while Plaintiff and Houck were
going to lease the property and had been given permission
to do some work inside the property, they had not been given
permission to move into the residence. Bill claims Houck
told him what Gardner said was true and that no money
had exchanged hands and there was no formal lease
agreement. (Bill Aff. ¶ 4.) Bill claims that he then advised
Houck that in his opinion she and Plaintiff were "not

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works. 1

2006 WL 931729

in the residence legally" and that they would ultimately have to leave. Bill states that he advised Houck of the legal processes by which she could contest the landlord's representations. (Bill Aff. ¶ 4.)

**\*2** Defendant Sheriff's Deputy Smith claims that upon his arrival, Rowlands was interviewing Plaintiff who stated his name was Hubert A. Garraway and was refusing to offer any form of identification. Hubert Garraway is Plaintiff's brother. (Smith Aff. ¶ 3.) Smith claims he was advised by the Humane Society employees that Plaintiff's name was Anthony Garraway and that they had a number of prior dealings with him. (Smith Aff. ¶ 4.) Smith claims Plaintiff continued to give conflicting information as to his name, social security number and other identification information. Smith states that just prior to placing Plaintiff into custody on suspicion of committing criminal impersonation, he was advised of an active arrest warrant outstanding for Plaintiff from the Binghamton Police Department regarding a Criminal Mischief in the Fourth Degree charge. (Smith Aff. ¶ 6.) Smith claims he never entered or searched the mobile home.

Because Defendants suspected Plaintiff was lying about his identity, Rowlands entered the mobile home to find a form of personal identification for Plaintiff. Rowlands claims he entered the mobile home upon the belief that Plaintiff did not belong there and that Gardner had the authority to consent to the search. (Rowlands Aff. ¶ 8.) Rowlands claims the search entailed "nothing more than glancing over any papers or documents that might have been lying around the residence." (Rowlands Aff. ¶ 7.) Rowlands claims he did not remove any items from the property. *Id* .

Plaintiff offers a conflicting version of the events. Plaintiff claims that Houck was not present and that she was at work during the entire incident. Plaintiff admits he would not offer any form of identification to Defendants and that he stated he was Hubert. Plaintiff claims Defendant Smith unlawfully entered the mobile home and returned with letters written and sent to Anthony Garraway. Plaintiff claims Rowlands also unlawfully entered the mobile home, found Plaintiff's wallet within a pair of Plaintiff's pants and removed Plaintiff's license and social security card. Plaintiff claims these identification cards were obtained from an illegal search and were illegally seized. Plaintiff claims the identification cards were taken

from the property to the station where Plaintiff was processed.

It is undisputed that Plaintiff was arrested and charged with Criminal Impersonation in the Second Degree (New York Penal Law § 190.25) and Criminal Mischief in the Fourth Degree (New York Penal Law § 145.00). Following the incident, Gardner began a formal eviction proceeding and posted a 3-day notice on the door of the mobile home. Following the posting, Gardner believed no one remained in the mobile home. (Gardner Aff. ¶ 7.)

Plaintiff filed the instant claim pursuant to 42 U.S.C.1983 claiming a violation of his Constitutional Fourth Amendment right against unreasonable search and seizures and a violation of his due process right for being evicted from the property.

### III. STANDARD OF REVIEW

**\*3** It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525-26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v.. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). With this standard in mind, the Court will address Defendants' motion

## IV. DISCUSSION

Plaintiff's Complaint alleges violations of his Constitutional right against illegal search and seizures by Defendants, and a violation of his Constitutional right to equal protection and due process by denying Plaintiff a legal eviction. (See Pl. Compl.). Plaintiff claims there was an oral rental agreement between he and Gardner and, therefore, Gardner did not have the authority to consent to a search of the mobile home. Plaintiff further claims Defendants threatened his family that if they were to return to the property they would be arrested for trespassing, thus resulting in an illegal eviction by Defendants. Defendants argue the Complaint should be dismissed because it is untimely under 42 U.S.C.S. § 1983. In addition, Defendants argue that the motion for summary judgment should be granted because no Fourth Amendment or due process rights have been violated and, assuming there was a violation, that they are entitled to qualified immunity.

### A. Timeliness of Plaintiff's Claim

There is a three year statute of limitations for actions arising under 42 U.S.C.1983. Plaintiff's claim arose from the incidents occurring on May 31, 2000. Defendants claim the filing date of June 4, 2003 renders the Complaint untimely. However, Plaintiff, in his position of being both *pro se* and incarcerated, is afforded protection by the "prison mailbox rule". This rule is justified under the rationale that in being *pro se* and incarcerated the plaintiff has no choice but to hand his notices to prison authorities to forward to the Court Clerk. Because the plaintiff loses control over the documents and must therefore rely on prison authorities to forward them on to the clerk, Courts have recognized the date plaintiffs hand over their documents to prison authorities as the effective "filing date", and not the date when the Court Clerk actually is in receipt of them. See *Houston v. Lack,* 487 U.S. 266 (1988).

*4 In the instant case, while the filing date as entered by the clerk is June 4, 2003, Plaintiff appears to have handed the Complaint over to prison officials prior to May 31, 2003, and by virtue of the "prison mailbox rule", filed the Complaint within the three year statute of limitations.[1]

[1]    Respondents may, however, inquire as to the date Plaintiff actually handed over the papers and later raise this issue if it should appear that Plaintiff handed over the papers *after* May 31, 2003.

### B. Fourth Amendment right against unreasonable search and seizures

Plaintiff claims his Fourth Amendment right against unreasonable search and seizures was violated when Defendants Rowlands and Smith, without permission from Plaintiff, unlawfully entered into the mobile home and unlawfully seized Plaintiff's property.

To claim a violation of a Fourth Amendment right against unreasonable search and seizures, Plaintiff has to show a legitimate expectation of privacy in the property. *California v. Ciraolo,* 476 U.S. 207 (1986). A legitimate expectation may be shown by establishing an actual subjective expectation of privacy and that the expectation is one that society is prepared to recognize as legitimate. *Id.* Thus, "a tenant's expectation of privacy in his apartment ceases to be 'objectively justifiable' when his occupancy ceases to be lawful, as determined by the terms of his lease...." *U.S. v. Ross,* 43 Fed. Appx. 751, 757 (6th Cir.2002). In *U.S. v. Allen,* 106 F.3d 695 (6th Cir.1997), for example, the court held a defendant lacked a legitimate expectation of privacy when he failed to remain current on his rental payments.

A search conducted without a warrant is considered per se unreasonable and, therefore, a violation of the Fourth Amendment unless the search falls within a specifically established exception. See *Katz v. United States,* 389 U.S. 347 (1967). One such exception is a warrantless search conducted with consent. See *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph,* ---S.Ct. ----, ----, 2006 WL 707380 at *3 (Mar. 22, 2006). Valid consent is established when one with actual authority over the property voluntarily gives consent to a search. *Schneckloth,* 412 U.S. 218. "[T]he exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Randolph,* --- S.Ct. at ----, 2006 WL 707380 at *5. Generally, a lessor of real property has no authority to consent to a warrantless search of rental property which is

2006 WL 931729

subject to an existing lease. *See Chapman v. U.S.,* 365 U.S. 610 (1961); *U.S. v. Elliott,* 50 F.3d 180, 186 (2d Cir.1995). "A landlord does, however, have authority to consent to a search by police of dwelling units in his building that are not leased. Further, if the landlord has joint access or control over certain areas of his apartment building for most purposes, he may validly consent to a search of those areas." *Id.*

### 1. Actual Authority to Consent

**\*5** The first issue is whether Plaintiff had actual authority over the mobile home as a result of a rental agreement. Plaintiff claims there was an oral lease agreement with Gardner and that he paid rent for the month of May. Gardner claims she never made such an agreement and never received any payments from Plaintiff. Dunn claims she and Houck had an oral lease agreement but that she was not authorized to live there yet and had made no rental payments. Based on the foregoing, there is a material dispute as to whether there was a lease agreement in effect at the time of the search and whether rental payments had been made. As a result, it remains unclear as to whether Plaintiff or Gardner had actual authority over the mobile home and was, therefore, authorized to give or refuse consent to the warrantless search.

### 2. Apparent Authority to Consent

Viewing the evidence in the light most favorable to Plaintiff, the Court will assume there was a valid lease agreement. Nevertheless, the Court finds that the search of the mobile home was still valid under *Illinois v. Rodriguez,* 497 U.S. 177 (1990) and the Supreme Court's more recent decision in *Randolph.* In *Rodriguez,* the Supreme Court held that law enforcement was permitted to conduct a search upon the apparent authority of a third party's consent, even if it turns out the third party did not in fact have actual authority. *Rodriguez,* 497 U.S. 177. Law enforcement may rely on the third party's consent so long as facts available to the officer at the time of the search would warrant a "person of reasonable caution in belief that consenting party had authority over premises." *See U.S. v. Perez,* 948 F.Supp. 1191 (S.D.N.Y.1996); *see also Anderson v. Decristofalo,* 494 F.2d 321 (2d Cir.1974); *Issa v. City of Glencoe,* 118 Fed. Appx. 103 (8th Cir.2004).

Here, the issue is whether Officer Rowlands had a reasonable good faith belief that Plaintiff was not on the property legally and was not there pursuant to a

lease agreement and, therefore, Gardner had the authority to consent to a warrantless search of the mobile home. Plaintiff claims that because the Officers were allegedly called to the scene because of the pit bulls, and not for a landlord/tenant dispute, their belief that Plaintiff had no legal right to be in the mobile home was unreasonable. Plaintiff claims Houck was not at the scene and Defendants could not therefore rely on her statements in determining if Plaintiff was in the mobile home legally. Defendants Smith, Rowlands and Bill claim that once each had arrived on the scene they were advised by Gardner that Plaintiff and Houck had moved into the mobile home without having permission to do so. (Smith Aff. ¶ 12, Rowlands Aff. ¶ 3, Bill Aff. ¶ 3.) Defendant Bill claims Houck was at the scene and advised him that what Gardner had said was true and that no formal lease agreement had been made and no money had exchanged hands. (Bill Aff. ¶ 4.) Irrespective of why Defendants arrived at the scene, according to their affidavits, it was clear that once they arrived they were dealing with a potential trespassing issue.

**\*6** Looking at the evidence in the light most favorable to Plaintiff, the Court will assume that Houck was not present. Similar to *Elliott* and *Decristofalo,* Gardner's statements to Defendant Bill could cause a reasonable officer to conclude that Plaintiff was not legally living in the property and that he was, as Defendant Bill concluded, either squatting or trespassing on the property. (Bill Aff. ¶ 5.) While Plaintiff claims he was objecting to the search and that he had a legal right to be there, Plaintiff also admitted to lying to Defendants about his true identity, for which he was charged with Criminal Impersonation in the Second Degree (N.Y.S PL § 145.00). (Smith Aff. ¶ 7, Garraway Aff. ¶ 12.) Plaintiff's continued conflicting answers to Defendants concerning his true identity gave them reasonable doubt as to his credibility in general. Therefore, this Court finds Defendant Rowlands' reliance on Gardner's representations that Plaintiff did not belong in the home, that there was not an oral lease agreement between she and Plaintiff, and that she was the true owner of the residence with authority to consent to a search thereon, was reasonable against Plaintiff's assertions. Based on the circumstances, Defendant Rowlands believed Gardner had authority to consent to the search and he searched the mobile home for information concerning Plaintiff's identity. While Plaintiff claims Smith took personal letters written by Plaintiff from the home as evidence of Plaintiff's

true identity, Defendant Smith claims he never entered the mobile home. Looking at the evidence in the light most favorable to Plaintiff, and assuming that Defendant Smith searched the home as Plaintiff claims, Defendant Smith was privy to the same information that Defendant Rowlands relied on in searching the home. *See Morgan v. Superintendent,* 88 F.Supp.2d 312, 318 (S.D.N.Y.2000) ("[W]here law enforcement authorities are cooperating, the knowledge of one is presumed shared by all ..." and "[t]he determination of whether probable cause to [act] exists can be based on the collective knowledge of all the officers involved ...".). Therefore, even if Defendant Smith did search the home it was based on the reasonable belief that Gardner had authority to consent to the search.

Because entry into the mobile home by Defendants was valid upon either the actual or apparent authority to consent by Gardner, the Court finds a "good faith defense" is available to Defendants who may or may not have been deceived as to who held the true legal interest in the home. If Plaintiff never had a lease agreement with Gardner (oral or written) or if Houck had an oral agreement with Dunn [2] but was not yet authorized to live there, then Gardner provided actual authority to consent to the search. Assuming there was an oral agreement between Houck and Dunn or between Plaintiff and Gardner, Defendants had reasonable grounds upon which to believe there was not a valid lease agreement and, therefore, that Gardner retained authority to consent to a search of the premises. Therefore, Plaintiff's claims of violations of his Fourth Amendment rights are dismissed.

[2]    There is no indication in the record that any agreement between Houck and Dunn contemplated Plaintiff living in the mobile home. Similarly, there is no evidence in the record that, assuming Houck was legally residing in the mobile home, she permitted Plaintiff to reside there.

### C. Due Process Rights

**\*7** Plaintiff next claims his Constitutional rights to equal protection and due process were violated when Defendants denied him the right to a legal eviction and the right to a fair trial and hearing before a judge to determine a civil dispute. (Pl. Complaint ¶ 5.) Plaintiff alleges Defendant Bill told him "he was kicking me and my family out of the residence at the request of the landlord and that if I ever returned he would personally arrest me." (Garraway Aff. ¶ 24.) Plaintiff claims Bill's threat

of arrest was an act of illegal eviction, thereby denying him the right to a legal eviction by Gardner. Defendant Bill claims he never spoke with Plaintiff that day and that at no time did he threaten Plaintiff or Houck that they would be arrested if they did not leave. (Bill Aff. ¶ 6.) Bill claims that he believed Plaintiff and Houck were squatting or trespassing and, therefore, he advised Houck that she and Plaintiff were not there legally. Bill claims he advised Houck of the process by which she could contest Gardner's representations and told her how she could get an order by the town court to allow her to stay.

A wrongful eviction action can be brought against law enforcement officals who are accused of evicting tenants for the landlord. *See Collum v. Incorp. Village of Freeport,* 691 F.Supp. 637, 641 (E.D.N.Y.1998). The court held in *Collum* that "where an officer, without an eviction warrant, gives a tenant a choice between absenting himself from the premises and being arrested and the tenant chooses the former, a wrongful eviction has taken place. [However] ... a finding [that the officer] threatened arrest alone would be insufficient ... the jury would have to find that the threat forced plaintiff to choose between vacating the premises and being arrested." *Id.*

Here, the issue is whether Defendant Bill evicted Plaintiff. The answer is that he did not. Plaintiff was removed from the premises based on an arrest unrelated to his presence in the mobile home (i.e ., the warrant and criminal impersonation). [3] Taking the evidence in the light most favorable to Plaintiff, even if Defendant Bill did threaten to arrest Plaintiff if he was to return to the property, as discussed above, Defendants had a reasonable good faith belief that Plaintiff and Houck were not there legally and, therefore, were trespassing. Any remarks Defendant Bill may have made to Plaintiff or Houck in regards to arrest were warranted as he had a good faith belief that Plaintiff was engaged in the unlawful act of squatting or trespassing. In addition, in accordance with *Collum,* mere threats of arrest are insufficient to claim wrongful eviction. *Collum,* 691 F.Supp. 637. Bill had independent grounds upon which to arrest Plaintiff and remove him from the property. Therefore, Plaintiff's claim of a violation of his due process rights by an unlawful eviction of his family by Defendants is supported by insufficient evidence.

[3]    According to Plaintiff's version of the facts, Houck was not at the mobile home during the incident and

she, therefore, would not have been subjected to removal or arrest. Even if Houck was present, as Defendants claim, Houck was not required to leave the home while the Defendants were there and was left at the home upon their departure. (Bill Aff. ¶ 7, Smith Aff. ¶ 13, Rowlands Aff. ¶ 3). In addition, there is insufficient evidence that Houck's ultimately left the mobile home as a direct result of any alleged threats of arrest made by Defendants.

### D. Qualified Immunity

**\*8** As a general rule, police officers are entitled to qualified immunity if their conduct "does not violate clearly established constitutional rights, or it was objectively reasonable for them to believe their acts did not violate those rights." *Oliveira v. Mayer,* 23 F.3d 642, 648 (2d Cir.1994). Stated another way, officers are entitled to qualified immunity from liability for violating a plaintiff's civil rights unless it was "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Groh v. Ramirez,* 540 U.S. 551, 563 (2004).

As discussed above, this Court finds it was objectively reasonable for Defendants to believe their actions were not in violation of Plaintiff's constitutional rights. The Court therefore finds Defendants are entitled to qualified immunity.

### G. Municipality Liability

Lastly, Plaintiff claims Broome County is liable for the alleged Constitutional violations by Defendants through its failure to properly train Defendants. Defendants argue Plaintiff has not shown a custom or policy adopted by the municipality which caused the alleged violations.

In § 1983 claims, municipalities may not be held responsible under a theory of *respondeat superior. Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997). To impose liability onto a municipality the plaintiff must identify a municipal "policy" or "custom" that caused plaintiff's injury. *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694 (1978)). An act performed pursuant to a "custom" may subject a municipality to liability on the theory that the practice is so widespread so as to have force of law. Brown, 520 U.S. at 404. One way to show a custom or policy has been adopted by the municipality is to prove the municipality failed to properly train defendants. In order to show failure to train by a municipality, the plaintiff must "identify a specific deficiency in the city's training program and establish that the deficiency caused a deprivation of his constitutional rights." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391 (1989). Here, Plaintiff claims, "Broome County Sheriff Department failed to train [Defendants]." (Pl. Mem. in Opp'n. to Def. Mot. Summ. J., 9). Plaintiff further claims "[a]nytime Defendant Bill is called to a similar civil dispute ... he will always threaten and illegally evict the tenant." *Id.* Plaintiff's conclusory allegations are insufficient to show specific deficiencies in the municipalities training program that resulted in the alleged violations of his rights. As a result, Plaintiff has failed to provide sufficient evidence to show an ongoing, widespread policy or custom of the municipality to violate citizens' Fourth and Fourteenth rights. Therefore, Plaintiff's claim against Broome County is dismissed.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's action is DISMISSED.

**\*9** IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 931729

---

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.